No. 26-12667

# United States Court of Appeals

*for the*

# Eleventh Circuit

DEFENSE DISTRIBUTED, a Texas corporation, DD FOUNDATION, LLC., a Texas limited liability, DEFCAD, INC., a Texas corporation,

*Plaintiffs-Counter-Defendants-Appellants-Cross-Appellees,*

CODY RUTLEDGE WILSON, *et al.,*

*Counter-Defendants,*

– v. –

JOHN ELIK, MATTHEW LAROSIERE, ALEXANDER HOLLADAY, JOSH KIEL STROKE, JOHN LETTMAN, individually, *et al.,*

*Defendants-Counter-Claimants-Appellees-Cross-Appellants,*

PETER CELENTANO, individually,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA IN CASE NO. 9:25-cv-81197-DMM, (HONORABLE DONALD M. MIDDLEBROOKS, U.S. DISTRICT JUDGE)

## APPELLANTS' INITIAL BRIEF

HOWARD W. FOSTER
FOSTER PC
155 North Wacker Drive, Suite 4250
Chicago, Illinois 60606
(312) 726-1600

BRENDAN S. EVERMAN
PRYOR CASHMAN LLP
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
(786) 582-3003

*Counsel for Plaintiffs-Counter-Defendants-Appellants-Cross-Appellees*

COUNSEL PRESS
A Proceed Service
The Appellate Experts®
(800) 4-APPEAL • (625495)

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is desired because this appeal presents significant and complex legal issues under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962, and the Lanham Act, 15 U.S.C. § 1125.

Specifically, this case addresses: (1) whether the predicate wire fraud offense under 18 U.S.C. § 1343 requires a defendant to personally obtain the victim's property or extends to schemes intended to benefit a third-party enterprise, and (2) whether proximate causation under RICO and false advertising claims under the Lanham Act may be proven through expert financial modeling rather than requiring individualized testimony from specific lost customers. Deciding these issues will clarify critical statutory standards within this Circuit.

## TABLE OF CONTENTS


Page

STATEMENT REGARDING ORAL ARGUMENT .................................. i

TABLE OF AUTHORITIES .................................. iv

STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION .................................. 1

JURISDICTIONAL STATEMENT .................................. 2

STATEMENT OF THE ISSUES .................................. 2

STATEMENT OF THE CASE .................................. 4

Statement of Facts .................................. 4

Standard of Review .................................. 6

SUMMARY OF THE ARGUMENT .................................. 6

I. There is ample evidence the scheme was undertaken to damage DEFCAD and obtain its income .................................. 6

II. The district court erred in holding that the wire fraud scheme alleged here required DEFCAD to prove the Defendants obtained its money .................................. 7

III. The district court erred in holding that RICO and the Lanham Act's requirement of proximate causation can only be met by identifying specific lost customers .................................. 9

ARGUMENT .................................. 10

I. There is sufficient evidence Defendants have conspired to harm DEFCAD and obtain its business to defeat summary judgment .................................. 10

II. The district court erred in concluding that the wire fraud statute requires DEFCAD to prove Defendants "obtained" its property .................................. 14

III. The district court wrongly concluded that the evidence demonstrated the absence of proximate causation needed to prove the RICO and Lanham Act claims ........ 20

i. RICO ........ 20

ii. The Lanham Act claim ........ 29

iii. The meme is "commercial advertising" ........ 33

iv. Larosiere and Holladay's co-conspirators are proper Lanham Act Defendants ........ 34

v. Proximate causation ........ 35

CONCLUSION ........ 36

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*ALPO Petfoods, Inc. v. Ralston Purina Co.*,
913 F.2d 958 (D.C. Cir. 1990) ........................................ 31-32

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) ........................................ 23

*Apple Inc. v. Pepper*,
587 U.S. 273 (2019) ........................................ 10, 26

*Aronowitz v. Health-Chem Corp.*,
513 F.3d 1229 (11th Cir. 2008) ........................................ 30

*Bridge v. Phoenix Bond*,
553 U.S. 639 (2008) ........................................ 19, 24, 28

*Carrizosa v. Chiquita Brands, International, Inc.*,
47 F.4th 1278 (11th Cir. 2022) ........................................ 13

*Ciminelli v. United States*,
598 U.S. 306 (2023) ........................................ 7, 20

*Cleveland v. United States*,
531 U.S. 12 (2000) ........................................ 8

*Corcel Corp., Inc. v. Ferguson Enterprises, Inc.*,
551 Fed. Appx. 571 (11th Cir. 2014) ........................................ 27

*Cox v. Administrator U.S. Steel & Carnegie*,
17 F.3d 1386 (11th Cir. 1994) ........................................ 9, 27, 28

*Duty Free Americas, Inc., v. Estee Lauder Companies, Inc.*,
797 F.3d 1248 (11th Cir. 2015) ........................................ 34

*Frydman v. Verschleiser*,
172 F. Supp. 3d 653 (S.D.N.Y. 2016) ........................................ 17

*Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*,
921 F.3d 1343 (11th Cir. 2009) ........................................ 32

*Hartman v. Does 1-2*,
2025 WL 398846 (11th Cir. February 4, 2025) ........................................ 19, 20, 26

*Hemi Group, LLC v. City of New York*,
559 U.S. 1 (2010) .......... 23

*Hickson Corp. v. N. Crossman Co.*,
357 F.3d 1256 (11th Cir. 2004) .......... 29

*Holmes v. Securities Investor Protection Corporation*,
503 U.S. 258 (1992) .......... 22, 23

*JVC Kenwood USA Corp. v. Stratton AV Corp.*,
2024 WL 6963320 (S.D. Fla. August 30, 2024) .......... 32

*Kelly v. United States*,
590 U.S. 391 (2020) .......... 16, 17

*Lexmark Intern., Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) .......... 31

*Maiz v. Virani*,
253 F.3d 641 (11th Cir. 2001) .......... 8, 18, 24, 25, 27

*Matonis v. Care Holdings Grp., L.L.C.*,
423 F. Supp. 3d 1304 (S.D. Fla. 2019) .......... 34

*Nutradose Labs, LLC v. Bio Dose Pharma, LLC*,
710 F. Supp. 3d 1200 (S.D. Fla. 2024) .......... 30

*Osmose, Inc. v. Viance, LLC*,
612 F.3d 1298 (11th Cir. 2010) .......... 30, 32

*Otto Candies LLC v. Citigroup, Inc.*,
137 F.4th 1158 (11th Cir. 2025) .......... 20, 21

*Ray v. Spirit Airlines, Inc.*,
836 F.3d 1340 (11th Cir. 2016) .......... 26

*Safari Programs, Inc. v. CollectA Int'l Ltd.*,
2018 WL 3730894 (S.D. Fla. April 16, 2018) .......... 10, 31

*Stiefel Laboratories, Inc. v. Brookstone Pharmaceuticals, L.L.C.*,
535 Fed. Appx. 774 (11th Cir. 2013) .......... 32

*Strickland v. Norfolk Southern Ry. Co.*,
692 F.3d 1151 (11th Cir. 2012) .......... 7

*Suntree Technologies, Inc. v. Ecosense Intern., Inc.*,
693 F.3d 1338 (11th Cir. 2012) .......... 33, 34

*TocMail, Inc. v. Microsoft Corp.*,
67 F.4th 1255 (11th Cir. 2023) .......... 35

*U.S. All Star Fed'n. Inc.*,
179 F.4th 883 .......... 25

*U.S. Structural Plywood Integrity Coalition v. PFS Corp.*,
2022 WL 953150 (S.D. Fla. 2022) .......... 33

*United States v. Dynalectric Co.*,
859 F.2d 1559 (11th Cir. 1988) .......... 17

*United States v. Estapa*,
998 F.3d 898 (11th Cir. 2021) .......... 14, 15

*United States v. Gatto*,
986 F.3d 104 (2d Cir. 2021) .......... 8-9, 15, 16

*United States v. Maxwell*,
579 F.3d 1282 (11th Cir. 2009) .......... 3, 8, 18

*United States v. Poirier*,
321 F.3d 1024 (11th Cir. 2003) .......... 18

*United States v. Porat*,
76 F.4th 213 (3d Cir. 2023) .......... 8, 15

*Walker v. CSX Transportation, Inc.*,
650 F.3d 1392 (11th Cir. 2011) .......... 28

*Watson v. Kingdom of Saudi Arabia*,
159 F.4th 1234 (11th Cir. 2025) .......... 9

*Williams v. Mohawk Industries, Inc.*,
465 F.3d 1277 (11th Cir. 2006) .......... 27

*Yarborough v. Decatur Housing Authority*,
941 F.3d 1022 (11th Cir. 2019) .......... 14

**Statutes & Other Authorities:**


15 U.S.C. § 1117 .......... 30

15 U.S.C. § 1117(a) .......... 9

15 U.S.C. § 1121 .......... 1

15 U.S.C. § 1125(a) .......... 29, 30

18 U.S.C. § 1343 .......... 3, 6, 7

18 U.S.C. § 1964 .......... 1

18 U.S.C. § 1964(c) .......... 8

28 U.S.C. § 1291 .......... 1, 2

28 U.S.C. § 1331 .......... 1, 2

28 U.S.C. § 1338 .......... 1

Fed. R. App. P. 4(a)(1)(A) .......... 2

Fed. R. Civ. P. 12(b)(6) .......... 5

McCarthy on Trademarks and Unfair Competition, Vol 4. (2026-2 ed.) .......... 36

Restatement (Second) of Torts § 870 .......... 25

W. Page Keeton *et al.*, Prosser and Keeton on the Law of Torts §41 (5th ed. 1984) .......... 27

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

1. *District Court Jurisdiction*: The United States District Court for the Southern District of Florida had subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 18 U.S.C. § 1964 (civil RICO statutory authorization), 15 U.S.C. § 1121 and 28 U.S.C. § 1338 (Lanham Act and unfair competition jurisdiction).

2. *Appellate Jurisdiction*: This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291, which grants courts of appeals jurisdiction over appeals from all final decisions of the district courts.

3. *Timeliness of Appeal*:

    - Basis for District Court Jurisdiction: Federal question jurisdiction under 28 U.S.C. § 1331, 18 U.S.C. § 1964 (civil RICO), 15 U.S.C. § 1121, and 28 U.S.C. § 1338 (Lanham Act).
    - Basis for Court of Appeals Jurisdiction: Appellate jurisdiction under 28 U.S.C. § 1291 over final decisions of district courts.
    - Date of Entry of Final Order / Judgment: July 1, 2026.
    - Post-Judgment Motions Filed (if any): N/A

- Date Notice of Appeal Filed: July 30, 2026.
- The Notice of Appeal was timely filed within 30 days of entry of final judgment pursuant to FRAP 4(a)(1)(A).

4. *Finality of Judgment:* The order appealed from disposed of all claims as to all parties and terminated the litigation below.

## JURISDICTIONAL STATEMENT

This is an appeal from the district court's granting the Defendants' motion for summary judgment as to all three counts of Plaintiffs' Second Amended Complaint on July 1, 2026, terminating the litigation. The district court had subject matter jurisdiction of the case as a federal question pursuant to the Racketeer Influenced and Corrupt Organizations Act (hereafter "RICO"), which was asserted as the first count of the Complaint, thus creating a federal question pursuant to 28 U.S.C. § 1331. Plaintiffs-appellants filed a timely notice of appeal on July 30, 2026. Therefore, this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. Thereafter, appellees filed a cross-appeal.

## STATEMENT OF THE ISSUES

1. Whether there was enough evidence that Defendants sought to obtain DEFCAD's business to defeat summary judgment and

prevail at trial. DEFCAD had ample evidence of this.

2. Whether the district court erred in concluding that the federal wire fraud statute, 18 U.S.C. § 1343, requires the defendant, rather than a third party, obtain the victim's property. This Court held in *United States v. Maxwell*, 579 F.3d 1282, 1303 (11th Cir. 2009) that the mail fraud statute encompassed a scheme in which a third party, the defendant's employer, obtained the victim's property. This is essentially what occurred here. A third party, the RICO enterprise, obtained the Plaintiff's property.
3. Whether the requirement that a RICO plaintiff's claim for damages be "proximately" caused by the predicate act(s) was not satisfied because Plaintiffs did not identify specific customers who ceased doing business with it because of Defendants' scheme to make false accusations against it on the internet.
4. Whether the Lanham Act claim for false advertising requires the plaintiff to present evidence of specific lost customers rather than expert testimony that plaintiff's revenue loss was caused by the false advertising.

## STATEMENT OF THE CASE

*Statement of Facts*

Plaintiffs are closely held entities in the business of lawfully selling 3D guns and related accessories from their Austin, Texas headquarters. (The three will hereafter be referred to as "DEFCAD.") (Doc. 49 - Pg 2.) Defendants Matthew Larosiere and Alexander Holladay own and operate MAF Corp., incorporated and operated in Florida, which sells some of the same gun accessories as DEFCAD and is therefore a business rival of Plaintiffs. (Doc. 49 – Pg 1.) In 2023, Larosiere and Holladay, who are also outspoken Second Amendment activists, began an online campaign to damage DEFCAD (hereafter "the scheme"). (Doc. 49 – Pg. 4) They enlisted co- Defendants Elik, Stroke, Celentano, Lettman and Clark to execute the smear campaign by designing a meme entitled "FEDCAD," a play on DEFCAD, in large, bold font, followed by a lengthy and detailed attack on DEFCAD and its principal, Cody Wilson, which, *inter alia,* asserted that DEFCAD's customer data had been "doxxed," i.e., published on the internet. These false allegations played on the fear of disclosure, which is important to DEFCAD's customers. (Doc. 49 – Pg. 4-5)

Defendants then cooperated in amplifying this FEDCAD meme on X, Reddit and other popular internet platforms to cause maximum damage to DEFCAD and divert its customers to MAF. (Doc. 49 – Pg. 4-5.) Larosiere and Holladay even issued MAF discount codes to their co-Defendants to publish online to increase its business. The smear campaign was devastatingly effective. It led directly to lost sales, costing DEFCAD over $2 million by mid 2026. (Doc. 161)

In 2025, Larosiere sued DEFCAD for copyright infringement in the Middle District of Florida. DEFCAD countersued, alleging lost profits from the smear campaign under RICO and the Lanham Act. In early 2026 DEFCAD voluntarily dismissed the counterclaim and refiled it as a new case in the Southern District of Florida.

The district court denied Defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss the RICO, Lanham Act and Florida tortious interference claims. (DEFCAD is not appealing the dismissal of the tortious interference claim.). DEFCAD retained Jason Tyra, an accountant with considerable experience working with consumers of 3D guns, to opine that the meme caused DEFCAD's losses and the extent of the losses. Defendants did not retain a rebuttal expert. (Doc. 144.)

Defendants moved for summary judgment as to both the RICO and Lanham Act counts. (Doc 147.)

*Standard of Review*

In July 2026 the court granted Defendants' motion as to both counts on the grounds, stated *supra*, in § II. Essentially, in the court's view, both RICO and the Lanham Act require DEFCAD to prove it lost customers only one way: by having each customer testify as to its reasons for ceasing to do business with DEFCAD. Without deciding the *Daubert* challenge to Tyra's testimony it refused to credit Mr. Tyra's testimony as to causation. The district court also misinterpreted the federal wire fraud statute, 18 U.S.C. § 1343, and held it does not apply here because the Defendants sought to obtain money for MAF, the RICO enterprise, rather than themselves. In the court's view, that falls outside the statute's reach. (Doc. 179.)

As stated *infra,* DEFCAD contends all four of the district court's holdings are wrong, as described *infra.*

## SUMMARY OF THE ARGUMENT

*I. There is ample evidence the scheme was undertaken to damage DEFCAD and obtain its income*

Defendants Larosiere and Holladay co-own the RICO enterprise

MAF Inc., which sells some of the same parts and kits for building 3D guns, as does DEFCAD. (Doc. 162 - Pg 3-4.) Therefore, the two entities are competitors. Holladay also owns and operates a business called CtrlPew, which offers users the ability to share 3D gun files, as does DEFCAD. Accordingly, the district court's conclusion that the case is simply "online criticism of a company's business practices…" and "does not constitute a scheme to obtain money or property from Plaintiffs," is wrong. (Doc. 179 - Pg 5.) (The Opinion is hereafter referred to as "Op.") Reversal is required. *See, e.g., Strickland v. Norfolk Southern Ry. Co.,* 692 F.3d 1151, 1162 (11th Cir. 2012) (reversing summary judgment due to the district court's failure to consider relevant evidence).

*II. The district court erred in holding that the wire fraud scheme alleged here required DEFCAD to prove the Defendants obtained its money*

DEFCAD's RICO claim is predicated upon the violation of the federal wire fraud statute, 18 U.S.C. § 1343, which prohibits "scheme[s]… to defraud, or for obtaining money or property by means of false or fraudulent, representations…". [1] The statute has been interpreted to

[1] DEFCAD cites cases interpreting both the mail and wire fraud statutes. Courts interpret the statues in tandem. *See e.g., Ciminelli v. United States,* 598 U.S. 306, 312 n. 2 (2023).

mean "the object of the fraud be 'property' in the victim's hands…". *Cleveland v. United States,* 531 U.S. 12, 26 (2000). There is no question that the scheme here was intended to damage DEFCAD's business by deterring customers from dealing with it. There is also no question that the loss of profits to a business is injury to "business or property."[2] *See, e.g., Maiz v. Virani,* 253 F.3d 641, 663 (11th Cir. 2001) ("there is no automatic rule against the recovery of any type of lost profits or lost value damages if proximate cause is shown," affirming judgment of lost profits in RICO action). But DEFCAD was not required to prove that Defendants personally obtained money from the scheme, as the district court erroneously believed. As *Maxwell* makes clear, it is sufficient that the scheme was intended to benefit the RICO enterprise. This is also made clear by two recent decisions of other circuits. *See United States v. Porat,* 76 F.4th 213, 221-222 (3d Cir. 2023)("Case law also lends no support for a requirement that the defendant seek to personally obtain property," affirming conviction of defendant who did not obtain anything from his scheme but sought to benefit his employer); *accord, United*

---

[2] RICO's civil damages provision, 18 U.S.C. § 1964(c), permits a plaintiff to recover damages to its "business or property."

*States v. Gatto,* 986 F.3d 104, 124-25 (2d Cir. 2021)("By the plain language of the statute, the identity of the ultimate beneficiary is not dispositive and the plain meaning of the word 'obtain' is sufficiently capacious to encompass schemes by defendants to obtain money for the benefit of a favored third party," affirming conviction of defendant who did not obtain the victim's property).

### *III. The district court erred in holding that RICO and the Lanham Act's requirement of proximate causation can only be met by identifying specific lost customers*

DEFCAD can prove its damages were proximately caused by the Defendant's scheme without the testimony of lost customers pursuant to the Lanham Act's damage provision, 15 U.S.C §1117(a). How it proves that it lost customers has nothing to do with the concept of "proximate causation," which requires that "the defendant's actions must be a 'substantial factor' in the sequence of events that led to the plaintiff's injury." *Watson v. Kingdom of Saudi Arabia*, 159 F.4th 1234, 1260 (11th Cir. 2025). This Court has applied that standard to civil RICO claims. *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1399 (11th Cir. 1994) (reversing summary judgment). Moreover, proximate causation can, and often is, proven by expert testimony, as DEFCAD was prepared

to do here. *See, e.g., Apple Inc. v. Pepper,* 587 U.S. 273, 286 (2019) (acknowledging "Expert testimony will often be necessary," to prove damages in antitrust cases). This is no less true in Lanham Act and RICO cases, which are also complex. Neither the Defendants nor the district court cited any authority for the proposition that DEFCAD was required to name its lost customers, which is atypical in false advertising cases. *See, e.g., Safari Programs, Inc. v. CollectA Int'l Ltd.*, 2018 WL 3730894 at *2-3 (S.D. Fla. April 16, 2018) ("As the Lanham Act recognizes, it is virtually impossible to establish that sales were not made due to a false advertisement… One cannot possibly know of the customers that decided not to call because of something false that they read."). In *Safari* the district court entered damages based upon the plaintiff's accountant's testimony as to lost profits without any evidence of specific lost customers. *Id.* at *6.

## ARGUMENT

### *I. There is sufficient evidence Defendants have conspired to harm DEFCAD and obtain its business to defeat summary judgment.*

There was ample evidence that Defendants Larosiere and Holladay were motivated by their desire to gain revenue for their online businesses to meet DEFCAD's burden of showing the scheme involved obtaining

property. Specifically, DEFCAD offered the declaration of Eric Goldhaber, a 3D gun designer and Second Amendment activist who posts online about GunCAD culture.[3] Goldhaber Declaration at ¶3 (Doc. 157.) He stated that MAF Corp. and DEFCAD are competitors because "they sell some of the same parts and accessories for building 3D-printed guns." *Id.* at ¶10. He further stated that the campaign to disparage DEFCAD "had a far reach in the GunCAD community. I believe that most active participants in the GunCAD community, like me, have seen the FEDCAD meme (or another anti-Wilson statement) published by Defendants hundreds (if not thousands) of times." Id. at ¶11. Defendant Holladay testified MAF Corp. was in the business of selling "firearms parts," specifically "triggers, barrels… accessory parts, grips, hand guards," and those parts could be used "with any compatible gun." Holladay dep. tr. at p. 19. Defendant Elik testified he designed a gun called Plastikov version 4, and that DEFCAD sold its accessories. Elik dep. tr. at pp. 303-04. Larosiere confirmed that MAF also sold the same accessories in a "kit."

[3] Gun CAD refers to "the open-source community, digital files and movement surrounding do-it-yourself and 3D-printed firearms and accessories using computer-aided design (CAD) software." Wikipedia, viewed October 29, 2026.

Larosiere Rule 30(b)(6) dep. tr. at p. 39. This also demonstrates the two businesses compete for customers in the same market, buyers of gun parts sold online.

This participation in the retail gun accessories market is further demonstrated by the State of California's lawsuit against Larosiere and Holladay for illegally distributing guns and accessories, which DEFCAD intended to raise at trial. [4]

The Complaint alleges, in relevant part, that they

> distribute files for 3D printing prohibited firearm accessories. These include, for example: auto-sears, large capacity magazines; silencers; and various accessories, attachments, or devices that may be used to render a firearm an illegal assault weapon. Defendants sell merchandise, take donations, maintain affiliate links, and sell firearm parts kits designed to complete 3D printed firearms.

The Complaint further alleges:

> Defendants Larosiere and Holladay operate another company- MAF Corp.- that sells parts kits specifically designed to complete the firearms printed using the Gatalog's digital firearms code… MAF Corp. is also featured in the Getting Started Guide, as well as on individual design pages, as a 'preferred parts vendor[].' The instruction manuals that accompany many of the Defendants' digital code files also

---

[4] *The People of the State of California v. Gatalog Foundation Inc., et al.*, case CGC-26-633508 (Superior Court, County of San Francisco), filed February 6, 2026, ¶¶51-52.

recommend purchasing parts from MAF Corp. in order to complete the firearm build.[5]

Defendants Motion for Summary Judgment devoted two pages to the supposed lack of competition with DEFCAD. (Doc. 147 – Pg 18-19.) ("Plaintiffs Cannot Prove any Defendant is Plaintiff's Commercial Competitor.") In responding DEFCAD cited its contrary evidence which establishes such competition. *See* Doc. 162 - Pg 4.), ("MAF Corp. and Defense Distributed are competitors because they sell some of the same parts and accessories for building 3D-printed guns. SMF ¶91"). The district court ignored it and just assumed there was no commercial rivalry.

Accordingly, summary judgment should not have been granted on the ground that the evidence failed to show Defendants' scheme entailed obtaining DEFCAD's business (property). This scheme was not mere "online criticism," as the district court believed. Op. at p. 5. The district court simply ignored all the evidence of business competition. This was error. *See, e.g., Carrizosa v. Chiquita Brands, International, Inc.,* 47 F.4th 1278, 1329 (11th Cir. 2022) ("At the summary judgment stage of the

[5] *Id*. ¶90. (Doc. 159, ex. 1; 165 ¶85.)

proceedings, however, courts are required to consider the totality of the evidence adduced in [the] summary judgment record," reversing summary judgment on the basis of failure to do so). Thus, under the *de novo* standard of review applied in summary judgment cases, *Yarborough v. Decatur Housing Authority*, 941 F.3d 1022, 1026 (11th Cir. 2019), reversal is required.

*II. The district court erred in concluding that the wire fraud statute requires DEFCAD to prove Defendants "obtained" its property*

The district court's entry of summary judgment was also predicated on its incorrect interpretation of the federal wire fraud statute. It held, "Online criticism of a company's business practices- even if false- does not constitute a scheme to obtain money or property from the company…". Op. at p.5. The district court did not cite anything in support of that proposition. As demonstrated above, the evidence shows otherwise. Defendants *were* trying to take and profit from DEFCAD's customers. It was also wrong as to the law. To prove a wire fraud violation, the government, in a criminal case or the plaintiff in a civil RICO case, must establish "(1) intentional participation in a scheme to defraud, and, (2) the use of the interstate… wires in furtherance of that scheme…". *United States v. Estapa*, 998 F.3d 898, 908 (11th Cir. 2021). "A scheme to defraud

requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property." *Id.* But the mere goal of obtaining the property, or of doing so for the benefit of a third party, is sufficient. As the Third Circuit recently held:

> Case law lends no support for a requirement that the defendant seek to personally obtain property. It is true that, at times, the Supreme Court has referred to the money-or-property requirement in terms of either 'depriving' the victim of money or property, or 'obtaining' money or property… But in varying the language it has used to describe the money- or-property element, the Court has never suggested that the defendant must seek to personally obtain property.

*Porat*, 76 F.4th at 221-22. In that case the Court affirmed the wire fraud conviction of a defendant, the dean of a business school, who submitted false information to rankings publications to raise the ranking of his school, a scheme which did not entail obtaining property for himself. Rather, it "influenced student enrollment decisions." *Id.* at 217. The Court stated, "the plain meaning of the word 'obtain' is sufficiently capacious to encompass schemes by defendants to obtain money for the benefit of a favored third party," citing *United States v. Gatto*, 986 F.3d 104, 124 (2d Cir. 2021). Id. at 221.

Likewise in *Gatto*, the Second Circuit affirmed the wire fraud

conviction of defendants, employees of Adidas, the athletic apparel company, of paying the families of student athletes to entice them to enroll at certain colleges in violation of NCAA rules. *Gatto*, 986 F.3d at 111. The scheme was intended to damage the universities by inducing them to offer financial aid to the students. The aid would not have been offered if the schools had known that the students were ineligible for the aid by violating N.C.A.A. rules. Defendants did not seek to obtain any property for themselves. Nevertheless, the Court held that while "Defendants may have had multiple objectives, but property need only be 'an object' of their scheme,' not the sole or primary goal… depriving Universities of athletic-based aid was at the center of the plan." *Id.* at 116 (internal citation omitted). The decision relied upon the Supreme Court's opinion in *Kelly v. United States*, 590 U.S. 391, 401-402 (2020) which overturned a wire fraud conviction where the defendant's scheme was merely to "alter a regulatory decision" concerning traffic. It reasoned that "property must play more than a bit part in a scheme: It must be an 'object of the fraud. Or put differently, a property fraud conviction cannot stand when the loss to the victim is only an incidental byproduct of the

scheme." *Id.* at 402 (internal citations omitted).[6] That is certainly true here. The sole object of Defendants' scheme was to harm DEFCAD's business, i.e., its property, by taking away its customers.

While this Circuit has not decided a mail or wire fraud case examining this aspect of the offense, it has explicitly held that a conviction can be affirmed even though the scheme did not succeed. *United States v. Dynalectric Co.,* 859 F.2d 1559, 1576 (11th Cir. 1988) (affirming conviction in which the jury instruction provided that "the jury did not have to find that the scheme to defraud actually succeeded.") Thus, there is no requirement that the intended victim have lost anything, merely that the scheme envisioned such. The Court noted that "Convictions in pre-*McNally* mail fraud cases involving bid rigging withstood sufficiency of the evidence challenges absent an explicit showing that the victim actually lost money," collecting cases. *Id.* at 1577. It has also affirmed convictions where the defendant did not obtain any

---

[6] *See also, Frydman v. Verschleiser,* 172 F. Supp. 3d 653, 670 (S.D.N.Y. 2016)("Such lost contracts [caused by mail and wire fraud] loans and leases would be something that constitutes 'property' in the hands of the victim. It was unnecessary to allege that the defendants personally intended to obtain the property of which the plaintiff was deprived," denying motion to dismiss RICO action).

property. Rather, his employer obtained the benefits of the scheme. *See, e.g., United States v. Poirier,* 321 F.3d 1024 (11th Cir. 2003); *see also, United States v. Maxwell,* 579 F.3d 1282 (11th Cir. 2009). In *Maxwell* the court explained the government's theory as follows: "But through Maxwell's scheme, FLP obtained construction contracts and substantial payments from the County and the United States for which it was not eligible. By orchestrating an elaborate scheme passing on the… payments to Fisk, Maxwell defrauded both sovereigns." *Id.* at 1303. That is precisely what happened here. Defendants committed fraud to benefit MAF Corp, and derivatively, its owners, Larosiere and Holladay. Similarly, this Court has affirmed a civil RICO judgment in a wire fraud case in which the defendants did not directly obtain the victims' money. *See, Maiz v. Virani,* 253 F.3d 641 (11th Cir. 2001). Rather, the defendants were found to have fraudulently solicited investments in real estate partnerships, altered their books and records, and then extracted secret payments from the partnerships and otherwise used them to "cover their own expenses as well as the fees of counsel." *Id.* at 652. Accordingly, there is no precedent for the district court's erroneous demand for evidence that the Defendants personally "obtain" money from DEFCAD to prove a wire fraud violation.

The Supreme Court upheld the use of RICO in a very similar unfair competition context in which the damages were lost profits. See *Bridge v. Phoenix Bond*, 553 U.S. 639 (2008). In holding the claim did not require the plaintiff to prove that the defendant relied upon its false statements, which were instead made to Cook County, Illinois, which sponsored the auction where property tax liens were sold, the court stated:

> Or to take another example, suppose an enterprise that wants to get rid of rival businesses mails misrepresentations about them to their customers and suppliers, but not to the rivals themselves. If the rival businesses lose money because of the misrepresentations, it would certainly seem that they were injured in their business 'by reason of' a pattern of mail fraud, even though they never received, and therefore never relied upon, the fraudulent mailings.
> *Id.* at 649-50.

This is precisely what happened here. Yet the district court simply ignored the evidence of Defendants' intent to "get rid of" DEFCAD in order to get rid of this case. This Court similarly upheld a $9 million RICO judgment for a group of plaintiffs who sued a business rival for engaging in a "smear campaign to harm Plaintiffs' reputation and steal their clients." *Hartman v. Does* 1-2, 2025 WL 398846 at *1 (11th Cir. February 4, 2025). Nevertheless, the district court believed Hartman "forecloses Plaintiffs' theory as a matter of law." Op. at p.4. Citing

*Ciminelli v. United States*, 598 U.S. 306, 316 (2023), the district court believed DEFCAD did not allege a scheme to obtain its property. That was wrong for all the reasons cited above. Thus, there is no basis to distinguish *Hartman*.

To sum up, DEFCAD alleged a scheme to damage its business and obtain its sales revenue. This is actionable as wire fraud. The district court was wrong to hold otherwise and grant judgment for Defendants on this basis.

### *III. The district court wrongly concluded that the evidence demonstrated the absence of proximate causation needed to prove the RICO and Lanham Act claims*

#### *i. RICO*

In order to prove a RICO claim, a plaintiff must plead and prove that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity, which (5) proximately caused (6) injury to the plaintiffs' business or property. *Otto Candies LLC v. Citigroup, Inc.*, 137 F.4th 1158, 1196 (11th Cir. 2025). As discussed above, the district court believed there was no racketeering activity (wire fraud) because Defendants did not obtain DEFCAD's property. It also believed DEFCAD's damages, lost sales, was not sufficiently tied to the RICO

violations because DEFCAD did not have evidence of specific lost customers. It stated, "Moreover, the record contains no testimony from any customer who saw a specific statement by a specific defendant and then cancelled a subscription or declined to purchase." Op. at p. 6. The court gave no credence to DEFCAD's causation and damages expert witness because his report did not implicate the acts of a specific defendant. It stated, "The expert's damages conclusion does not depend on who caused the alleged harm." *Id.* That was true but irrelevant. Mr. Tyra opined on causation and damages. He concluded that the meme caused consumers to switch from DEFCAD's website to theirs.[7] His methodology was a basic before-and-after analysis of DEFCAD's revenues. He concluded DEFCAD's sales declined by $2.6 million from the creation of the meme through October 2025.[8] The district court found no issues with this methodology or his conclusions.

The Court also refused to credit Mr. Goldhaber's testimony that Defendant's meme was pervasive on the internet and would have

[7] Tyra Report at p. 7. (Doc. 144 Ex. A.)

[8] *Id.* at p. 14. He considered the effects of other potential "social, regulatory and macroeconomic factor[s] over the same period" and concluded they were not reasonable explanations. Defendants did not retain a rebuttal expert.

influenced potential customers in the GunCAD community. It did so, for the same reason, he did not identify "any customer or designer who altered their behavior…" *Id.*

The district court was incorrect in its assessment of "proximate causation," which is a requirement of directness between the RICO violation and the ensuing damage to the plaintiff, not how the plaintiff proves the damage. *See, e.g., Holmes v. Securities Investor Protection Corporation,* 503 U.S. 258, 268 (1992) ("Accordingly, among the many shapes this concept [proximate cause] took at common law, was a demand for some direct relation between the injury asserted and the injurious conduct alleged… Although such directness of relationship is not the sole requirement of Clayton [antitrust] Act causation, it has been one of its central elements…") (internal citations omitted). Thus, the *Holmes* court adopted the common law and antitrust requirement of a "direct relationship" to RICO. It barred the claim of the plaintiffs, whose injuries were deemed "indirect" because the proper plaintiffs were the directly injured purchasers of manipulated securities, who had already filed suit. *Id.* at 273, ("As noted above, the broker-dealers have in fact sued in this case…"). The Court reiterated this requirement of directness of

relationship between RICO violation and injury in *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451 (2006), again holding that an indirectly injured plaintiff could not pursue its RICO claim because the claim belonged to the directly injured victim of the RICO violation, New York State. *Id.* at 458 ("The direct victim of this conduct was the state of New York, not [plaintiff] Ideal."). As in *Holmes, t*he Court reasoned that the difficulties of allowing indirectly injured plaintiffs to sue would be outweighed by the difficulty in proving causation in cases of indirect injury. *Id.* ("The less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent factors."). The decision says nothing about directly injured victims nor how they can prove causation or damages. The Supreme Court's proximate causation analysis in *Hemi Group, LLC v. City of New York,* 559 U.S. 1 (2010), Op. at 5, once again focused on the necessity of direct injury. There it rejected New York City's attempt to sue for lost cigarette tax revenue as it had no "direct relationship" with defendant Hemi Group, which first cheated New York State. *Id.* at 11-12 ("One consideration we have highlighted as relevant to the RICO 'direct relationship' requirement is whether better situated

plaintiffs would have an incentive to sue.”). There is no better party to sue than Defendants here for DEFCAD’s lost profits.

As the Supreme Court held in *Bridge,* a directly injured business can sue a competitor for making false statements to a third party. *Bridge,* 553 U.S. at 649-50. There is no court-imposed requirement as to how a plaintiff directly injured by a RICO violation is to prove its case. It is free to establish causation and damages through expert testimony. This Court has permitted lost profit damages to be awarded in a RICO case by testimony of an expert witness who makes assumptions about the but-for scenario that would have occurred absent the fraud. *Maiz,* 253 F.3d at 664 (“Suffice it to say while damages may not be determined by mere speculation or guess, it will be enough if the evidence shows the extent of the damages as a matter of just and reasonable inference”)(internal citation omitted). The district court did not apply this lenient standard to proving damages. Instead, it applied the inapt bar intended for cases of indirect injury.

The court’s statement that “injuries dependent on independent actions of customers or designers are too remote to satisfy RICO’s proximate cause requirement,” Op. at 6, is refuted by many cases of the

Supreme Court and this Court. *Bridge* allowed RICO damages even though the decision of Cook County to award tax liens at auction among numerous bidders intervened between the fraudulent statement to the county and when the damage occurred, at the auction. Thus, the Court held, "the common law has long recognized that plaintiffs can recover in a variety of circumstances where, as here, their injuries result *directly* from the defendants' fraudulent misrepresentations to a third party." *Id.* at 653 (emphasis added). The Court added this:

> As an illustration, the Restatement provides the example of a defendant who seeks to promote his own interests by telling a known falsehood to *or about* the plaintiff or his product.
>
> *Id.* at 657, quoting Restatement (Second) of Torts § 870, Comment h.

So, the district court was wrong as a matter of law.[9] DEFCAD can recover if it was directly injured by Defendants' false statements to third parties, customers and potential customers. And it was directly injured by those false statements. The district court did not hold DEFCAD's injury was indirect, i.e., derivative of injury to someone else. Moreover, the need for an expert witness to opine on causation and the amount of

---

[9] The standard of review for the review of a summary judgment is *de novo*. *U.S. All Star Fed'n. Inc.*, 179 F.4th 883 at 893. The district court did not decide the admissibility of DEFCAD's expert witness.

damages is not unusual. As the Supreme Court stated, "Expert testimony will often be necessary [in proving damages]. But that is hardly unusual in antitrust cases." *Apple Inc. v. Pepper,* 587 U.S. 273, 286 (2019). This is no less true in RICO. It has nothing to do with the directness of the injury or proximate cause.

The district court cited only *Ray v. Spirit Airlines, Inc.,* 836 F.3d 1340 (11th Cir. 2016) in support of its holding on proximate causation. But there the plaintiff's theory of fraud was that consumers were deceived into purchasing tickets by the airline's listing its "Passenger Usage Fee" in the taxes section of its promotions. This Court concluded that theory of fraud was not plausible because the complaint failed to allege customers would not have purchased tickets if they had known the truth, that the fee was not a tax. *Id*. at 1350. The court described the theory of causation as "utterly implausible." *Id*. This lends no support to the district court's interpretation of the case as holding that proximate causation was defeated by "independent decisions of customers." This Court has upheld RICO claims dependent upon the decisions of third parties. *See, e.g., Hartman,* 2025 WL 398846 at *2 (RICO claim for lost profits dependent upon decisions of customers to stop doing business with

plaintiff due to defendant's online smear campaign); *Corcel Corp., Inc. v. Ferguson Enterprises, Inc.*, 551 Fed. Appx. 571, 577 (11th Cir. 2014)(RICO claim for lost profits dependent upon County's discretion in awarding contract to plaintiff); *Maiz,* 253 F.3d at 662 (RICO claim for lost profits dependent upon "estimate of the return that would have been generated if the equivalent funds had been placed in a real estate investment trust…"); *Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1288 (11th Cir. 2006)(RICO claim for depressed wages caused by hiring illegal workers dependent upon employer's discretion in setting wage rates and the labor market); *Cox,* 17 F.3d at 1399 (RICO claim for bribery of union negotiators dependent upon whether those negotiators made bargaining concessions because of the bribes or due to other factors). After all, as this Court recognized, the RICO violation need only be "a substantial factor in causing the plaintiff's injury," not the "sole cause" of the injury. *Id.*, quoting W. Page Keeton *et al., Prosser and Keeton on the Law of Torts* §41, at 268 (5th ed. 1984).

None of these cases holds that proximate causation in a RICO claim would require DEFCAD to prove its loss by the testimony of lost customers. Rather, as both the Supreme Court and this Court have

stated, proximate cause is a "flexible concept." *Bridge,* 553 U.S. at 654 ("Proximate cause, we explained, is a flexible concept that does not lend itself to a 'black-letter rule that will dictate the result in every case") (internal citation omitted); *Walker v. CSX Transportation, Inc.,* 650 F.3d 1392, 1399 (11th Cir. 2011) ("No universal formula governs proximate-cause analysis. Rather, it is a mixed question of law and fact 'to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy and precedent. Typically, therefore, the inquiry is appropriately left to the jury") (internal citation and quotations omitted). It can be proven by "circumstantial evidence." *Cox,* 17 F.3d at 1400. In reversing the summary judgment as to causation in *Cox,* this Court held the plaintiffs could prove causation, namely that their union negotiators made particular concessions in collective bargaining because of bribes by inferences based on the conduct of the management negotiators, where the discussions were held, and the desire of the negotiators to keep them secret. *Id.* at 1401-02. This establishes that the district court's demand for one type of proof of causation was overly rigid. There is no such requirement. And as the discussion below indicates, proximate causation in false advertising Lanham Act cases

does not require the plaintiff to show lost customers either.

Accordingly, the district court's proximate causation analysis of the RICO claim was wrong and must be reversed. DEFCAD can prove its injury was proximately caused by Defendant's scheme through its expert witness, its other witnesses and the common sense of the fact finder.

*ii. The Lanham Act claim*

"To succeed on a false advertising claim under §43(a)(1)(B) a plaintiff must establish that (1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been- or is likely to be – injured as a result of the false advertising." *Hickson Corp. v. N. Crossman Co.,* 357 F.3d 1256, 1260-61 (11th Cir. 2004). [10] The first element "is satisfied if the challenged advertisement is literally false, or if the

[10] This provision is codified at 15 U.S.C. § 1125(a) and prohibits, in relevant part the use of any "false designation of origin, false or misleading description of fact, which… (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin or his or her or another person's goods, services, or commercial activities…"

challenged advertisement is literally true, but misleading." *Osmose, Inc. v. Viance, LLC,* 612 F.3d 1298, 1308-09 (11th Cir. 2010).

The Lanham Act damages provision, 15 U.S.C. § 1117, is based on equitable principles, which are plaintiff friendly. [11] *See, e.g., Nutradose Labs, LLC v. Bio Dose Pharma, LLC,* 710 F. Supp. 3d 1200, 1233 (S.D. Fla. 2024) ("Any doubts about the actual amount of gross sales or profits will be resolved against the infringing party… But to hold otherwise would gve the windfall to the wrongdoer.") (internal citation and quotations omitted). Judges are given "wide discretion" to fashion just remedies. *See, Aronowitz v. Health-Chem Corp.,* 513 F.3d 1229, 1241 (11th Cir. 2008). Damages need not be "susceptible to precise calculations." *Id.* Consequently, there are no hard and fast rules for proving lost profits, The district court's rigid requirement of tying lost profits to a showing of specific lost customers comes out of nowhere and has nothing to support it.

Moreover, liability under the Lanham Act for false advertising is

---

[11] This provision provides, in relevant part, that upon finding a violation of §1125(a), "the plaintiff shall be entitled… subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."

broader than under RICO. It permits recovery for "economic or reputational injury." *Lexmark Intern., Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 133 (2014). Injury to reputation is not, by itself, redressable under RICO. The meme disparaged DEFCAD's business by falsely asserting it had been hacked and customer information made public. As *Lexmark* states, "When a defendant harms a plaintiff's reputation by casting aspersions on its business, the plaintiff's injury flows directly from the audience's belief in the disparaging statements." *Id.* at 138. Requiring DEFCAD to prove potential customers did not do business with it is like trying to prove a negative. *Safari,* 2018 WL 3730894 at *2-3 (S.D. Fla. April 16, 2018) ("As the Lanham Act recognizes, it is virtually impossible to establish that sales were not made due to a false advertisement… One cannot possibly know of the customers that decided not to call because of something false that they read."). Accordingly, remedies include "profits lost by the plaintiff on sales made at prices reduced as a demonstrated result of the false advertising," the cost of advertising to counter the "defendant's offending ads," and "quantifiable harm to the plaintiff's good will, to the extent that completed corrective advertising has not repaired the harm." *ALPO*

*Petfoods, Inc. v. Ralston Purina Co.,* 913 F.2d 958, 969 (D.C. Cir. 1990) (collecting authorities); *see also, Hard Candy, LLC v. Anastasia Beverly Hills, Inc.,* 921 F.3d 1343, 1353 (11th Cir. 2009) (discussing the five categories of damages available). None of these categories of damages requires proof of specific lost customers.

This Court has holds that in cases alleging false advertising where the plaintiff is seeking an injunction, the proper procedure is for the district court to first determine if the advertising is literally false. "If the court deems an advertisement to be literally false, then the movant is not required to present evidence of consumer deception." *Id.* at 1318-19; *accord, JVC Kenwood USA Corp. v. Stratton AV Corp.,* 2024 WL 6963320 at *3 (S.D. Fla. August 30, 2024) ("Deception is presumed in cases-such as this one-of literally false advertising"). This is no less true in cases where damages, not injunctive relief, are sought. *See, e.g., Stiefel Laboratories, Inc. v. Brookstone Pharmaceuticals, L.L.C.,* 535 Fed. Appx. 774, 776 (11th Cir. 2013) ("a plaintiff alleging literally false statements need not present evidence of deception").[12] Nevertheless, the district

[12] The district court ignored the materiality requirement of the false advertising claim. However, it is a "mixed question of law and fact that requires delicate assessments of the inferences that a reasonable person

court decided the motion for summary judgment without examining the evidence supporting DEFCAD's theory of literal falsity. This was error. If the advertising is deemed to be false, then DEFCAD's burden of proof is lessened as to liability and damages.

*iii. The meme is "commercial advertising"*

The Motion for Summary Judgment argued the meme does not qualify as "commercial speech." (Doc. 147 – Pg 13-14.) The argument is that mere criticism, such as the meme, does not propose a commercial transaction and thus, is not covered by the Lanham Act. But, as argued above, Larosiere and Holladay are not simply critics of DEFCAD and Wilson, they are commercial rivals through MAF Corp. Their co-conspirators crafted the meme to influence DEFCAD's customers. That is enough. *See, e.g., Suntree Technologies, Inc. v. Ecosense Intern., Inc.*, 693 F.3d 1338, 1349 (11th Cir. 2012). There this Court adopted a four-part test for "determining whether something is commercial advertising or promotion." These criteria are "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the

---

would draw from a given set of facts, and therefore that such assessments are peculiarly ones for the trier of fact." *U.S. Structural Plywood Integrity Coalition v. PFS Corp.*, 2022 WL 953150 at *31 (S.D. Fla. 2022).

purpose of influencing consumers to buy defendant's goods or services… (4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Id.* The meme meets all these criteria. It was disseminated widely by the Defendants to harm DEFCAD. Thus, a statement constituting pure criticism, and not promoting the defendant's product or service, will qualify if it is aimed at harming the plaintiff's business. *See, e.g., Matonis v. Care Holdings Grp., L.L.C.,* 423 F. Supp. 3d 1304, 1313-14 (S.D. Fla. 2019) (holding that cease-and-desist letters which maligned the plaintiff and were sent to former clients were "commercial speech" because they were sent to "advance business interests"). Thus, Defendant's meme was commercial advertising.

*iv. Larosiere and Holladay's co-conspirators are proper Lanham Act Defendants*

This Court recognizes that third parties can be liable for false advertising if the Defendant "contributed to that conduct… " *Duty Free Americas, Inc., v. Estee Lauder Companies, Inc.,* 797 F.3d 1248, 1277 (11th Cir. 2015). This is done by showing that the defendant furthered the conduct "by inducing it, causing it, or in some other way working to bring it about." *Id.* The evidence supported this theory against each defendant. They all agreed to disseminate the meme knowing it was false.

v. *Proximate causation*

The motion for summary judgment cited *TocMail, Inc. v. Microsoft Corp.,* 67 F.4th 1255 (11th Cir. 2023) in support of its argument that to prevail DEFCAD must identify specific lost customers. (Doc. 147 - Pg 7.) But *TocMail* does not so hold. It affirmed summary judgment for Microsoft because TocMail, a "relative newcomer" to the cybersecurity market with no actual sales of its product, "relied on the presumption of injury that some courts have held arises in a two-player market." *Id.* at 1261. But there was no evidence of lost sales. *Id.* at 1264 ("There's no testimony, survey, or other evidence showing lost sales."). The Court did not hold TocMail needed to produce a list of specific lost customers. It held its claim of lost sales was totally unsupported. Thus, the case has no application here. DEFCAD has a history of sales, and those sales declined after the meme was published. It has an expert to opine on causation and damages. Yet the district court accepted Defendants' misleading argument that *TocMail* holds a plaintiff must show specific lost customers in order to prove causation. Op. at p.7 ("There, [in *TocMail*] the Eleventh Circuit held that a Lanham Act plaintiff must present specific, customer-level evidence showing that the challenged statements caused identifiable consumers to withhold trade. *Id.* at 1263, 1266."). The decision says no

such thing. At most, it demands concrete evidence of injury to establish article III standing, which is not at issue here.

As with RICO there is no specific way to establish proximate causation for false advertising under the Lanham Act. A leading treatise explains:

> While the plaintiff must prove causation, it does not have to negate every conceivable intervening factor which might have caused a decline in sales. Once plaintiff has made a prima facie showing of causation, defendant has the burden of showing, if it can, that plaintiffs' losses were caused by something other than defendant's false advertising.

*McCarthy on Trademarks and Unfair Competition,* vol 4. 27:30 (2026-2 ed.)

DEFCAD made such a showing. The fact finder should now decide the rest. Defendants were not entitled to judgment on Count II, the Lanham Act claim.

## CONCLUSION

DEFCAD askes this Court to reverse the summary judgment for Defendants on Counts I (RICO) and Count II (Lanham Act) and to remand the case for trial. [13]

[13] DEFCAD does not appeal the judgment on Count III (tortious interference under Florida tort law).

Respectfully Submitted,

*/s/ Howard Foster*

Howard Foster
FOSTER PC
155 N. Wacker Drive, Suite 4250
Chicago, Illinois 60606
(312) 726-1600
hfoster@fosterpc.com

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and 11th Cir. R. 28-1(l) because this brief contains 7,493 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 28-1.
2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using 14-point font (including footnotes) in plain roman style.

Date: November 9, 2026

*/s/ Howard Foster*

Howard Foster
FOSTER PC
155 N. Wacker Drive, Suite 4250
Chicago, Illinois 60606
(312) 726-1600
hfoster@fosterpc.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2026, I electronically filed the foregoing Appellant's Initial Brief with the Clerk of Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Howard Foster*

Howard Foster
FOSTER PC
155 N. Wacker Drive, Suite 4250
Chicago, Illinois 60606
(312) 726-1600
hfoster@fosterpc.com