**No. 26-12667**

# United States Court of Appeals

*for the*

# Eleventh Circuit

DEFENSE DISTRIBUTED, a Texas corporation, DD FOUNDATION, LLC., a Texas limited liability, DEFCAD, INC., a Texas corporation,

*Plaintiffs-Counter-Defendants-Appellants-Cross-Appellees,*

CODY RUTLEDGE WILSON, *et al.,*

*Counter-Defendants,*

– v. –

JOHN ELIK, MATTHEW LAROSIERE, ALEXANDER HOLLADAY, JOSH KIEL STROKE, JOHN LETTMAN, individually, *et al.,*

*Defendants-Counter-Claimants-Appellees-Cross-Appellants,*

PETER CELENTANO, individually,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA IN CASE NO. 9:25-cv-81197-DMM, (HONORABLE DONALD M. MIDDLEBROOKS, U.S. DISTRICT JUDGE)

## APPELLANTS' APPENDIX – VOL. I

HOWARD W. FOSTER
FOSTER PC
155 North Wacker Drive, Suite 4250
Chicago, Illinois 60606
(312) 726-1600

BRENDAN S. EVERMAN
PRYOR CASHMAN LLP
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
(786) 582-3003

*Counsel for Plaintiffs-Counter-Defendants-Appellants-Cross-Appellees*

COUNSEL PRESS
A Proceed Service
The Appellate Experts®
(800) 4-APPEAL • (625495)

# TABLE OF CONTENTS


District Court Docket Sheet ........ TAB DS

Complaint, filed September 25, 2025 ........ TAB 1

Amended Complaint, filed October 14, 2025 ........ TAB 13

Defendants' Joint Motion to Dismiss Complaint, filed December 15, 2025 .. TAB 32

Plaintiffs' Response in Opposition to Motions to Dismiss the Amended Complaint, filed December 29, 2025 ........ TAB 37

Defendants' Reply in Support of Motion to Dismiss, filed January 5, 2026 .. TAB 42

Second Amended Complaint, filed February 6, 2026 ........ TAB 49

Defendants' Motion to Dismiss the Complaint, filed February 23, 2026 ....... TAB 56

Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss the Second Amended Complaint, filed March 9, 2026 ........ TAB 70

Defendant Clark's Motion to Dismiss the Second Amended Complaint, filed March 9, 2026 ........ TAB 71

Plaintiffs' Opposition to Defendant Clark's Motion to Dismiss, filed March 23, 2026 ........ TAB 73

Defendant Clark's Reply in Support of Motion to Dismiss, filed March 30, 2026 ........ TAB 83

Defendants' Answer and Counterclaims to Plaintiffs' Second Amended Complaint, filed April 20, 2026 ........ TAB 116

Defendants' Motion for Summary Judgment and Incorporated Memorandum of Law, filed May 28, 2026 ........ TAB 147

- Defendants' Statement of Material Facts ........ TAB 147-1
- Expert Opinion of Jason M. Tyra ........ TAB 147-8

Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, filed June 11, 2026 ........ TAB 162

Plaintiffs' Amended Response to Defendants' Statement of Material Facts, filed June 16, 2026 .......... TAB 165

Defendants' Reply in Support of Motion for Summary Judgment, filed June 18, 2026 .......... TAB 173

Order Granting Defendants' Motion for Summary Judgment, filed July 1, 2026 .......... TAB 179

Judgment, filed July 1, 2026 .......... TAB 180

# TAB DS

APPEAL,CLOSED,MEDIATION,REF_EVENTS ONLY (NEFs),REF_SETTLEMENT,RMM,WM

# U.S. District Court
# Southern District of Florida (West Palm Beach)
# CIVIL DOCKET FOR CASE #: 9:25-cv-81197-DMM

Defense Distributed et al v. Elik et al
Assigned to: Judge Donald M. Middlebrooks
Referred to: Magistrate Judge William D. Matthewman
Magistrate Judge Ryon M. McCabe (Settlement)
Case in other court: USCA, 26-12667-C
USCA, 26-12667-C
USCA, 26-13661-C
USCA, 26-13661-C
Cause: 28:1332 Diversity-Racketeering (RICO) Act

Date Filed: 09/25/2025
Date Terminated: 07/01/2026
Jury Demand: None
Nature of Suit: 470 Racketeer/Corrupt Organization
Jurisdiction: Diversity

**Plaintiff**

**Defense Distributed**
*a Texas corporation*

represented by **Brendan Stuart Everman**
Pryor Cashman LLP
Florida
255 Alhambra Circle
Suite 800
Miami, FL 33134
786-582-3007
Fax: 786-582-3004
Email: beverman@pryorcashman.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Howard Foster**
Foster PC
155 N. Wacker Dr., Suite 4250
Chicago, IL 60606
312-726-1600
Email: hfoster@fosterpc.com
*ATTORNEY TO BE NOTICED*

**Gregory Scott Weiss**
Taft Stettinius & Hollister LLP
525 Okeechobee Blvd.
Suite 900
West Palm Beach, FL 33401
561-655-2250
Email: gweiss@taftlaw.com
*TERMINATED: 03/04/2026*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**DD Foundation, LLC**
*a Texas limited liability*

represented by **Brendan Stuart Everman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Howard Foster**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory Scott Weiss**
(See above for address)
*TERMINATED: 03/04/2026*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**DEFCAD, Inc.**
*a Texas corporation*

represented by **Brendan Stuart Everman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Howard Foster**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory Scott Weiss**
(See above for address)
*TERMINATED: 03/04/2026*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**John Elik**
*individually*

represented by **Matthew Michael Larosiere**
6964 Houlton Circle
Lake Worth, FL 33467
5614527575
Email: larosieremm@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Z Zermay**
Zermay Law, P.A.
3000 Coral Way
Suite 1115
Miami, FL 33145
310-752-9728
Email: zach@zermaylaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Matthew Larosiere**
*individually*

represented by **Zachary Z Zermay**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Alexander Holladay**
*individually*

represented by **Gary Charles De Pury**
Law Offices of Gary De Pury, P.A.
21035 Leonard Road
Lutz, FL 33558
8139174279
Fax: 813-949-3406
Email: gary@depury.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Z Zermay**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Peter Celentano**
*individually*

represented by **Peter Celentano**
5526 Niagara Street Ext Pod 4
Lockport, NY 14094
PRO SE

**Defendant**

**Josh Kiel Stroke**
*individually*

represented by **Matthew Michael Larosiere**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Z Zermay**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**John Lettman**
*individually*

represented by **Matthew Michael Larosiere**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Z Zermay**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Zackary Clark**

represented by **Matthew Michael Larosiere**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Alexander Holladay**
*individually*

represented by **Gary Charles De Pury**
(See above for address)

USCA11 Case: 26-12667 Document: 25-1 Date Filed: 11/16/2026 Page: 8 of 216

V.

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Z Zermay**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**John Lettman**
*individually*

represented by **Matthew Michael Larosiere**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Z Zermay**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Zackary Clark**

represented by **Matthew Michael Larosiere**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Josh Kiel Stroke**
*individually*

represented by **Matthew Michael Larosiere**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Z Zermay**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**John Elik**
*individually*

represented by **Matthew Michael Larosiere**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Z Zermay**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Matthew Larosiere**
*individually*

represented by **Zachary Z Zermay**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Cody Rutledge Wilson**
8403 Cross Park Dr
Ste 3E
Austin, TX 78754

__**Counter Defendant**__

**Federico Andino Reynal**
917 Franklin St
6th Floor, TX 77002

__**Counter Defendant**__

**Garret Walliman**
949 S. Bowman Rd
Apache Junction, AZ 85119

__**Counter Defendant**__

**Thomas Christopher Odom**
397 Gaitan Ln
Kingsbury, TX 78638

__**Counter Defendant**__

**David Gingras**
4802 E. Ray. Rd.
No. 23-271
Phoenix, AZ 85044

__**Counter Defendant**__

**Chad Flores**
917 Franklin St
Ste 600
Houston, TX 77002

__**Counter Defendant**__

**DD Foundation, LLC**
*a Texas limited liability*

represented by **Brendan Stuart Everman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Howard Foster**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory Scott Weiss**
(See above for address)
*TERMINATED: 03/04/2026*
*ATTORNEY TO BE NOTICED*

__**Counter Defendant**__

**DEFCAD, Inc.**
*a Texas corporation*

represented by **Brendan Stuart Everman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Howard Foster**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory Scott Weiss**
(See above for address)
*TERMINATED: 03/04/2026*
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Defense Distributed**
*a Texas corporation*

represented by **Brendan Stuart Everman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Howard Foster**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gregory Scott Weiss**
(See above for address)
*TERMINATED: 03/04/2026*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/25/2025 | 1 | COMPLAINT against All Defendants. Filing fees $ 405.00 receipt number AFLSDC-18820809, filed by DEFCAD, Inc., DD Foundation, LLC, Defense Distributed. (Attachments: # 1 Summon(s) John Elik, # 2 Summon(s) Matthew Larosiere, # 3 Summon(s) Alexander Holladay, # 4 Summon(s) Peter Celentano, # 5 Summon(s) Josh Kiel Stroke, # 6 Summon(s) John Lettman)(Weiss, Gregory) (Entered: 09/25/2025) |
| 09/25/2025 | 2 | Clerks Notice of Judge Assignment to Judge Donald M. Middlebrooks.<br><br>Pursuant to 28 USC 636(c), the parties are hereby notified that the U.S. Magistrate Judge William Matthewman is available to handle any or all proceedings in this case. If agreed, parties should complete and file the Consent form found on our website. It is not necessary to file a document indicating lack of consent. (blc) (Entered: 09/26/2025) |
| 09/26/2025 | 3 | Summons Issued as to Peter Celentano, John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. (blc) (Entered: 09/26/2025) |
| 09/26/2025 | 4 | Clerk's Notice to Filer re: Electronic Case. No Civil Cover Sheet. Filer is instructed to file a Notice (Other) with the Civil Cover Sheet attached within 24 hours of the notice. (blc) (Entered: 09/26/2025) |
| 09/26/2025 | 5 | NOTICE *Civil Cover Sheet* by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed re 1 Complaint, (Weiss, Gregory) (Entered: 09/26/2025) |
| 09/26/2025 | 6 | Bar Letter re: Admissions sent to attorney Howard Foster, mailing date September 26, 2025, (pt) (Entered: 09/26/2025) |
| 09/29/2025 | 7 | WAIVER OF SERVICE Returned Executed by DEFCAD, Inc., DD Foundation, LLC, Defense Distributed. Matthew Larosiere waiver sent on 9/26/2025, response/answer due 11/25/2025. (Weiss, Gregory) (Entered: 09/29/2025) |

| | | |
|---|---|---|
| 09/29/2025 | 8 | WAIVER OF SERVICE Returned Executed by DEFCAD, Inc., DD Foundation, LLC, Defense Distributed. Josh Kiel Stroke waiver sent on 9/26/2025, response/answer due 11/25/2025. (Weiss, Gregory) (Entered: 09/29/2025) |
| 09/29/2025 | 9 | WAIVER OF SERVICE Returned Executed by DEFCAD, Inc., DD Foundation, LLC, Defense Distributed. Alexander Holladay waiver sent on 9/26/2025, response/answer due 11/25/2025. (Weiss, Gregory) (Entered: 09/29/2025) |
| 09/29/2025 | 10 | WAIVER OF SERVICE Returned Executed by DEFCAD, Inc., DD Foundation, LLC, Defense Distributed. John Elik waiver sent on 9/26/2025, response/answer due 11/25/2025. (Weiss, Gregory) (Entered: 09/29/2025) |
| 09/29/2025 | 11 | WAIVER OF SERVICE Returned Executed by DEFCAD, Inc., DD Foundation, LLC, Defense Distributed. John Lettman waiver sent on 9/26/2025, response/answer due 11/25/2025. (Weiss, Gregory) (Entered: 09/29/2025) |
| 10/09/2025 | 12 | SUMMONS (Affidavit) Returned Executed on 1 Complaint, with a 21 day response/answer filing deadline pursuant to Fed. R. Civ. P. 12 by DEFCAD, Inc., DD Foundation, LLC, Defense Distributed. Peter Celentano served on 10/3/2025, response/answer due 10/24/2025. (Weiss, Gregory) (Entered: 10/09/2025) |
| 10/14/2025 | 13 | AMENDED COMPLAINT against All Defendants, filed by DEFCAD, Inc., DD Foundation, LLC, Defense Distributed.(Weiss, Gregory) (Entered: 10/14/2025) |
| 10/17/2025 | 14 | WAIVER OF SERVICE Returned Executed by DEFCAD, Inc., DD Foundation, LLC, Defense Distributed. John Elik waiver sent on 10/14/2025, response/answer due 12/15/2025. (Weiss, Gregory) (Entered: 10/17/2025) |
| 10/17/2025 | 15 | WAIVER OF SERVICE Returned Executed by DEFCAD, Inc., DD Foundation, LLC, Defense Distributed. Alexander Holladay waiver sent on 10/14/2025, response/answer due 12/15/2025. (Weiss, Gregory) (Entered: 10/17/2025) |
| 10/17/2025 | 16 | WAIVER OF SERVICE Returned Executed by DEFCAD, Inc., DD Foundation, LLC, Defense Distributed. Josh Kiel Stroke waiver sent on 10/14/2025, response/answer due 12/15/2025. (Weiss, Gregory) (Entered: 10/17/2025) |
| 10/17/2025 | 17 | WAIVER OF SERVICE Returned Executed by DEFCAD, Inc., DD Foundation, LLC, Defense Distributed. John Lettman waiver sent on 10/14/2025, response/answer due 12/15/2025. (Weiss, Gregory) (Entered: 10/17/2025) |
| 10/21/2025 | 18 | WAIVER OF SERVICE Returned Executed by DEFCAD, Inc., DD Foundation, LLC, Defense Distributed. Matthew Larosiere waiver sent on 10/14/2025, response/answer due 12/15/2025. (Weiss, Gregory) (Entered: 10/21/2025) |
| 10/22/2025 | 19 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Howard Foster. Filing Fee $ 250.00 Receipt # AFLSDC-18891969 by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Responses due by 11/5/2025. (Attachments: # 1 Exhibit A)(Weiss, Gregory) (Entered: 10/22/2025) |
| 10/23/2025 | 20 | PAPERLESS ORDER granting 19 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Attorney(s) Howard Foster. Signed by Judge Donald M. Middlebrooks on 10/23/2025. (ml00) (Entered: 10/23/2025) |

| | | |
|---|---|---|
| 10/29/2025 | 21 | SUMMONS (Affidavit) Returned Executed on 13 Amended Complaint/Amended Notice of Removal with a 14 day response/answer filing deadline pursuant to Fed. R. Civ. P. 15 by DEFCAD, Inc., DD Foundation, LLC, Defense Distributed. Peter Celentano served on 10/28/2025, response/answer due 11/12/2025. (Weiss, Gregory) (Entered: 10/29/2025) |
| 11/05/2025 | 22 | NOTICE of Attorney Appearance by Zachary Z Zermay on behalf of Matthew Larosiere. Attorney Zachary Z Zermay added to party Matthew Larosiere(pty:dft). (Zermay, Zachary) (Entered: 11/05/2025) |
| 11/05/2025 | 23 | MOTION for Sanctions *Pursuant to Rule 11 As To The Amended Complaint* by John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. Attorney Zachary Z Zermay added to party John Elik(pty:dft), Attorney Zachary Z Zermay added to party Alexander Holladay(pty:dft), Attorney Zachary Z Zermay added to party John Lettman(pty:dft), Attorney Zachary Z Zermay added to party Josh Kiel Stroke(pty:dft). (Attachments: # 1 Certification of Service, # 2 Exhibit A - Previously Served Rule 11 Motion, # 3 Exhibit B - Attorney Weiss' Letter)(Zermay, Zachary) (Entered: 11/05/2025) |
| 11/12/2025 | 24 | RESPONSE in Opposition re 23 MOTION for Sanctions *Pursuant to Rule 11 As To The Amended Complaint Plaintiffs' Response in Opposition to Defendants' Consolidated Rule 11 Motion for Sanctions and Incorporated Memorandum of Law [D.E. 23]* filed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Replies due by 11/19/2025. (Attachments: # 1 Exhibit Composite A)(Weiss, Gregory) (Entered: 11/12/2025) |
| 11/19/2025 | 25 | REPLY in Support of Motion re 23 MOTION for Sanctions *Pursuant to Rule 11 As To The Amended Complaint*. filed by John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. (Zermay, Zachary) (Entered: 11/19/2025) |
| 11/24/2025 | 26 | MOTION for Court's Entry of Default pursuant to Federal Debt Collections Procedures Act (FDCPA) Title 28, U.S.C., Section 3205(6) as to Peter Celentano, Plaintiff's MOTION for Clerk's Entry of Default as to Peter Celentano by DEFCAD, Inc., DD Foundation, LLC, Defense Distributed. (Attachments: # 1 Exhibit A)(Weiss, Gregory) (Entered: 11/24/2025) |
| 11/25/2025 | 27 | Clerk's Entry of Default as to Peter Celentano. Signed by DEPUTY CLERK on 11/25/2025. (kpe) (Entered: 11/25/2025) |
| 12/01/2025 | 28 | PAPERLESS ORDER REGARDING DEFAULT JUDGMENT PROCEDURES. On November 24, 2025, Plaintiff moved for Clerk's Entry of Default against Defendant Peter Celentano (DE 26 ). The motion was granted on November 25, 2025. (DE 27 ). Accordingly, *if Plaintiff intends to move for default final judgment, it must do so on or before December 11, 2025.* Moreover, Plaintiff is advised that pursuant to S.D. Fla. Local Rule 7.1(a)(2), motions for default judgment must be "accompanied by a proposed order that is filed and submitted via e-mail to the Court as prescribed by Section 3I(6) of the CM/ECF Administrative Procedures." The proposed order must contain legal analysis as to the claims on which Plaintiff is seeking default final judgment and how the pled facts, taken as true, justify awarding Plaintiff default judgment. Plaintiff must ensure that her proposed order with the court is emailed in Word format to the court's e-filing address: middlebrooks@flsd.uscourts.gov. If no timely motion and appropriate proposed order are filed, this matter is subject to dismissal without prejudice. Signed by Judge Donald M. Middlebrooks on 12/1/2025. (kid) (Entered: 12/01/2025) |
| 12/02/2025 | 29 | ORDER REFERRING CASE to Ch. Magistrate Judge William Matthewman for a Scheduling Conference, and Setting Trial Date. ( Calendar Call set for 7/22/2026 01:15 PM in West Palm Beach Division before Judge Donald M. Middlebrooks., Jury Trial set for 7/27/2026 09:00 AM in West Palm Beach Division before Judge Donald M. Middlebrooks.) Signed by Judge Donald M. Middlebrooks on 12/2/2025. *See attached document for full details.* (ls) (Entered: 12/02/2025) |

| | | |
|---|---|---|
| 12/09/2025 | 30 | PAPERLESS ORDER SETTING SCHEDULING CONFERENCE: Scheduling Conference set for 12/16/2025 at 10:30 AM in the West Palm Beach Division before U.S. Magistrate Judge William Matthewman to take place via Zoom Video Teleconference (VTC). Any motions to modify the existing trial date should be filed two (2) business days prior to the Scheduling Conference. Motions to modify the trial date must specifically state the basis for the request, including detailed factual support, and must provide a compelling reason. The parties are further advised that the Court is strongly disinclined to modify the trial date based upon the scheduling "tracks" contained within the Local Rules and/or based upon vague references to the complexities of the case. To log in through ZoomGov Meeting, use Meeting ID: 160 540 3826 and Passcode: 246129. All counsel shall appear by both audio and video. Because of the expedited nature of the conference, the parties are relieved of Local Rule 16.1(b)'s conference report requirement. Signed by Ch. Magistrate Judge William Matthewman on 12/9/2025. (nrs) (Entered: 12/09/2025) |
| 12/11/2025 | 31 | Plaintiff's MOTION for Default Judgment *Against Defendant Peter Celentano* by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. (Attachments: # 1 Text of Proposed Order)(Weiss, Gregory) (Entered: 12/11/2025) |
| 12/15/2025 | 32 | Joint MOTION TO DISMISS 13 Amended Complaint/Amended Notice of Removal FOR FAILURE TO STATE A CLAIM ( Responses due by 12/29/2025.), MOTION to Dismiss for Lack of Jurisdiction *as to out-of-state Defendants*, MOTION for More Definite Statement ( Responses due by 12/29/2025.) by John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. (Attachments: # 1 Exhibit A - Affidavit of John Elik, # 2 Exhibit B - Affidavit of Josh Stroke, # 3 Exhibit C - Affidavit of John Lettman)(Zermay, Zachary) (Entered: 12/15/2025) |
| 12/16/2025 | 33 | Initial Disclosure(s) of Plaintiffs' Initial Disclosures Pursuant to Rule 26 by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed (Weiss, Gregory) (Entered: 12/16/2025) |
| 12/16/2025 | 34 | PAPERLESS Minute Order for proceedings held before Ch. Magistrate Judge William Matthewman: The hearing was held via Zoom Video Teleconference. Scheduling Conference held on 12/16/2025. The Court discussed whether parties would be added, there are motions pending, the trial period, pretrial deadlines, motions to continue, sealing of documents, consent to magistrate judge jurisdiction, mediation or settlement conferences, requirements if a settlement is reached, the local rules, discovery, and good faith conferral. Written scheduling order and order of referral to mediation will be issued. Total time in court: 28 minutes. Attorney Appearance(s): Gregory Scott Weiss, Howard Foster, Zachary Z Zermay, Matthew Larosiere, Gary Depury. (Digital 10:31:42) (swr) (Entered: 12/16/2025) |
| 12/16/2025 | 35 | Corporate Disclosure Statement - NONE disclosed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed (Weiss, Gregory) Modified Text on 12/16/2025 (ls). (Entered: 12/16/2025) |
| 12/16/2025 | 36 | PRETRIAL SCHEDULING ORDER: ( Amended Pleadings due by 1/22/2026., All Discovery due by 5/14/2026., Joinder of Parties due by 1/22/2026., In Limine Motions due by 5/28/2026., Motions due by 5/28/2026., Pretrial Stipulation due by 6/29/2026.), and ORDER REFERRING CASE to Mediation. Signed by Ch. Magistrate Judge William Matthewman on 12/16/2025. *See attached document for full details.* (ls) (Entered: 12/16/2025) |
| 12/29/2025 | 37 | RESPONSE in Opposition re 32 Joint MOTION TO DISMISS 13 Amended Complaint/Amended Notice of Removal FOR FAILURE TO STATE A CLAIM MOTION to Dismiss for Lack of Jurisdiction *as to out-of-state Defendants* MOTION for |

| | | |
|---|---|---|
| | | More Definite Statement filed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Replies due by 1/5/2026. (Weiss, Gregory) (Entered: 12/29/2025) |
| 12/30/2025 | 38 | Request for Clerk to Appoint Mediator(Weiss, Gregory) (Entered: 12/30/2025) |
| 12/30/2025 | 39 | Plaintiff's MOTION for Extension of Time to Submit Joint Discovery Plan Required by Pretrial Scheduling Order and Order Referring Case to Mediation [D.E. 36] re 36 Scheduling Order,, Order Referring Case to Mediation, by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Responses due by 1/13/2026. (Weiss, Gregory) (Entered: 12/30/2025) |
| 12/31/2025 | 40 | PAPERLESS ORDER granting 39 Plaintiffs' motion to extend time to submit joint discovery plan. Plaintiffs state that they were unable to file the joint discovery plan because Defendants have not responded to their requests to meet and confer about the report. I find good cause to extend the time to submit the joint discovery plan to **January 6, 2026.** Signed by Judge Donald M. Middlebrooks on 12/31/2025. (kid) (Entered: 12/31/2025) |
| 01/05/2026 | 41 | Clerk's Appointment of Mediator: Dominic L. Brandy added (pt) (Entered: 01/05/2026) |
| 01/05/2026 | 42 | Consolidated REPLY in Support of Motion re 32 Joint MOTION TO DISMISS 13 Amended Complaint/Amended Notice of Removal FOR FAILURE TO STATE A CLAIM MOTION to Dismiss for Lack of Jurisdiction *as to out-of-state Defendants* MOTION for More Definite Statement . filed by John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. (Zermay, Zachary) Modified Text on 1/6/2026 (ls). (Entered: 01/05/2026) |
| 01/06/2026 | 43 | NOTICE *of Filing Joint Discovery Plan* by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed re 40 Order on Motion for Extension of Time, (Weiss, Gregory) Modified Text on 1/7/2026 (ls). (Entered: 01/06/2026) |
| 01/15/2026 | 44 | Plaintiff's MOTION for Leave to File *Second Amended Complaint* by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Responses due by 1/29/2026. (Attachments: # 1 Exhibit A)(Weiss, Gregory) (Entered: 01/15/2026) |
| 01/29/2026 | 45 | RESPONSE in Opposition re 44 Plaintiff's MOTION for Leave to File *Second Amended Complaint* filed by John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. Replies due by 2/5/2026. (Zermay, Zachary) (Entered: 01/29/2026) |
| 02/02/2026 | 46 | PAPERLESS ORDER expediting Reply brief. Plaintiffs shall file their Reply in support of the Motion to File Second Amended Complaint (DE 44 ) no later than **February 4, 2026.** Signed by Judge Donald M. Middlebrooks on 2/2/2026. (kid) (Entered: 02/02/2026) |
| 02/02/2026 | | Reset Deadlines as to 44 Plaintiff's MOTION for Leave to File *Second Amended Complaint*. Replies due by 2/4/2026. Per DE 46 . (ksr) (Entered: 02/03/2026) |
| 02/04/2026 | 47 | Plaintiff's REPLY in Support of Motion re 44 Plaintiff's MOTION for Leave to File *Second Amended Complaint*. filed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. (Weiss, Gregory) (Entered: 02/04/2026) |
| 02/05/2026 | 48 | ORDER granting 44 Motion for Leave to File *Clerks Notice: Filer must separately re-file the amended pleading pursuant to Local Rule 15.1, unless otherwise ordered by the Judge*; denying as moot 32 Motion to Dismiss for Failure to State a Claim; denying 23 Motion for Sanctions. Signed by Judge Donald M. Middlebrooks on 2/5/2026. *See attached document for full details.* (ksr) (Entered: 02/05/2026) |
| 02/06/2026 | 49 | Second AMENDED COMPLAINT against Peter Celentano, John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke, Zackary Clark filed in |

| | | |
|---|---|---|
| | | response to Order Granting Motion for Leave, filed by DEFCAD, Inc., DD Foundation, LLC, Defense Distributed. (Attachments: # 1 Summon(s) Summons on Second Amended Complaint)(Weiss, Gregory) (Entered: 02/06/2026) |
| 02/10/2026 | 50 | Summons Issued as to Zackary Clark. (cqs) (Entered: 02/10/2026) |
| 02/12/2026 | 51 | MOTION to Take Deposition from Peter Celentano *Plaintiffs' Motion for Leave to Take the Deposition of Incarcerated Defendant Peter Celentano and Incorporated Memorandum of Law* by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Responses due by 2/26/2026. (Weiss, Gregory) (Entered: 02/12/2026) |
| 02/13/2026 | 52 | PAPERLESS ORDER denying without prejudice 51 Plaintiff's Motion for Leave to Take the Deposition of Incarcerated Defendant. The Motion is facially deficient for failure to confer as required by Local Rule 7.1(a)(2). Conferral is mandatory. Plaintiff may re-file this motion, but any renewed motion must strictly comply with Local Rules. Signed by Judge Donald M. Middlebrooks on 2/13/2026. (kid) (Entered: 02/13/2026) |
| 02/18/2026 | 53 | SUMMONS (Affidavit) Returned Executed on 49 Amended Complaint/Amended Notice of Removal, with a 21 day response/answer filing deadline pursuant to Fed. R. Civ. P. 12 by DEFCAD, Inc., DD Foundation, LLC, Defense Distributed. Zackary Clark served on 2/16/2026, response/answer due 3/9/2026. (Weiss, Gregory) (Entered: 02/18/2026) |
| 02/20/2026 | 54 | Witness List *Plaintiffs' Disclosure of Expert Witness* by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed.. (Attachments: # 1 Exhibit)(Weiss, Gregory) (Entered: 02/20/2026) |
| 02/23/2026 | 55 | MOTION to Take Deposition from Peter Celentano *Plaintiffs' Renewed Motion for Leave to Take the Deposition of Incarcerated Defendant Peter Celentano and Incorporated Memorandum of Law* by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Responses due by 3/9/2026. (Weiss, Gregory) (Entered: 02/23/2026) |
| 02/23/2026 | 56 | MOTION TO DISMISS 49 Amended Complaint/Amended Notice of Removal, FOR FAILURE TO STATE A CLAIM , MOTION to Dismiss for Lack of Jurisdiction *as to out-of-state Defendants* ( Responses due by 3/9/2026.), MOTION for More Definite Statement *in the Alternative* ( Responses due by 3/9/2026.) by Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. (Attachments: # 1 Affidavit of John Elik, # 2 Affidavit of John Lettman, # 3 Affidavit of Josh Stroke)(Zermay, Zachary) (Entered: 02/23/2026) |
| 02/23/2026 | 57 | Unopposed MOTION for Extension of Time to accept Motion to Dismiss filed out of time re 56 MOTION TO DISMISS 49 Amended Complaint/Amended Notice of Removal, FOR FAILURE TO STATE A CLAIM MOTION to Dismiss for Lack of Jurisdiction *as to out-of-state Defendants* MOTION for More Definite Statement *in the Alternative* by John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. Responses due by 3/9/2026. (Zermay, Zachary) (Entered: 02/23/2026) |
| 02/24/2026 | 58 | PAPERLESS ORDER granting 57 Defendants' Unopposed Motion to Accept Defendant's Motion to Dismiss Filed Out of Time. Defendants' response to the Second Amended Complaint was filed one-day late because of their miscalculation of the deadline. I find that Defendants have shown excusable neglect and there is no prejudice from the one-day delay in filing the response. Signed by Judge Donald M. Middlebrooks on 2/24/2026. (kid) (Entered: 02/24/2026) |
| 02/25/2026 | 59 | MOTION for Attorney Fees , MOTION to Compel *Discovery Plaintiffs' Motion to Compel Defendants', Elik, Holladay, Stroke and Lettman, Discovery Responses and for Attorney's Fees Against Attorney Matthew Larosiere* by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Responses due by 3/11/2026. (Attachments: # 1 Exhibit A, # 2 |

| | | |
|---|---|---|
| | | Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Weiss, Gregory) (Entered: 02/25/2026) |
| 02/26/2026 | 60 | ORDER granting 55 Motion to Take Deposition from Peter Celentano. Signed by Judge Donald M. Middlebrooks on 2/26/2026. *See attached document for full details.* (ksr) (Entered: 02/26/2026) |
| 02/26/2026 | 61 | PAPERLESS ORDER TO SHOW CAUSE FOR FAILURE TO CONFER AND REQUIRING EXPEDITED BRIEFING. Plaintiff has filed a Motion to Compel (DE 59 ). The certificate of conferral reflects that Defendants' counsel refused to confer. Given this, and also because of the procedural posture of this matter, expedited briefing is required. Therefore Defendants shall file a Response to the Motion to Compel **by March 2, 2026.** If Plaintiff wishes to file a Reply it may do so by **March 4, 2026,** however I will consider the motion ripe upon the filing of a Response and may be inclined to rule without need of a Reply. Finally, Defendants' counsel shall SHOW CAUSE, in writing, by March 2, 2026, as to why counsel refused to engage in conferral regarding the pending Motion to Compel. Signed by Judge Donald M. Middlebrooks on 2/26/2026. (kid) (Entered: 02/26/2026) |
| 02/26/2026 | | Set Deadlines as to 59 MOTION for Attorney Fees MOTION to Compel *Discovery Plaintiffs' Motion to Compel Defendants', Elik, Holladay, Stroke and Lettman, Discovery Responses and for Attorney's Fees Against Attorney Matthew Larosiere*. (Show Cause Response due by 3/2/2026.), Reset Deadlines as to 59 MOTION for Attorney Fees MOTION to Compel *Discovery Plaintiffs' Motion to Compel Defendants', Elik, Holladay, Stroke and Lettman, Discovery Responses and for Attorney's Fees Against Attorney Matthew Larosiere*. (Responses due by 3/2/2026., Replies due by 3/4/2026.) Per DE 61 . (ksr) (Entered: 02/26/2026) |
| 03/02/2026 | 62 | NOTICE/STIPULATION of Substitution of Counsel by Brendan Stuart Everman on behalf of DD Foundation, LLC, DEFCAD, Inc., Defense Distributed instead of prior counsel of record Gregory S. Weiss. . Attorney Brendan Stuart Everman added to party DD Foundation, LLC(pty:pla), Attorney Brendan Stuart Everman added to party DEFCAD, Inc.(pty:pla), Attorney Brendan Stuart Everman added to party Defense Distributed(pty:pla). (Everman, Brendan) (Entered: 03/02/2026) |
| 03/02/2026 | 63 | RESPONSE in Opposition re 59 MOTION for Attorney Fees MOTION to Compel *Discovery Plaintiffs' Motion to Compel Defendants', Elik, Holladay, Stroke and Lettman, Discovery Responses and for Attorney's Fees Against Attorney Matthew Larosiere* filed by John Elik, Alexander Holladay, John Lettman, Josh Kiel Stroke. Attorney Matthew Michael Larosiere added to party John Elik(pty:dft), Attorney Matthew Michael Larosiere added to party John Lettman(pty:dft), Attorney Matthew Michael Larosiere added to party Josh Kiel Stroke(pty:dft). Replies due by 3/9/2026. (Attachments: # 1 Exhibit A - Early February Conference on Same Issues, # 2 Exhibit B - Declaration of Zachary Z Zermay, # 3 Exhibit C - Declaration of Matthew Larosiere, # 4 Exhibit D - February 19 Email Chain, # 5 Exhibit E - February 20 Email Chain, # 6 Exhibit F - February 13 Agreement, # 7 Exhibit G - Conference Chain Excluding Larosiere, # 8 Exhibit H - Declaration of Gary De Pury, # 9 Exhibit I - Proposed Expedited Solution and Lack of Response)(Larosiere, Matthew) (Entered: 03/02/2026) |
| 03/02/2026 | 64 | RESPONSE TO ORDER TO SHOW CAUSE re 61 Order,,,, Set/Reset Motion/R&R Deadlines and Hearings,,, by John Elik, Alexander Holladay, John Lettman, Josh Kiel Stroke. (Larosiere, Matthew) (Entered: 03/02/2026) |
| 03/03/2026 | 65 | NOTICE of Attorney Appearance by Brendan Stuart Everman on behalf of DD Foundation, LLC, DEFCAD, Inc., Defense Distributed (Everman, Brendan) (Entered: 03/03/2026) |

| | | |
|---|---|---|
| 03/03/2026 | 66 | REPLY in Support of Motion re 59 MOTION for Attorney Fees MOTION to Compel *Discovery Plaintiffs' Motion to Compel Defendants', Elik, Holladay, Stroke and Lettman, Discovery Responses and for Attorney's Fees Against Attorney Matthew Larosiere*. filed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. (Attachments: # 1 Exhibit E- Relevant Portion of the Transcript of the Proceedings - Larosiere v. Wilson)(Everman, Brendan) (Entered: 03/03/2026) |
| 03/04/2026 | 67 | Amended REPLY in Support of Motion re 59 MOTION for Attorney Fees MOTION to Compel *Discovery Plaintiffs' Motion to Compel Defendants', Elik, Holladay, Stroke and Lettman, Discovery Responses and for Attorney's Fees Against Attorney Matthew Larosiere*. filed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. (Attachments: # 1 Exhibit E-Composite Discovery, # 2 Exhibit F-Transcript)(Everman, Brendan) (Entered: 03/04/2026) |
| 03/04/2026 | 68 | ORDER APPROVING PLAINTIFFS' NOTICE OF SUBSTITUTION OF COUNSEL re 62 Notice/Stipulation of Substitution of Counsel, filed by DD Foundation, LLC, Defense Distributed, DEFCAD, Inc., Attorney Gregory Scott Weiss representing Defense Distributed (Plaintiff) and DD Foundation, LLC (Plaintiff) and DEFCAD, Inc. (Plaintiff); terminated. Signed by Judge Donald M. Middlebrooks on 3/4/2026. *See attached document for full details.* (ksr) (Entered: 03/04/2026) |
| 03/05/2026 | 69 | ORDER denying 59 Motion for Attorney Fees; granting in part 59 Motion to Compel. Signed by Judge Donald M. Middlebrooks on 3/5/2026. *See attached document for full details.* (ksr) (Entered: 03/06/2026) |
| 03/09/2026 | 70 | RESPONSE in Opposition re 56 MOTION TO DISMISS 49 Amended Complaint/Amended Notice of Removal, FOR FAILURE TO STATE A CLAIM MOTION to Dismiss for Lack of Jurisdiction *as to out-of-state Defendants* MOTION for More Definite Statement *in the Alternative* filed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Replies due by 3/16/2026. (Everman, Brendan) (Entered: 03/09/2026) |
| 03/09/2026 | 71 | MOTION to Dismiss for Lack of Jurisdiction 49 Amended Complaint/Amended Notice of Removal, ( Responses due by 3/23/2026.), MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Zackary Clark. Attorney Matthew Michael Larosiere added to party Zackary Clark(pty:dft). (Attachments: # 1 Exhibit A - Declaration of Zachary Clark) (Larosiere, Matthew) (Entered: 03/09/2026) |
| 03/12/2026 | 72 | MOTION for Sanctions *under Rule 30(g)(1) for failing to attend Plaintiffs' noticed deposition* by John Elik. Responses due by 3/26/2026. (Attachments: # 1 Exhibit A - Plaintiffs July 28 Notice of Taking Elik's Deposition on March 3, # 2 Exhibit B - February 25-28 Email Chain, # 3 Exhibit C - Declaration of John Elik, # 4 Exhibit D - Declaration of Attorney Larosiere, # 5 Exhibit E - March 3-4 Email Chain)(Larosiere, Matthew) (Entered: 03/12/2026) |
| 03/23/2026 | 73 | RESPONSE in Opposition re 71 MOTION to Dismiss for Lack of Jurisdiction 49 Amended Complaint/Amended Notice of Removal, MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Replies due by 3/30/2026. (Everman, Brendan) (Entered: 03/23/2026) |
| 03/24/2026 | 74 | STRICKEN MOTION for Protective Order *to Prevent Service of Improper Subpoena on an Expedited Basis*, MOTION to Quash *improper Subpoena on an Expedited Basis* by John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. Responses due by 4/7/2026. (Attachments: # 1 Exhibit A - Plaintiffs Proposed Subpoena) (Larosiere, Matthew) Modified on text 3/30/2026 (ksr). Per DE 80 . (Entered: 03/24/2026) |

| | | |
|---|---|---|
| 03/25/2026 | 75 | Unopposed MOTION for Extension of Time to file Response to Motion for Recovery of Expenses [D.E. 72] re 72 MOTION for Sanctions *under Rule 30(g)(1) for failing to attend Plaintiffs' noticed deposition* by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Responses due by 4/8/2026. (Everman, Brendan) (Entered: 03/25/2026) |
| 03/25/2026 | 76 | ORDER REFERRING DISCOVERY MOTIONS 74 MOTION for Protective Order *to Prevent Service of Improper Subpoena on an Expedited Basis* MOTION to Quash *improper Subpoena on an Expedited Basis* filed by John Lettman, Matthew Larosiere, Josh Kiel Stroke, John Elik, Alexander Holladay. Motions referred to Judge William Matthewman. Signed by Judge Donald M. Middlebrooks on 3/25/2026. *See attached document for full details.* (ksr) (Entered: 03/26/2026) |
| 03/26/2026 | 77 | PAPERLESS ORDER SETTING BRIEFING SCHEDULING AND HEARING ON MOTION: This matter is before the Court pursuant to Defendants John Elik, John Lettman, Josh Kiel Stroke, Matthew Larosiere, and Alexander Holladay's ("Defendants") Expedited Motion for Protective Order Prohibiting Service of Proposed Subpoena to Discord, Inc., or, Alternatively, to Quash and Direct Withdrawal of the Subpoena if Plaintiffs Serve It Before the Court Rules ("Motion") [DE 74]. In light of the expedited nature of the Motion, Plaintiffs shall file a response on or before March 30, 2026. Defendants shall file any reply on or before April 1, 2026. The Court will conduct a hearing on the Motion [DE 74] via Zoom video teleconference (VTC) on April 2, 2026, at 2:00 p.m. in the West Palm Beach Division before Magistrate Judge William Matthewman. To log in through ZoomGov Meeting, use Meeting ID: 160 540 3826 and Passcode: 246129. The Court shall consider sanctions or cost-shifting under Rule 37 or other applicable rules and law against any party or counsel who fails to comply with all discovery obligations, fails to comply with applicable rules and orders, or who takes a frivolous, dilatory, or unreasonable discovery position. If the parties resolve the disputes raised in whole or in part prior to the hearing, the Court shall be promptly notified. Finally, it is hereby ORDERED that Plaintiffs shall not to use, seek, or attempt to obtain any materials produced in response to the subpoena unless and until further order of the Court. Signed by Ch. Magistrate Judge William Matthewman on 3/26/2026. (no00) (Entered: 03/26/2026) |
| 03/26/2026 | 78 | PAPERLESS ORDER granting (DE 75 ) Plaintiffs' Unopposed Motion to Extend Deadline to Respond to Defendant Elik's Motion for Recovery of Expenses (DE 72 ). Plaintiffs seek an extension from March 26, 2026 to March 30, 2026 due to pre-planned travel and conflicting deadlines in other matters. I find good cause. The Response to the Motion for Recovery of Expenses (DE 72 ) is due no later than **March 30, 2026.** Signed by Judge Donald M. Middlebrooks on 3/26/2026. (kid) (Entered: 03/26/2026) |
| 03/29/2026 | 79 | Notice of Supplemental Authority re 56 MOTION TO DISMISS 49 Amended Complaint/Amended Notice of Removal, FOR FAILURE TO STATE A CLAIM MOTION to Dismiss for Lack of Jurisdiction *as to out-of-state Defendants* MOTION for More Definite Statement *in the Alternative* by Zackary Clark, John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke (Larosiere, Matthew) (Entered: 03/29/2026) |
| 03/30/2026 | 80 | NOTICE OF WITHDRAWAL OF MOTION by John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke re 74 MOTION for Protective Order *to Prevent Service of Improper Subpoena on an Expedited Basis* MOTION to Quash *improper Subpoena on an Expedited Basis* filed by John Lettman, Matthew Larosiere, Josh Kiel Stroke, John Elik, Alexander Holladay (Larosiere, Matthew) (Entered: 03/30/2026) |
| 03/30/2026 | 81 | RESPONSE in Opposition re 72 MOTION for Sanctions *under Rule 30(g)(1) for failing to attend Plaintiffs' noticed deposition* filed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Replies due by 4/6/2026. (Everman, Brendan) (Entered: 03/30/2026) |

| | | |
|---|---|---|
| 03/30/2026 | 82 | AFFIDAVIT in Opposition re 72 MOTION for Sanctions *under Rule 30(g)(1) for failing to attend Plaintiffs' noticed deposition* filed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Everman, Brendan) (Entered: 03/30/2026) |
| 03/30/2026 | 83 | REPLY in Support of Motion re 71 MOTION to Dismiss for Lack of Jurisdiction 49 Amended Complaint/Amended Notice of Removal, MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM . filed by Zackary Clark. (Larosiere, Matthew) (Entered: 03/30/2026) |
| 03/31/2026 | 84 | PAPERLESS ORDER: The Court has reviewed Defendant John Elik's Motion for Recovery of Reasonable Expenses Under Fed. R. Civ. P. 30(g)(1) ("Motion") [DE 72] and Plaintiffs' Response [DE 81]. The Court will conduct a hearing, at the same time as the previously scheduled hearing, on the Motion [DE 72] via Zoom video teleconference (VTC) on April 2, 2026, at 2:00 p.m. in the West Palm Beach Division before Chief Magistrate Judge William Matthewman. To log in through ZoomGov Meeting, use Meeting ID: 160 540 3826 and Passcode: 246129. No reply is necessary. Signed by Ch. Magistrate Judge William Matthewman on 3/31/2026. (nrs) (Entered: 03/31/2026) |
| 04/01/2026 | 85 | ORDER SETTING DISCOVERY PROCEDURE Signed by Ch. Magistrate Judge William Matthewman on 4/1/2026. *See attached document for full details.* (ksr) (Entered: 04/01/2026) |
| 04/01/2026 | 86 | REPLY to 82 Affidavit in Opposition to Motion, by Matthew Larosiere. (Zermay, Zachary) (Entered: 04/01/2026) |
| 04/02/2026 | 87 | PAPERLESS Minute Order for proceedings held before Ch. Magistrate Judge William Matthewman: The hearing was held via Zoom Video Teleconference. Motion Hearing/Discovery Hearing held on 4/2/2026 re 72 MOTION for Sanctions *under Rule 30(g)(1) for failing to attend Plaintiffs' noticed deposition* filed by John Elik. Argument held. The Court took the matter under advisement. Written order will be issued. Total time in court: 41 minutes. Attorney Appearance(s): Brendan Stuart Everman, Matthew Michael Larosiere, Howard Foster, Zachary Z Zermay, John Lettman, Gary De Pury. (Digital 14:02:36) (swr) (Entered: 04/02/2026) |
| 04/03/2026 | 88 | MOTION to Compel *Production of Plaintiffs' Disclosed Expert for Deposition* , MOTION for Attorney Fees *under Rule 37* by John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. Responses due by 4/17/2026. (Attachments: # 1 Exhibit A)(Larosiere, Matthew) (Entered: 04/03/2026) |
| 04/03/2026 | 89 | MOTION to Compel *Discovery from Defendant Alexander Holladay* by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Responses due by 4/17/2026. (Attachments: # 1 Exhibit 1-Holladay Discovery Responses, # 2 Exhibit 2-Refusal to Amend Responses, # 3 Exhibit 3-Final Conferral Email with Extension Confirmation)(Everman, Brendan) (Entered: 04/03/2026) |
| 04/06/2026 | 90 | ORDER denying 56 Motion to Dismiss for Failure to State a Claim; denying 56 Motion to Dismiss for Lack of Jurisdiction; denying 56 Motion for More Definite Statement; denying 71 Motion to Dismiss for Lack of Jurisdiction; denying 71 Motion to Dismiss for Failure to State a Claim. Signed by Judge Donald M. Middlebrooks on 4/6/2026. *See attached document for full details.* (ksr) (Entered: 04/06/2026) |
| 04/06/2026 | 91 | ORDER granting in part and denying in part 72 Motion for Sanctions. Signed by Ch. Magistrate Judge William Matthewman on 4/6/2026. *See attached document for full details.* (ksr) (Entered: 04/06/2026) |
| 04/07/2026 | 92 | PAPERLESS ORDER: The Court has reviewed both Plaintiffs' and Defendants' Motions to Compel [DEs 88, 89]. The Court is not at all pleased with the parties' continuous and |

| | | |
|---|---|---|
| | | contentious discovery disputes following the Court's admonishments during the prior discovery hearing and entry of its written Order [DE 91]. Due to the upcoming discovery deadline of May 14, 2026, responses to both Motions are due by April 9, 2026, at 2:00 p.m. Failure to timely respond may result in grant of the motion by default. Any replies are due by April 10, 2026, at 10:00 a.m. No extensions to this briefing schedule shall be permitted absent the most compelling and extraordinary circumstances supported by affidavit or declaration under penalty of perjury. The Court shall consider sanctions or cost-shifting against any party or counsel who fails to comply with all discovery obligations, fails to comply with applicable rules and orders, or who takes a frivolous, dilatory, or unreasonable discovery position. Upon receipt of the responses and any replies, the Court shall either promptly rule on the papers, or if deemed necessary, set down a very prompt in-person hearing within the next few days with no remote attendance of any kind permitted. Signed by Ch. Magistrate Judge William Matthewman on 4/7/2026. (nrs) (Entered: 04/07/2026) |
| 04/09/2026 | 93 | RESPONSE in Opposition re 88 MOTION to Compel *Production of Plaintiffs' Disclosed Expert for Deposition* MOTION for Attorney Fees *under Rule 37* filed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Replies due by 4/16/2026. (Everman, Brendan) (Entered: 04/09/2026) |
| 04/09/2026 | 94 | RESPONSE in Opposition re 89 MOTION to Compel *Discovery from Defendant Alexander Holladay* filed by Alexander Holladay. Attorney Gary Charles De Pury added to party Alexander Holladay(pty:dft). Replies due by 4/16/2026. (Attachments: # 1 Exhibit Exhibit A - Amended Response, # 2 Exhibit Exhibit B - Certificate of Compliance)(De Pury, Gary) (Entered: 04/09/2026) |
| 04/09/2026 | 95 | MOTION to Compel *Defendant Matthew Larosiere to Produce Documents and For Sanctions* by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Responses due by 4/23/2026. (Attachments: # 1 Exhibit 1-Plaintiffs 1st RFP to Larosiere - Service Version, # 2 Exhibit 2-Larosiere's Objection to Email Service, # 3 Exhibit 3-Larosiere's RFP Responses, # 4 Exhibit 4-Conferral Emails, # 5 Exhibit 5-Plaintiffs 1st RFP tp Larosiere - Signed)(Everman, Brendan) (Entered: 04/09/2026) |
| 04/09/2026 | 96 | REPLY in Support of Motion re 88 MOTION to Compel *Production of Plaintiffs' Disclosed Expert for Deposition* MOTION for Attorney Fees *under Rule 37*. filed by John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. (Larosiere, Matthew) (Entered: 04/09/2026) |
| 04/10/2026 | 97 | PAPERLESS ORDER: The Court has reviewed Plaintiffs' new Motion to Compel [DE 95]. Due to the upcoming discovery deadline of May 14, 2026, a response to the Motion shall be filed by April 13, 2026, at 2:00 p.m. Any reply is due by April 14, 2026, at 10:00 a.m. No extensions to this briefing schedule shall be permitted absent the most compelling and extraordinary circumstances supported by affidavit or declaration under penalty of perjury. Signed by Ch. Magistrate Judge William Matthewman on 4/10/2026. (nrs) (Entered: 04/10/2026) |
| 04/10/2026 | 98 | ORDER GRANTING DEFENDANTS' MOTION TO COMPEL PLAINTIFFS TO PRODUCE THEIR EXPERT JASON TYRA FOR DEPOSITION [DE 88] AND IMPOSING SANCTIONS AGAINST PLAINTIFFS AND THEIR COUNSEL granting 88 Motion to Compel; granting 88 Motion for Attorney Fees. Signed by Ch. Magistrate Judge William Matthewman on 4/10/2026. *See attached document for full details.* (swr) (Entered: 04/10/2026) |
| 04/10/2026 | 99 | PAPERLESS ORDER denying as moot 89 Plaintiffs' Motion to Compel as to Defendant Holladay. The Court has reviewed Plaintiffs' Motion [DE 89] and Defendant's Response [DE 94]. No reply was timely filed. The Court notes that Plaintiffs included improper definitions, and vague, confusing, and overbroad requests in their discovery propounded |

USCA11 Case: 26-12667 Document: 25-1 Date Filed: 11/16/2026 Page: 21 of 216

| | | |
|---|---|---|
| | | to Defendant Holladay. Conversely, Defendant Holladay included numerous improper, boilerplate objections and gave vague and confusing initial responses to the discovery propounded by Plaintiffs. Both Plaintiffs and their counsel and Defendant Holladay and his counsel have acted in an overbearing, uncooperative, and obstructionist manner regarding the discovery requested by Plaintiffs and in the initial responses served by Defendant Holladay, as well in their communications about the dispute. However, given that Defendant has subsequently supplemented his discovery responses, and Plaintiffs filed no reply detailing whether the supplemented responses are sufficient, the Motion [DE 89] is DENIED as moot. Also, the circumstances do not warrant cost-shifting under Rule 37 as both the parties and their respective counsel all engaged in improper discovery tactics. Signed by Ch. Magistrate Judge William Matthewman on 4/10/2026. (nrs) (Entered: 04/10/2026) |
| 04/11/2026 | 100 | MOTION to Compel *complete responses to Defendant Elik's Requests for Production* , MOTION for Attorney Fees by John Elik. Responses due by 4/27/2026. (Attachments: # 1 Exhibit A - PLAINTIFFS OBJECTIONS TO REQUESTS FOR PRODUCTION, # 2 Exhibit B - INITIAL CONFERRAL COMMUNICATIONS, # 3 Exhibit C - POINTS OF RESOLUTION, # 4 Exhibit D - POST-DEADLINE CONFIDENTIALITY EMAILS, # 5 Exhibit E - TERMINATION OF CONFERRAL EMAILS, # 6 Exhibit F - PROPOSED AGREEMENT PROVIDED AFTER PRODUCTION)(Larosiere, Matthew) (Entered: 04/11/2026) |
| 04/13/2026 | 101 | PAPERLESS ORDER SETTING IN-PERSON DISCOVERY HEARING: The parties and their counsel continue with their myriad contentious discovery disputes despite prior warnings from this Court that professional cooperation is mandated and discovery misconduct shall not be tolerated. Currently pending before the Court are Plaintiff's Motion to Compel against Defendant Larosiere filed on April 9, 2026 [DE 95] and Defendant Elik's Motion to Overrule Meritless Objections and to Compel against Plaintiffs, filed on April 11, 2026 [DE 100]. The Court has already entered numerous discovery related orders and has previously twice sanctioned Plaintiffs and their counsel for discovery misconduct [DE 91; DE 98] and has noted the lack of professionalism among other counsel in this case. Accordingly, the Court shall conduct an **in-person hearing** on Plaintiffs' Motion to Compel [DE 95] and Defendant's Motion to Overrule Meritless Objections and to Compel [DE 100] on **April 17, 2026 at 1:30 p.m.** The hearing shall be held in the West Palm Beach Federal Courthouse, 701 Clematis St., West Palm Beach, FL 33401, Courtroom 6, Third Floor, before Chief Magistrate Judge William Matthewman. Counsel for the parties shall appear in person. No remote attendance shall be permitted. The following counsel are ORDERED to appear in person at the hearing: Plaintiffs' PHV Counsel Harold Foster, Plaintiffs' counsel Brendan Everman, Defendant Elik's counsel Matthew Larosiere, and Defendant Larosiere's counsel Zachary Zermay. Further, any counsel who signs any response or reply to DEs 95 and 100 shall also personally appear at the hearing. Moreover, the parties shall comply with the current briefing scheduling regarding Plaintiffs' Motion to Compel. [DE 97]. Regarding Defendant's Motion to Overrule Meritless Objections and to Compel [DE 100], a response shall be filed by **April 14, 2026**. Any reply is due by **April 15, 2026**. In light of the upcoming May 14, 2026 discovery cutoff date, the briefing schedule and the hearing shall not be continued absent the most compelling and extraordinary circumstances supported by affidavit or declaration under penalty of perjury. If the parties resolve their discovery disputes, they may jointly request that the hearing be canceled, and the Court will consider any such request. Signed by Ch. Magistrate Judge William Matthewman on 4/13/2026. (nrs) (Entered: 04/13/2026) |
| 04/13/2026 | 102 | RESPONSE in Opposition re 95 MOTION to Compel *Defendant Matthew Larosiere to Produce Documents and For Sanctions* filed by Matthew Larosiere. Replies due by 4/20/2026. (Attachments: # 1 Exhibit A - Discovery Response and Certificate of |

| | | |
|---|---|---|
| | | Completion, # 2 Exhibit B - March 3 Email Chain on Mr Fosters Previous Misrepresentations as to Signature Issue, # 3 Exhibit C - Declaration of Attorney Zachary Zermay, # 4 Exhibit D - Sole Communications with Zermay Regarding Motion)(Zermay, Zachary) (Entered: 04/13/2026) |
| 04/13/2026 | 103 | RESPONSE in Opposition re 95 MOTION to Compel *Defendant Matthew Larosiere to Produce Documents and For Sanctions AMENDED RESPONSE* filed by Matthew Larosiere. Replies due by 4/20/2026. (Attachments: # 1 Exhibit A - Discovery Response and Certificate of Completion, # 2 Exhibit B - March 3 Emails Re Previous Signing Misrepresentations, # 3 Exhibit C - Declaration of Attorney Zachary Zermay, # 4 Exhibit D - Sole Communications in Weeks Before Motion)(Zermay, Zachary) (Entered: 04/13/2026) |
| 04/13/2026 | 104 | MOTION to Compel *Complaint Rule 26(a)(1) Disclosures* by Zackary Clark, John Elik, Matthew Larosiere, John Lettman, Josh Kiel Stroke. Responses due by 4/27/2026. (Attachments: # 1 Exhibit A - Initial Communications Re Initial Disclosures, # 2 Exhibit B - Disclosed Expert Report, # 3 Exhibit C - Confidentiality Email, # 4 Exhibit D - Post-Call Email, # 5 Exhibit E - Plaintiffs' Initial Disclosures)(Larosiere, Matthew) (Entered: 04/13/2026) |
| 04/14/2026 | 105 | REPLY in Support of Motion re 95 MOTION to Compel *Defendant Matthew Larosiere to Produce Documents and For Sanctions* . filed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. (Everman, Brendan) (Entered: 04/14/2026) |
| 04/14/2026 | 106 | PAPERLESS ORDER: The Court shall also hear argument regarding Defendants' Motion to Compel Plaintiffs' Rule 26(a)(1) Disclosures [DE 104] during the previously scheduled in-person hearing on April 17, 2026. A response shall be filed by April 15, 2026. Any reply shall be filed by April 16, 2026, at 2:00 p.m. Signed by Ch. Magistrate Judge William Matthewman on 4/14/2026. (nrs) (Entered: 04/14/2026) |
| 04/14/2026 | | Reset Deadlines as to 104 MOTION to Compel *Complaint Rule 26(a)(1) Disclosures* . Responses due by 4/15/2026. Replies due by 4/16/2026. Per DE 106 . (ksr) (Entered: 04/14/2026) |
| 04/14/2026 | 107 | RESPONSE in Opposition re 100 MOTION to Compel *complete responses to Defendant Elik's Requests for Production* MOTION for Attorney Fees filed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Replies due by 4/21/2026. (Attachments: # 1 Exhibit 1-Declaration of Garret Walliman)(Everman, Brendan) (Entered: 04/14/2026) |
| 04/15/2026 | 108 | REPLY in Support of Motion re 100 MOTION to Compel *complete responses to Defendant Elik's Requests for Production* MOTION for Attorney Fees . filed by John Elik. (Attachments: # 1 Exhibit A - Declaration of M Larosiere)(Larosiere, Matthew) (Entered: 04/15/2026) |
| 04/15/2026 | 109 | RESPONSE in Opposition re 104 MOTION to Compel *Complaint Rule 26(a)(1) Disclosures* filed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Replies due by 4/22/2026. (Attachments: # 1 Exhibit 1-Plaintiffs' Supplemental Disclosures, # 2 Exhibit 2-Tyra Expert Report, # 3 Exhibit 3-Conferral Emails)(Everman, Brendan) (Entered: 04/15/2026) |
| 04/16/2026 | 110 | REPLY in Support of Motion re 104 MOTION to Compel *Complaint Rule 26(a)(1) Disclosures* . filed by Zackary Clark, John Elik, Matthew Larosiere, John Lettman, Josh Kiel Stroke. (Larosiere, Matthew) (Entered: 04/16/2026) |
| 04/16/2026 | 111 | Defendant's RESPONSE *in compliance with (Doc. 98), providing fee declaration* by Zackary Clark, John Elik, John Lettman, Josh Kiel Stroke. (Larosiere, Matthew) (Entered: 04/16/2026) |

| | | |
|---|---|---|
| 04/16/2026 | 112 | NOTICE *of Fee affidavit* by Alexander Holladay re 98 Order on Motion to Compel,, Order on Motion for Attorney Fees, (De Pury, Gary) (Entered: 04/16/2026) |
| 04/16/2026 | 113 | Defendant's NOTICE *in Compliance with (Doc. 98), Providing Fee Declaration* by Matthew Larosiere re 98 Order on Motion to Compel,, Order on Motion for Attorney Fees, (Zermay, Zachary) (Entered: 04/16/2026) |
| 04/17/2026 | | Set/Reset Hearings Discovery Hearing set for 4/17/2026 at 01:30 PM in West Palm Beach Division before Ch. Magistrate Judge William Matthewman. (swr) (Entered: 04/17/2026) |
| 04/17/2026 | 114 | PAPERLESS Minute Order for proceedings held before Ch. Magistrate Judge William Matthewman: Motion Hearing/Discovery Hearing held on 4/17/2026 re 100 MOTION to Compel *complete responses to Defendant Elik's Requests for Production* MOTION for Attorney Fees filed by John Elik, 104 MOTION to Compel *Complaint Rule 26(a)(1) Disclosures* filed by John Lettman, Matthew Larosiere, Josh Kiel Stroke, Zackary Clark, John Elik, 95 MOTION to Compel *Defendant Matthew Larosiere to Produce Documents and For Sanctions* filed by DD Foundation, LLC, Defense Distributed, DEFCAD, Inc. Argument held. Written Order to be issued. Total time in court: 01 hour(s) : 47 minutes. Attorney Appearance(s): Brendan Stuart Everman, Howard Foster, Matthew Michael Larosiere, Zachary Z Zermay. (Digital 13:32:19; 14:52:18) (swr) (Entered: 04/17/2026) |
| 04/20/2026 | 115 | ORDER FOLLOWING APRIL 17, 2026 DISCOVERY HEARING denying 95 Motion to Compel; granting in part and denying in part 100 Motion to Compel; denying 104 Motion to Compel. Discovery Hearing set for 5/5/2026 11:00 AM in West Palm Beach Division before Ch. Magistrate Judge William Matthewman. Signed by Ch. Magistrate Judge William Matthewman on 4/20/2026. *See attached document for full details.* (ksr) (Entered: 04/20/2026) |
| 04/20/2026 | 116 | ANSWER and Affirmative Defenses to Amended Complaint *by Elik, Larosiere, Holladay, Stroke, Lettman, and Clark*, COUNTERCLAIM *by Elik, Holladay, Stroke, and Lettman* against DD Foundation, LLC, DEFCAD, Inc., Defense Distributed, Cody Rutledge Wilson, Federico Andino Reynal, Garret Walliman, Thomas Christopher Odom, David Gingras, Chad Flores by Alexander Holladay, John Lettman, Zackary Clark, Josh Kiel Stroke, John Elik, Matthew Larosiere. (Attachments: # 1 Summon(s) Proposed Summons as to Wilson, # 2 Summon(s) Proposed Summons as to as to Flores, # 3 Summon(s) Proposed Summons as to Gingras, # 4 Summon(s) Proposed Summons as to Odom, # 5 Summon(s) Proposed Summons as to Reynal, # 6 Summon(s) Proposed Summons as to Walliman)(Larosiere, Matthew) (Entered: 04/20/2026) |
| 04/21/2026 | 117 | Mjstar Credit Entry re: 100 Motion per DE 115 Order. (mf) (Entered: 04/21/2026) |
| 04/22/2026 | 118 | PAPERLESS ORDER: Due to a change in the Court's schedule, the in-person discovery hearing scheduled for May 5, 2026, is RESET to occur on May 6, 2026, at 2:00 p.m. in the West Palm Beach Federal Courthouse, Courtroom 5, Third Floor. The Joint Notice deadline remains the same. Signed by Ch. Magistrate Judge William Matthewman on 4/22/2026. (nrs) (Entered: 04/22/2026) |
| 04/27/2026 | 119 | MOTION to Bifurcate *trial as to the counterclaims* ( Responses due by 5/11/2026.), MOTION To Set a Separate Counterclaim Schedule, or, in the alternative, for Leave Nunc Pro Tunc by Zackary Clark, John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. (Larosiere, Matthew) (Entered: 04/27/2026) |
| 04/28/2026 | 120 | ORDER AWARDING ATTORNEYS' FEES AGAINST PLAINTIFFS AND THEIR COUNSEL: The requested amounts of attorneys' fees [DEs 111, 112, 113] are GRANTED IN PART AND DENIED IN PART as stated in this Order. Plaintiff is ORDERED to make such payment to Defendants' respective counsel on or before May 11, 2026. The Court once again ORDERS all parties and counsel in this case to cooperate |

| | | |
|---|---|---|
| | | during the discovery process and to act professionally and courteously to one another. Signed by Ch. Magistrate Judge William Matthewman on 4/28/2026. *See attached document for full details.* (scn) (Entered: 04/28/2026) |
| 04/29/2026 | 121 | STICKEN MOTION to Strike 116 Answer to Amended Complaint,,,, Counterclaim,,, 119 MOTION to Bifurcate *trial as to the counterclaims* MOTION To Set a Separate Counterclaim Schedule, or, in the alternative, for Leave Nunc Pro Tunc *and Opposition to Defendants' Motion to Set a Seperate Counterclaim Discovery and Trial Schedule* by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Responses due by 5/13/2026. (Attachments: # 1 Exhibit 1-John Elik Deposition Transcript)(Everman, Brendan) Modified text on 5/1/2026 (ksr). Per DE 123 . (Entered: 04/29/2026) |
| 04/29/2026 | 122 | PAPERLESS ORDER denying as moot 31 Plaintiff's Motion for Default Judgment against Peter Celentano. Plaintiff filed a motion for default judgment on December 11, 2025. (DE 31 ). On February 6, 2026, Plaintiff filed a Second Amended Complaint. (DE 49 ). Accordingly, Plaintiff's Motion for Default Judgment is DENIED AS MOOT. This Order is without prejudice to Plaintiff seeking a default against Defendant Peter Celentano with respect to the Second Amended Complaint, if appropriate. Signed by Judge Donald M. Middlebrooks on 4/29/2026. (kid) (Entered: 04/29/2026) |
| 04/30/2026 | 123 | PAPERLESS ORDER striking 121 Plaintiff's Combined Motion to Strike Counterclaims and Opposition to Defendants' Motion to Set a Separate Counterclaim Discovery and Trial Schedule. The filing violates Local Rule 7.1(c), which requires that each motion be filed as a separate submission with its own supporting memorandum. Hybrid filings that merge a response with a motion are procedurally improper and hinder the orderly administration of the docket. Accordingly, DE 121 is STRICKEN in its entirety. Any motion Plaintiff seeks to raise must be filed as an independent docket entry that complies with the Federal Rules of Civil Procedure and the Local Rules of this District. Signed by Judge Donald M. Middlebrooks on 4/30/2026. (kid) (Entered: 04/30/2026) |
| 04/30/2026 | 124 | Plaintiff's MOTION to Strike 116 Answer to Amended Complaint,,,, Counterclaim,,, by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Responses due by 5/14/2026. (Attachments: # 1 Exhibit 1-Elik Deposition Transcript)(Everman, Brendan) (Entered: 04/30/2026) |
| 04/30/2026 | 125 | RESPONSE in Opposition re 119 MOTION to Bifurcate *trial as to the counterclaims* MOTION To Set a Separate Counterclaim Schedule, or, in the alternative, for Leave Nunc Pro Tunc filed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Replies due by 5/7/2026. (Everman, Brendan) (Entered: 04/30/2026) |
| 05/01/2026 | 126 | Joint NOTICE *of Outstanding Discovery Disputes in Compliance with Court Order [D.E. 115]* by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed re 115 Order on Motion to Compel,,,,, (Everman, Brendan) (Entered: 05/01/2026) |
| 05/05/2026 | 127 | Plaintiff's MOTION for Extension of Time to File Response/Reply/Answer as to 116 Answer to Amended Complaint,,,, Counterclaim,,, by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Responses due by 5/19/2026. (Everman, Brendan) (Entered: 05/05/2026) |
| 05/06/2026 | 128 | PAPERLESS Minute Order for proceedings held before Ch. Magistrate Judge William Matthewman: In-Person Discovery Hearing held on 5/6/2026. Argument held. Written Order to be issued. Total time in court: 01 hour(s) : 03 minutes. Attorney Appearance(s): Brendan Stuart Everman, Howard Foster, Matthew Michael Larosiere, Zachary Z Zermay, Gary Charles De Pury, Other appearances: Cody Wilson, Owner. (Digital 14:08:59) (swr) (Entered: 05/06/2026) |
| 05/07/2026 | 129 | REPLY in Support of Motion re 119 MOTION to Bifurcate *trial as to the counterclaims* MOTION To Set a Separate Counterclaim Schedule, or, in the alternative, for Leave Nunc |

| | | |
|---|---|---|
| | | Pro Tunc . filed by Zackary Clark, John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. (Larosiere, Matthew) (Entered: 05/07/2026) |
| 05/07/2026 | 130 | Plaintiff's MOTION to Strike 116 Answer to Amended Complaint,,,, Counterclaim,,, by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Responses due by 5/21/2026. (Everman, Brendan) (Entered: 05/07/2026) |
| 05/08/2026 | 131 | Summons Issued as to Chad Flores, David Gingras, Thomas Christopher Odom, Federico Andino Reynal, Garret Walliman, Cody Rutledge Wilson. (ksr) (Entered: 05/08/2026) |
| 05/08/2026 | 132 | OMNIBUS ORDER denying 119 Motion to Bifurcate; denying 119 Motion to Set a Separate Counterclaim Discovery and Trial Schedule, or Alternatively for Leave Nunc Pro Tunc ; denying as moot 124 Motion to Strike ; denying as moot 127 Motion for Extension of Time to File Response/Reply/Answer. Signed by Judge Donald M. Middlebrooks on 5/8/2026. *See attached document for full details.* (ksr) (Entered: 05/08/2026) |
| 05/11/2026 | 133 | ORDER FOLLOWING MAY 6, 2026 DISCOVERY HEARING Signed by Ch. Magistrate Judge William Matthewman on 5/11/2026. *See attached document for full details.* (ksr) (Entered: 05/11/2026) |
| 05/14/2026 | 134 | MOTION to Compel *Compliant Searches and Complete Responses to Elik's Requests for Production and Admission* by John Elik. Responses due by 5/28/2026. (Attachments: # 1 Exhibit A - Communications with Prior Counsel, # 2 Exhibit B - 37b Motion re: Prior Production, # 3 Exhibit C - Prior Counsel Indicating Millions of Messages, # 4 Exhibit D - Order on Sanctions, # 5 Exhibit E - Wilsons Prior Search Aff, # 6 Exhibit F - Defcads Amended Responses, # 7 Exhibit G - Incomplete Slack Search Evincing Many Missing Communications, # 8 Exhibit H - JG Email to Wilson Identifying Missing Signal Communication, # 9 Exhibit I - Plaintiffs Response to RFAs, # 10 Exhibit J - Produced Document Contradicting Discovery Response, # 11 Exhibit K - Second Produced Document Conflicting Discovery Response, # 12 Exhibit L - Third Produced Document Contradicting Discovery Response, # 13 Exhibit M - Plaintiffs Terms of Service, # 14 Transcripts Rough Wilson Transcript Vol I, # 15 Transcripts Rough Wilson Transcript Vol II)(Larosiere, Matthew) (Entered: 05/14/2026) |
| 05/14/2026 | | Reset Deadlines as to 134 MOTION to Compel *Compliant Searches and Complete Responses to Elik's Requests for Production and Admission* . Responses due by 5/19/2026. Replies due by 5/20/2026. Per DE 135 . (ksr) (Entered: 05/15/2026) |
| 05/15/2026 | 135 | PAPERLESS ORDER EXPEDITING BRIEFING: The Court has reviewed Defendant John Elik's Motion to Compel [DE 134] which was filed on the last day of the discovery period. It is clear that the parties continue to engage in their discovery bickering. Given the upcoming summary judgment deadline, expedited briefing is required. Therefore, Plaintiffs shall respond by 5:00 p.m. on May 19, 2026. Any reply shall be filed by 5:00 p.m. on May 20, 2026. No extensions shall be granted. The Court shall then either rule on the papers or, if deemed necessary, set down an in-person hearing within the next few days. The Court shall also award sanctions against any party and/or attorney as deemed appropriate. Signed by Ch. Magistrate Judge William Matthewman on 5/15/2026. (nrs) (Entered: 05/15/2026) |
| 05/15/2026 | 136 | ORDER REFERRING CASE TO MAGISTRATE JUDGE FOR SETTLEMENT CONFERENCE REFERRING CASE to Magistrate Judge Ryon M. McCabe for Settlement. Signed by Judge Donald M. Middlebrooks on 5/15/2026. *See attached document for full details.* (ksr) (Entered: 05/15/2026) |
| 05/15/2026 | 137 | PAPERLESS ORDER: This matter has been referred to the undersigned for a settlement conference 136 . By May 22, 2026, the parties shall file a joint motion setting forth three mutually agreed upon dates to conduct the settlement conference. Unless both parties |

| | | |
|---|---|---|
| | | agree otherwise, the settlement conference will be conducted via Zoom. Signed by Magistrate Judge Ryon M. McCabe on 5/15/2026. (jb02) (Entered: 05/15/2026) |
| 05/19/2026 | 138 | RESPONSE in Opposition re 134 MOTION to Compel *Compliant Searches and Complete Responses to Elik's Requests for Production and Admission* filed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Replies due by 5/26/2026. (Attachments: # 1 Exhibit 1 - Declaration of Cody Wilson, # 2 Exhibit 2 - PLTFS 29188)(Everman, Brendan) (Entered: 05/19/2026) |
| 05/20/2026 | 139 | REPLY in Support of Motion re 134 MOTION to Compel *Compliant Searches and Complete Responses to Elik's Requests for Production and Admission* . filed by John Elik. (Attachments: # 1 Exhibit A - Md Priv Log, # 2 Exhibit B - Nicknames Aff, # 3 Exhibit C - Customer Reasons, # 4 Exhibit D - Rog Res, # 5 Exhibit E - MC Trans, # 6 Exhibit F - Basra Art)(Larosiere, Matthew) (Entered: 05/20/2026) |
| 05/21/2026 | 140 | RESPONSE in Opposition re 130 Plaintiff's MOTION to Strike 116 Answer to Amended Complaint,,,, Counterclaim,,, filed by Zackary Clark, John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. Replies due by 5/28/2026. (Larosiere, Matthew) (Entered: 05/21/2026) |
| 05/22/2026 | 141 | NOTICE *Regarding Settlement Conference* by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed (Everman, Brendan) (Entered: 05/22/2026) |
| 05/26/2026 | 142 | ORDER SCHEDULING SETTLEMENT CONFERENCE VIA ZOOM. Settlement Conference set for 6/3/2026 01:00 PM via Zoom before Magistrate Judge Ryon M. McCabe. Signed by Magistrate Judge Ryon M. McCabe on 5/26/2026. *See attached document for full details.* (drz) (Entered: 05/26/2026) |
| 05/27/2026 | 143 | ORDER ON DEFENDANT JOHN ELIK'S MOTION TO COMPEL PLAINTIFFS' COMPLETE PRODUCTION, SEARCH CERTIFICATIONS, AND PROPER RFA RESPONSES denying 134 Motion to Compel. Signed by Ch. Magistrate Judge William Matthewman on 5/27/2026. *See attached document for full details.* (ksr) (Entered: 05/27/2026) |
| 05/28/2026 | 144 | MOTION to Exclude or Limit the Opinions of Jason M. Tyra , MOTION in Limine *to exclude or limit expert testimony* by Zackary Clark, John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. Responses due by 6/11/2026. (Attachments: # 1 Exhibit A - Tyra Deposition Transcript, # 2 Exhibit B - Tyra Report, # 3 Exhibit C - Plaintiffs Disclosures, # 4 Exhibit D - Plaintiffs Response to Consolidated Interrogatories, # 5 Exhibit E - Exit Surveys, # 6 Exhibit F- Transcript of Wilson Deposition Vol I, # 7 Exhibit G - Trancript of Wilson Deposition Vol II, # 8 Exhibit H - Ghost Gunner Data, # 9 Exhibit I - Fedcad Meme on Website, # 10 Exhibit J - Meeting Minutes)(Larosiere, Matthew) (Entered: 05/28/2026) |
| 05/28/2026 | 145 | Plaintiff's REPLY in Support of Motion re 130 Plaintiff's MOTION to Strike 116 Answer to Amended Complaint,,,, Counterclaim,,, . filed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. (Everman, Brendan) (Entered: 05/28/2026) |
| 05/28/2026 | 146 | Plaintiff's MOTION for Partial Summary Judgment *as to Defendants' Affirmative Defenses* by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Responses due by 6/11/2026. (Everman, Brendan) (Entered: 05/28/2026) |
| 05/28/2026 | 147 | MOTION for Summary Judgment by Zackary Clark, John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. Responses due by 6/11/2026. (Attachments: # 1 R56 Statement of Material Facts, # 2 Exhibit A - JG Communication, # 3 Exhibit B - "Our Hacker Friend", # 4 Exhibit C - WIlson Dep Tr Vol I, # 5 Exhibit D - Wilson Dep Tr Vol II, # 6 Exhibit E - Customer Exit Surveys, # 7 Exhibit F - Tyra Deposition Tr, # 8 Exhibit G - Tyra Report, # 9 Exhibit G-1 - Ghost Gunner Data, # 10 |

| | | |
|---|---|---|
| | | Exhibit G-2 - Legio Data, # 11 Exhibit H - Supplemental Init Disclosures, # 12 Exhibit I - Everman Confirms All 26f Produced, # 13 Exhibit J - Decl of Elik, # 14 Exhibit K - Plaintiffs Screenshot, # 15 Exhibit P - Pls Response to Elik Rogs, # 16 Exhibit Q - Pls Response to Larosiere Rogs, # 17 Exhibit S - Pls Response to Lettman Rogs, # 18 Exhibit T - Pls Response to Stroke Disc, # 19 Exhibit U - Pls Response to Clark Rogs, # 20 Exhibit V - DEFCAD Response to RFAS, # 21 Exhibit W - Defcad response to Elik RFA, # 22 Exhibit Y Defcad answer to rogs, # 23 Exhibit Z Defdist Answer to Rogs, # 24 Exhibit AA - Holladay Deposition)(Larosiere, Matthew) (Entered: 05/28/2026) |
| 06/01/2026 | 148 | PAPERLESS ORDER: Due to a change in the Court's schedule, the June 3, 2026 settlement conference 142 will take place from 2:00 PM to 6:00 PM. ****TIME CHANGE ONLY**** Signed by Magistrate Judge Ryon M. McCabe on 6/1/2026. (jb02) (Entered: 06/01/2026) |
| 06/02/2026 | 149 | MOTION to Determine Reasonable Fee for the Deposition of Jason M. Tyra by Zackary Clark, John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. Responses due by 6/16/2026. (Attachments: # 1 Exhibit A - Tyra Invoice, # 2 Exhibit B - Tyra Report, # 3 Exhibit C - Tyra Deposition)(Larosiere, Matthew) (Entered: 06/02/2026) |
| 06/03/2026 | 150 | RESPONSE in Opposition re 149 MOTION to Determine Reasonable Fee for the Deposition of Jason M. Tyra filed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Replies due by 6/10/2026. (Attachments: # 1 Exhibit 1-Jason Tyra's Report, # 2 Exhibit 2-Jason Tyra Declaration)(Everman, Brendan) (Entered: 06/03/2026) |
| 06/03/2026 | 151 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge Ryon M. McCabe: Good faith negotiations held. Case did not settle/impasse declared. Total time in court: 2 hour(s) : 55 minutes. Attorney Appearance(s): Matthew Michael Larosiere, Brendan Stuart Everman, Howard Foster, Zachary Z Zermay, Gary Charles De Pury. (Digital Zoom Video Start Time: 2:00PM) (jb02) (Entered: 06/03/2026) |
| 06/04/2026 | 152 | MOTION for Extension of Time to File Response/Reply/Answer as to 147 MOTION for Summary Judgment by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Responses due by 6/18/2026. (Everman, Brendan) (Entered: 06/04/2026) |
| 06/05/2026 | 153 | PAPERLESS ORDER denying 152 Plaintiffs' Motion for Extension of Time to File a Response to Defendants' Motion for Summary Judgment (DE 147 ). The Court's schedule does not allow for an extension of time with respect to the summary judgment motion as an extension does not allow adequate time for the Court to rule on the motion prior to the scheduled trial date. Signed by Judge Donald M. Middlebrooks on 6/5/2026. (kid) (Entered: 06/05/2026) |
| 06/10/2026 | 154 | REPLY in Support of Motion re 149 MOTION to Determine Reasonable Fee for the Deposition of Jason M. Tyra . filed by Zackary Clark, John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. (Larosiere, Matthew) (Entered: 06/10/2026) |
| 06/11/2026 | 155 | Notice of Supplemental Authority re 147 MOTION for Summary Judgment , 144 MOTION to Exclude or Limit the Opinions of Jason M. Tyra MOTION in Limine *to exclude or limit expert testimony* by Zackary Clark, John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke (Attachments: # 1 Exhibit A - N.D. Tex 2023 Order, # 2 Exhibit B - N.D. Tex 2026 Order) (Larosiere, Matthew) (Entered: 06/11/2026) |

| | | |
|---|---|---|
| 06/11/2026 | 156 | RESPONSE in Opposition re 144 MOTION to Exclude or Limit the Opinions of Jason M. Tyra MOTION in Limine *to exclude or limit expert testimony* filed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Replies due by 6/18/2026. (Attachments: # 1 Exhibit 1 - Declaration of Jason Tyra)(Everman, Brendan) (Entered: 06/11/2026) |
| 06/11/2026 | 157 | AFFIDAVIT in Opposition re 147 MOTION for Summary Judgment / *Declaration of Eric Goldhaber* filed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. (Everman, Brendan) (Entered: 06/11/2026) |
| 06/11/2026 | 158 | AFFIDAVIT in Opposition re 147 MOTION for Summary Judgment / *Declaration of Garret Walliman* filed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. (Everman, Brendan) (Entered: 06/11/2026) |
| 06/11/2026 | 159 | AFFIDAVIT in Opposition re 147 MOTION for Summary Judgment / *Declaration of Cody Wilson* filed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. (Attachments: # 1 Exhibit 1-California v. Larosiere, # 2 Exhibit 2-Top Liutenant) (Everman, Brendan) (Entered: 06/11/2026) |
| 06/11/2026 | 160 | RESPONSE in Opposition re 146 Plaintiff's MOTION for Partial Summary Judgment *as to Defendants' Affirmative Defenses* filed by Zackary Clark, John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. Replies due by 6/18/2026. (Attachments: # 1 Exhibit A - Composite of Materials Provided to Plaintiffs Regarding Truth of Statements in Meme)(Larosiere, Matthew) (Entered: 06/11/2026) |
| 06/11/2026 | 161 | STRICKEN RESPONSE in Opposition re 147 MOTION for Summary Judgment / *Opposition to Defendants' Statement of Material Facts [D.E. 147-1]* filed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Replies due by 6/18/2026. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6)(Everman, Brendan) Modified text per DE# 163 on 6/15/2026 (jas). (Entered: 06/11/2026) |
| 06/11/2026 | 162 | RESPONSE in Opposition re 147 MOTION for Summary Judgment filed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Replies due by 6/18/2026. (Everman, Brendan) (Entered: 06/11/2026) |
| 06/12/2026 | 163 | PAPERLESS ORDER STRIKING 161 for failure to comply with Local Rule 56.1. Plaintiff's Response to Defendant's Statement of Facts fails to provide specific, pinpoint citations to the record. Plaintiff must refile a compliant response no later than **June 16, 2026.** Failure to do so may result in the uncontested facts being deemed admitted. Signed by Judge Donald M. Middlebrooks on 6/12/2026. (kid) (Entered: 06/12/2026) |
| 06/16/2026 | 164 | ORDER ON DEFENDANTS' MOTION TO DETERMINE REASONABLE FEE FOR THE DEPOSITION OF JASON M. TYRA granting in part and denying in part 149 Motion to Determine Reasonable Fee. Signed by Ch. Magistrate Judge William Matthewman on 6/16/2026. *See attached document for full details.* (ksr) Modified Signing Judge on 6/17/2026 (mf). (Entered: 06/16/2026) |
| 06/16/2026 | 165 | RESPONSE in Opposition re 147 MOTION for Summary Judgment *Amended Response to Defendants' Statement of Material Facts [D.E. 147-1]* filed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Replies due by 6/23/2026. (Everman, Brendan) (Entered: 06/16/2026) |
| 06/17/2026 | 166 | MOTION for Judicial Notice and to Supplement the Daubert and Motion for Summary Judgment Record re 147 MOTION for Summary Judgment , 144 MOTION to Exclude or Limit the Opinions of Jason M. Tyra MOTION in Limine *to exclude or limit expert testimony* by Zackary Clark, John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. Responses due by 7/1/2026. (Attachments: # 1 Exhibit A - Vanderstok Intervenor Complaint, # 2 Exhibit B - Wilsons 2023 Lost Sales Declaration, # |

| | | |
|---|---|---|
| | | 3 Exhibit C - Vanderstok 2025 MPI Order Crediting Lost Sales, # 4 Exhibit D - Vanderstok 2025 MPI, # 5 Exhibit E - Wilson 2025 Declaration on Lost Sales, # 6 Exhibit F - VanDerStok 2026 Notice of Escalating Harm, # 7 Exhibit G - VanDerStok Banking Declaration, # 8 Exhibit H - VanDerStok Insurance Declaration, # 9 Exhibit I - VanDerStok 2026 Order Crediting Lost Sales, # 10 Exhibit J - Defense Distributed v YouTube Petition, # 11 Exhibit K - Kickstarter Complaint Alleging Lost Sales, # 12 Exhibit L - Deposition of Wilson, # 13 Exhibit M - State Department and Grewal Second Amended Complaint Alleging Lost Sales, # 14 Exhibit N - Order on Motion to Dismiss, # 15 Exhibit O - Transfer Order, # 16 Exhibit P - Complaint Alleging 5 Million in Lost Sales, # 17 Exhibit Q - Defense Distributed Continuing 5 Million Argument in 2024, # 18 Exhibit R - Wilson 2021 Declaration on Govt Interference, # 19 Exhibit S - Heindorff Declaration, # 20 Exhibit T - Plaintiffs Materials showing Service Provider Disruption, # 21 Exhibit U - VanDerStok Material Threatening Cessation of Business Due to Sales Loss)(Larosiere, Matthew) Modified relief type on 6/17/2026 (ksr). (Entered: 06/17/2026) |
| 06/17/2026 | 167 | Notice of Supplemental Authority re 147 MOTION for Summary Judgment , 144 MOTION to Exclude or Limit the Opinions of Jason M. Tyra MOTION in Limine *to exclude or limit expert testimony* by Zackary Clark, John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke (Attachments: # 1 Exhibit 11th Cir Opinion in Florida Virtual) (Larosiere, Matthew) (Entered: 06/17/2026) |
| 06/17/2026 | 168 | Clerk's Notice to Filer re 166 Motion for Leave to File. **Filer Selected the Wrong Motion Relief(s)**; ERROR - The Filer selected the wrong motion relief(s) when docketing the motion. The correction was made by the Clerk. It is not necessary to refile this document but future motions filed must include applicable reliefs. (ksr) (Entered: 06/17/2026) |
| 06/18/2026 | 169 | PAPERLESS ORDER REQUIRING EXPEDITED BRIEFING. Defendant has filed a Motion for Leave to Supplement the Summary Judgment and Daubert Records. (DE 166 ). The certificate of conferral reflects that Plaintiff opposes the relief requested. Given the posture of this matter, expedited briefing is required. Plaintiff shall file a Response by **June 22, 2026.** Defendant shall file a Reply by **June 24, 2026.** Signed by Judge Donald M. Middlebrooks on 6/18/2026. (kid) (Entered: 06/18/2026) |
| 06/18/2026 | 170 | REPLY in Support of Motion re 147 MOTION for Summary Judgment . *RULE 56.1 REPLY STATEMENT OF MATERIAL FACTS* filed by Zackary Clark, John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. (Attachments: # 1 Exhibit A - Composite of Goldhabers Continued Work with Plaintiffs, # 2 Exhibit B - Declaration of John Lettman, # 3 Exhibit C - Correspondence with Counsel Concerning Declarations)(Larosiere, Matthew) (Entered: 06/18/2026) |
| 06/18/2026 | 171 | REPLY in Support of Motion re 144 MOTION to Exclude or Limit the Opinions of Jason M. Tyra MOTION in Limine *to exclude or limit expert testimony*. filed by Zackary Clark, John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. (Larosiere, Matthew) (Entered: 06/18/2026) |
| 06/18/2026 | 172 | REPLY in Support of Motion re 146 Plaintiff's MOTION for Partial Summary Judgment *as to Defendants' Affirmative Defenses*. filed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. (Everman, Brendan) (Entered: 06/18/2026) |
| 06/18/2026 | 173 | REPLY in Support of Motion re 147 MOTION for Summary Judgment . filed by Zackary Clark, John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. (Larosiere, Matthew) (Entered: 06/18/2026) |
| 06/18/2026 | | Reset Deadlines as to 166 Motion for Leave to File. Responses due by 6/22/2026. Replies due by 6/24/2026. Per DE 169 . (ksr) (Entered: 06/22/2026) |

| | | |
|---|---|---|
| 06/22/2026 | 174 | RESPONSE in Opposition re 166 Motion for Leave to File filed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Replies due by 6/29/2026. (Everman, Brendan) (Entered: 06/22/2026) |
| 06/24/2026 | 175 | REPLY in Support of Motion re 166 Motion for Leave to File. filed by Zackary Clark, John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. (Attachments: # 1 Exhibit A - Declaration of Gary De Pury, # 2 Exhibit B - Declaration of Larosiere, # 3 Exhibit C - Declaration of Zermay, # 4 Exhibit D - San Diego Minute Order)(Larosiere, Matthew) (Entered: 06/24/2026) |
| 06/29/2026 | 176 | MOTION for Extension of Time to File Joint Pretrial Stipulation and Deposition Designations re 36 Scheduling Order,, Order Referring Case to Mediation, by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Responses due by 7/13/2026. (Everman, Brendan) (Entered: 06/29/2026) |
| 06/30/2026 | 177 | CERTIFICATE of Counsel re 36 Scheduling Order,, Order Referring Case to Mediation, *Regarding the Parties' Failure to Comply* by Matthew Michael Larosiere on behalf of Zackary Clark, John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke (Larosiere, Matthew) (Entered: 06/30/2026) |
| 06/30/2026 | 178 | PAPERLESS ORDER granting 176 Plaintiff's Unopposed Motion for Extension of Time. The Parties seek a 3-day extension of time to file their Joint Pretrial Stipulation and deposition designations, which will allow them additional time to narrow issues for trial. I find good cause. The Joint Pretrial Stipulation and deposition designations are due **no later than July 2, 2026.** No further extensions of these deadlines will be granted barring extraordinary circumstances. Signed by Judge Donald M. Middlebrooks on 6/30/2026. (kid) (Entered: 06/30/2026) |
| 06/30/2026 | | Reset Deadlines Pretrial Stipulation due by 7/2/2026. Per DE 178 . (ksr) (Entered: 06/30/2026) |
| 07/01/2026 | 179 | ORDER granting 147 Motion for Summary Judgment. Signed by Judge Donald M. Middlebrooks on 7/1/2026. *See attached document for full details.* (ksr) (Entered: 07/01/2026) |
| 07/01/2026 | 180 | JUDGMENT in favor of Alexander Holladay, Chad Flores, John Elik, John Lettman, Josh Kiel Stroke, Matthew Larosiere, Peter Celentano, Zackary Clark against DD Foundation, LLC, DEFCAD, Inc., Defense Distributed Closing Case. Signed by Judge Donald M. Middlebrooks on 7/1/2026. *See attached document for full details.* (ksr) (Entered: 07/01/2026) |
| 07/01/2026 | 181 | MOTION for Sanctions *Pursuant to Rule 11 As To The Second Amended Complaint* by John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. Responses due by 7/15/2026. (Attachments: # 1 Exhibit A - Composite Exhibit) (Larosiere, Matthew) (Entered: 07/01/2026) |
| 07/15/2026 | 182 | RESPONSE in Opposition re 181 MOTION for Sanctions *Pursuant to Rule 11 As To The Second Amended Complaint* filed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Replies due by 7/22/2026. (Attachments: # 1 Exhibit 1-Declaration of Wilson, # 2 Exhibit 2-Declaration of Walliman, # 3 Exhibit 3-Order dated 1/12/26) (Everman, Brendan) (Entered: 07/15/2026) |
| 07/22/2026 | 183 | REPLY in Support of Motion re 181 MOTION for Sanctions *Pursuant to Rule 11 As To The Second Amended Complaint*. filed by John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. (Attachments: # 1 Exhibit A - Plaintiffs' Counsel's Website)(Larosiere, Matthew) (Entered: 07/22/2026) |

| | | |
|---|---|---|
| 07/27/2026 | 184 | ORDER denying 181 Motion for Sanctions. Signed by Judge Donald M. Middlebrooks on 7/27/2026. *See attached document for full details.* (ksr) (Entered: 07/27/2026) |
| 07/28/2026 | 185 | Notice of Appeal as to 180 Judgment, 179 Order on Motion for Summary Judgment by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Filing fee $ 605.00 receipt number AFLSDC-19803843. Within fourteen days of the filing date of a Notice of Appeal, the appellant must complete the Eleventh Circuit Transcript Order Form regardless of whether transcripts are being ordered [Pursuant to FRAP 10(b)]. For information go to our FLSD website under All Forms and look for Transcript Order Form www.flsd.uscourts.gov/forms/all-forms. (Everman, Brendan) (Entered: 07/28/2026) |
| 07/29/2026 | | Transmission of Notice of Appeal, Judgment and Order under appeal, and Docket Sheet to US Court of Appeals re 185 Notice of Appeal. Notice has been electronically mailed. (jgo) (Entered: 07/29/2026) |
| 07/30/2026 | 186 | Acknowledgment of Receipt of NOA from USCA re 185 Notice of Appeal, filed by DD Foundation, LLC, Defense Distributed, DEFCAD, Inc.. Date received by USCA: 07/30/2026. USCA Case Number: 26-12667-C. (jgo) (Entered: 07/30/2026) |
| 07/31/2026 | 187 | MOTION for Bill of Costs by Zackary Clark, John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. Responses due by 8/14/2026. (Attachments: # 1 Memorandum in support of bill of costs, # 2 Exhibit Itemization and Composite of Receipts)(Larosiere, Matthew) (Entered: 07/31/2026) |
| 08/10/2026 | 188 | Notice of Cross Appeal as to 184 Order on Motion for Sanctions, 132 Order on Motion to Bifurcate,, Order on Motion for Miscellaneous Relief,, Order on Motion to Strike,, Order on Motion for Extension of Time to File Response/Reply/Answer, 48 Order on Motion to Dismiss for Failure to State a Claim,, Order on Motion to Dismiss/Lack of Jurisdiction,, Order on Motion for More Definite Statement,, Order on Motion for Leave to File,, Order on Motion for Sanctions, by Zackary Clark, John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. Filing fee $ 605.00 receipt number AFLSDC-19849932. Within fourteen days of the filing date of a Notice of Appeal, the appellant must complete the Eleventh Circuit Transcript Order Form regardless of whether transcripts are being ordered [Pursuant to FRAP 10(b)]. For information go to our FLSD website under All Forms and look for Transcript Order Form www.flsd.uscourts.gov/forms/all-forms. (Larosiere, Matthew) (Entered: 08/10/2026) |
| 08/11/2026 | 189 | TRANSCRIPT ORDER FORM filed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed re 185 Notice of Appeal,, filed by DD Foundation, LLC, Defense Distributed, DEFCAD, Inc.. No Transcript Requested. (Everman, Brendan) (Entered: 08/11/2026) |
| 08/11/2026 | | Transmission of Notice of Appeal, Orders under appeal, and Docket Sheet to US Court of Appeals re 188 Notice of Cross Appeal. Notice has been electronically mailed. (jgo) (Entered: 08/11/2026) |
| 08/13/2026 | 190 | Acknowledgment of Receipt of NOA from USCA re 188 Notice of Cross Appeal, filed by John Lettman, Matthew Larosiere, Josh Kiel Stroke, Zackary Clark, John Elik, Alexander Holladay. Date received by USCA: 08/11/2026. USCA Case Number: 26-12667-C. (jgo) (Entered: 08/13/2026) |
| 08/14/2026 | 191 | RESPONSE in Opposition re 187 MOTION for Bill of Costs filed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Replies due by 8/21/2026. (Everman, Brendan) (Entered: 08/14/2026) |
| 08/24/2026 | 192 | Notice of Supplemental Authority re 187 MOTION for Bill of Costs , 191 Response in Opposition to Motion by Zackary Clark, John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke (Larosiere, Matthew) (Entered: 08/24/2026) |

| | | |
|---|---|---|
| 08/24/2026 | 193 | Joint MOTION to Bifurcate *briefing as to fees under 15 U.S.C. §1117(a)* by Zackary Clark, John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. Responses due by 9/8/2026. (Larosiere, Matthew) (Entered: 08/24/2026) |
| 08/24/2026 | 194 | TRANSCRIPT ORDER FORM filed by Zackary Clark, John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke re 188 Notice of Cross Appeal,,,, filed by John Lettman, Matthew Larosiere, Josh Kiel Stroke, Zackary Clark, John Elik, Alexander Holladay. Transcript Requested. Counsel/Party submitting transcript order form: Matthew Larosiere. Link to Circuit Transcript Order Form PDF sent to: Court Reporter Coordinator. **Payment Status: NO Satisfactory Arrangements for Payment Made or Indicated**. (Larosiere, Matthew) (Entered: 08/24/2026) |
| 08/27/2026 | 195 | PAPERLESS ORDER granting [DE 193] the Parties' Joint Motion to Bifurcate Briefing. The Court will permit the Parties to file briefs on the issue of entitlement to attorney's fees, however, there will be page limits given that the briefing will constitute one discrete issue. Defendants may file up to a 10-page motion, Plaintiffs may file up to a 10 page response and Defendants may file up to a 5 page reply on the issue of entitlement only. Signed by Judge Donald M. Middlebrooks (ml00) (Entered: 08/27/2026) |
| 08/31/2026 | 196 | MOTION for Attorney Fees *Entitlement Determination Under 15 U.S.C. 1117(a)* by Zackary Clark, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. Responses due by 9/14/2026. (Attachments: # 1 Exhibit A - Composite of Plaintiffs Public Dissemination of Discovery Materials, # 2 Exhibit B - Plaintiffs Call This Action A Ticket to a Rough Ride, # 3 Exhibit C - Defendant Clark Declaration, # 4 Exhibit D - Defendant Elik Declaration, # 5 Exhibit E - Defendant Holladay Declaration, # 6 Exhibit F - Defendant Larosiere Declaration, # 7 Exhibit G - Defendant Lettman Declaration, # 8 Exhibit H - Defendant Stroke Declaration)(Larosiere, Matthew) (Entered: 08/31/2026) |
| 09/01/2026 | 197 | ORDER ON DEFENDANTS' BILL OF COSTS granting in part 187 Motion for Bill of Costs. Signed by Judge Donald M. Middlebrooks on 9/1/2026. *See attached document for full details.* (ksr) (Entered: 09/01/2026) |
| 09/02/2026 | 198 | JUDGMENT in favor of Alexander Holladay, John Elik, John Lettman, Josh Kiel Stroke, Matthew Larosiere, Peter Celentano, Zackary Clark against DD Foundation, LLC, DEFCAD, Inc., Defense Distributed Signed by Judge Donald M. Middlebrooks on 9/2/2026. *See attached document for full details.* (ksr) (Entered: 09/02/2026) |
| 09/14/2026 | 199 | RESPONSE in Opposition re 196 MOTION for Attorney Fees *Entitlement Determination Under 15 U.S.C. 1117(a)* filed by DD Foundation, LLC, DEFCAD, Inc., Defense Distributed. Replies due by 9/21/2026. (Everman, Brendan) (Entered: 09/14/2026) |
| 09/17/2026 | 200 | REPLY in Support of Motion re 196 MOTION for Attorney Fees *Entitlement Determination Under 15 U.S.C. 1117(a)*. filed by Zackary Clark, John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. (Larosiere, Matthew) (Entered: 09/17/2026) |
| 09/17/2026 | 201 | ORDER denying 196 Motion for Attorney Fees. Signed by Judge Donald M. Middlebrooks on 9/17/2026. *See attached document for full details.* (ksr) (Entered: 09/18/2026) |
| 09/29/2026 | 202 | COURT REPORTER ACKNOWLEDGMENT re 188 Notice of Cross Appeal, 194 **Circuit Transcript Order Form**,. Court Reporter: Bonnie Lewis, 954-985-8875 / caselawrptg@gmail.com. Estimated filing date of transcript 09/29/2026. USCA number 26-12667-C. (jgo) (Entered: 09/29/2026) |
| 09/29/2026 | 203 | TRANSCRIPT of Discovery Hearing held on 04/02/2026 before Magistrate Judge William D. Matthewman, 1-26 pages, re: 188 Notice of Cross Appeal, Court Reporter: Bonnie Lewis, 954-985-8875 / caselawreporting@gmail.com. USCA Case Number: 26- |

| | | |
|---|---|---|
| | | 12667-C. Transcript may be viewed at the court public terminal or purchased by contacting the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/20/2026. Redacted Transcript Deadline set for 10/30/2026. Release of Transcript Restriction set for 12/28/2026. (jgo) (Entered: 10/01/2026) |
| 09/29/2026 | 204 | TRANSCRIPT of Discovery Hearing held on 05/06/2026 before Magistrate Judge William D. Matthewman, 1-56 pages, re: 188 Notice of Cross Appeal, Court Reporter: Bonnie Lewis, 954-985-8875 / caselawreporting@gmail.com. USCA Case Number: 26-12667-C. Transcript may be viewed at the court public terminal or purchased by contacting the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/20/2026. Redacted Transcript Deadline set for 10/30/2026. Release of Transcript Restriction set for 12/28/2026. (jgo) (Entered: 10/01/2026) |
| 09/30/2026 | 205 | TRANSCRIPT of Discovery Hearing held on 04/17/2026 before Magistrate Judge William D. Matthewman, 1-82 pages, re: 188 Notice of Cross Appeal, Court Reporter: Bonnie Lewis, 954-985-8875 / caselawreporting@gmail.com. Transcript may be viewed at the court public terminal or purchased by contacting the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/21/2026. Redacted Transcript Deadline set for 11/2/2026. Release of Transcript Restriction set for 12/29/2026. (jgo) (Entered: 10/01/2026) |
| 09/30/2026 | 206 | TRANSCRIPT NOTIFICATION - Transcript(s) ordered on: 08/24/2026 by Matthew Larosiere, Esq. have been filed by Court Reporter: Bonnie Lewis, 954-985-8875 / caselawreporting@gmail.com re 188 Notice of Cross Appeal, 202 Court Reporter Acknowledgment, 194 **Circuit Transcript Order Form**,. (jgo) (Entered: 10/01/2026) |
| 10/08/2026 | 207 | Notice of Appeal as to 201 Order on Motion for Attorney Fees by Zackary Clark, John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. Filing fee $ 605.00 receipt number AFLSDC-20093849. Within fourteen days of the filing date of a Notice of Appeal, the appellant must complete the Eleventh Circuit Transcript Order Form regardless of whether transcripts are being ordered [Pursuant to FRAP 10(b)]. For information go to our FLSD website under All Forms and look for Transcript Order Form www.flsd.uscourts.gov/forms/all-forms. (Larosiere, Matthew) (Entered: 10/08/2026) |
| 10/08/2026 | 208 | Corrected Notice of Appeal as to 201 Order on Motion for Attorney Fees by Zackary Clark, John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke. Filing fee $ 605.00. No Filing Fee Required. Within fourteen days of the filing date of a Notice of Appeal, the appellant must complete the Eleventh Circuit Transcript Order Form regardless of whether transcripts are being ordered [Pursuant to FRAP 10(b)]. For information go to our FLSD website under All Forms and look for Transcript Order Form www.flsd.uscourts.gov/forms/all-forms. (Larosiere, Matthew) (Entered: 10/08/2026) |
| 10/09/2026 | | Transmission of Notice of Appeal, Order under appeal, and Docket Sheet to US Court of Appeals re 208 Notice of Appeal, 207 Notice of Appeal, Notice has been electronically mailed. (jgo) (Entered: 10/09/2026) |
| 10/13/2026 | 209 | TRANSCRIPT ORDER FORM filed by Zackary Clark, John Elik, Alexander Holladay, Matthew Larosiere, John Lettman, Josh Kiel Stroke re 208 Notice of Appeal,, filed by John Lettman, Matthew Larosiere, Josh Kiel Stroke, Zackary Clark, John Elik, Alexander Holladay. No Transcript Requested. (Larosiere, Matthew) (Entered: 10/13/2026) |
| 10/13/2026 | 210 | Acknowledgment of Receipt of NOA from USCA re 207 Notice of Appeal, filed by John Lettman, Matthew Larosiere, Josh Kiel Stroke, Zackary Clark, John Elik, Alexander |

| | | |
|---|---|---|
| | | Holladay. Date received by USCA: 10/09/2026. USCA Case Number: 26-13661-C. (jgo) (Entered: 10/13/2026) |
| 10/13/2026 | 211 | Acknowledgment of Receipt of NOA from USCA re 208 Corrected Notice of Appeal, filed by John Lettman, Matthew Larosiere, Josh Kiel Stroke, Zackary Clark, John Elik, Alexander Holladay. Date received by USCA: 10/08/2026. USCA Case Number: 26-13661-C. (jgo) (Entered: 10/13/2026) |

---


| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 10/14/2026 15:57:50 | | | |
| **PACER Login:** | cpchichyi | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 9:25-cv-81197-DMM |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

# TAB 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

Case No.:

DEFENSE DISTRIBUTED, a Texas corporation; DD FOUNDATION, LLC, a Texas limited liability company; and, DEFCAD, INC., a Texas corporation,

Plaintiffs,

v.

JOHN ELIK, individually; MATTHEW LAROSIERE, individually; ALEXANDER HOLLADAY, individually; PETER CELENTANO, individually; JOSH KIEL STROKE, individually; and JOHN LETTMAN, individually,

Defendants.
________________________________________/

# COMPLAINT

Plaintiffs, Defense Distributed; DD Foundation, LLC; and DEFCAD, Inc. (hereafter "DEFCAD") sue Defendants, Messrs. John Elik, Matthew Larosiere, Alexander Holladay, Peter Celentano, Josh Kiel Stroke, and John Lettman, as follows:

## Introduction.

Defendants jointly operate a 3D gun file business known as The Gatalog,[1] through a website appearing at www.thegatalog.com, as a direct competitor of Plaintiff, DEFCAD. Defendants conspired to make false statements about DEFCAD, to deter DEFCAD's customers, and to steer them to Defendants' rival business, including that: (1) DEFCAD has been hacked and

[1] "A 3D-printed firearm is a firearm that is partially or primarily produced with a 3D printer." Wikipedia, (viewed September 24, 2025).

its customers' names "dumped"(publicized); (2) DEFCAD's customer names are public ("doxxing"); and, (3) DEFCAD hosts its website in Iran. DEFCAD seeks damages pursuant to civil RICO, the Lanham Act and Florida law. In addition, because Defendants' false statements will not stop short of judicial intervention, DEFCAD seeks injunctive relief against Defendants.

**Parties, Jurisdiction & Venue.**

1. Plaintiff, Defense Distributed, is a Texas corporation with its principal place of business in Texas.

2. Plaintiff, DEFCAD, Inc., is a Texas corporation with its principal place of business in Texas.

3. Plaintiff, DD Foundation, LLC, is a Texas limited liability company whose members reside in Texas.

4. Defendant, Matthew Larosiere, is a citizen and resident of Florida.

5. Defendant, John Elik, is a citizen and resident of Illinois.

6. Defendant, Alexander Holladay, is a citizen and resident of Florida.

7. Defendant, Peter Celentano, is a citizen and resident of New York.

8. Defendant, Josh Kiel Stroke, is a citizen and resident of Arizona.

9. Defendant, John Lettman, is a citizen and resident of Pennsylvania.

10. The Court has subject matter jurisdiction of the RICO and Lanham Act claims as federal questions, 28 U.S.C. § 1331, and from RICO's civil damages provisions, 18 U.S.C. §§ 1964(c) and 1965(a).

11. This Court also has diversity jurisdiction under 28 U.S.C. § 1332(a), and the amount in controversy exceeds $75,000, exclusive of interest and costs, and Plaintiffs (citizens of Texas)

are completely diverse from each Defendant (citizens of Florida, Illinois, New York, Arizona, and Pennsylvania).

12. This Court has supplemental personal jurisdiction over defendants for the Florida claims because they arise from the same nucleus of facts as the RICO and Lanham Act claims. 28 U.S.C. §1367.

13. Venue is proper here, pursuant to 18 U.S.C. §1965(a), because Defendant, Mr. Larosiere, resides in this District. Jurisdiction and venue are proper as to the other Defendants because they conspired with Mr. Larosiere to violate RICO, and can thus be served outside this District pursuant to §1965(b). Moreover, the "ends of justice" support adjudicating all members of this RICO conspiracy together in this action.

**Facts Common to All Counts.**

14. Plaintiffs share the income produced by DEFCAD's legal file sharing business, through online sales, mainly generated through their website: www.defcad.com.

15. Defendants are active in the 3D gun market and came together to challenge DEFCAD's position in this growing industry.

16. Defendants began their plot to damage DEFCAD in 2019 when Defendant, Mr. Elik, reached out to Mr. Cody Wilson, owner and principal of DEFCAD, to collaborate in firearms software and hardware development.

17. Defendant, Mr. Elik, visited DEFCAD's business facility in Austin, Texas.

18. DEFCAD and Defendant, Mr. Elik, reached an agreement in 2019, whereby DEFCAD would pay him a fee for each customer he brought to DEFCAD's website, which was then being prepared for launch.

19. In March 2020, DEFCAD launched www.defcad.com.

20. After March 2020, DEFCAD made monthly payments to Defendant, Mr. Elik, pursuant to the agreement until August 2022.

21. At that time, Defendant, Mr. Elik became associated with The Gatalog, and its affiliated business, MAF Corp., a Florida corporation ("MAF"), which sells merchandise used in conjunction with The Gatalog's 3D gun files.

22. Defendant, Mr. Elik then became hostile and demanded that if DEFCAD did not remove certain files from its website, Gatalog would spread disinformation about DEFCAD.

23. He followed through on the threat. Thus, in May 2023, by agreement with the other defendants, his business partners, they began posting a "FEDCAD" meme — a graphic stating, "FRIENDS DON'T LET FRIENDS USE FEDCAD."

24. The ad perniciously tells potential DEFCAD customers that DEFCAD should be known as "FEDCAD" because its database has been "hacked" and "dumped" multiple times, implying customers' identities and other personal information would be known to federal authorities and anti-gun activists who might harass them. It also directs readers to "just say no" to FEDCAD and its "affiliate sites," which include Defense Distributed:




25. Defendants published and amplified this meme across Reddit, Twitter (X), Facebook, and other social media forums, always in commercial contexts that directed users to TheGatalog.com.

26. Defendant Celentano, by agreement with the Co-Defendants, repeatedly posted the "FEDCAD" meme on Reddit. His posts remain among the top search results for "DEFCAD" on

Google, where he warned potential customers not to use DEFCAD and directed them instead to The Gatalog.

27. Defendant Holladay, an affiliate of The Gatalog, embedded the “FEDCAD” meme in his own business’s “Quick Start Guide” for 3D printing firearms, publishing it on www.ctrlpew.com, in December 2023. He did so per agreement with the co-defendants.

28. In April 2024, the meme was pinned to the top of the r/fosscad Reddit forum — a community of over 100,000 people in the 3D gun marketplace — ensuring maximum exposure of the false message that DEFCAD was unsafe and compromised.

29. Defendant, Josh Stroke, through the persona “Zona”, funded through Larosiere’s MAF Corp., reposted “FEDCAD” meme across dozens of online channels in 2023 and 2024.

30. In the 3D gun marketplace it is well known that consumers shun publicity and government scrutiny. Thus, when such allegations are made falsely, they are malicious, i.e., seeking to destroy the seller-customer relationship.

31. Defendants targeted the meme at DEFCAD’s partners, including non-parties, Messrs. Barret Collier and Eric Goldhaber, who ceased working with the company after receiving the negative information.

32. Defendants’ false allegations of DEFCAD being hacked, its data dumped, and being hosted in illegal territories like Iran, have damaged DEFCAD, significantly decreasing DEFCAD’s revenue as a result of the false statements.

33. Moreover, Defendants continued and continue to make the same false allegations on the internet repeatedly since May 2023.

34. Each use of the internet to spread damaging disinformation violates the federal wire fraud statute, 18 U.S.C. § 1343, which prohibits "schemes to defraud" involving interstate wires, with "wires" including social media posts used in a scheme to defraud.

35. DEFCAD estimates Plaintiffs have lost at least $1,000,000 in sales as a direct result of the false statements Defendants have made online, detailed above.

36. DEFCAD has retained the undersigned counsel and agreed to pay it a reasonable fee to bring this action on its behalf.

## COUNT I- CONSPIRACY TO VIOLATE RICO

37. Plaintiffs reincorporate Paragraphs 1 to 36 above, as if fully restated herein.

38. Defendants' scheme to destroy DEFCAD, to which all the Defendants agreed to undertake, required an ongoing series of wire fraud violations.

39. The scheme is intended to damage Plaintiffs by taking away customers through false statements, and Defendants' wire fraud crimes have done so.

40. Each Defendant is a "person" as defined by 18 U.S.C. §1961(3).

41. Wire fraud is made a form of "racketeering activity" by RICO as defined by 18 U.S.C. § 1961(1)(B).

42. The ongoing wire fraud Defendants agreed to commit, and committed, constitutes a "pattern of racketeering activity" as defined by 18 U.S.C. § 1961(5).

43. This is both a "closed" pattern, as it has occurred over a lengthy period, and an "open" pattern, as it will not cease without judicial intervention.

44. Defendants' pattern of wire fraud has been committed through MAF, which Defendant, Mr. Larosiere, owns.

45. At all times, the other Defendants followed Defendant, Mr. Larosiere's direction in carrying out their roles in the scheme through this Florida corporation, which is a RICO enterprise as defined by 18 U.S.C. § 1961(4).

46. MAF affects interstate commerce through contracts with customers in various states to sell gun parts and through its internet activity.

47. Thus, by agreeing to the scheme to be carried out through the MAF enterprise, each Defendant conspired to violate 18 U.S.C. §1962(c), which makes it illegal for any person "employed by or associated with" an enterprise to commit a pattern of racketeering activity through the enterprise.

48. Thus, each Defendant has violated 18 U.S.C. §1962(d), which prohibits conspiracies to violate 1962(c).

WHEREFORE, Plaintiffs request a judgment be entered against Defendants, jointly and severally, for three times their damages, prejudgment interest, attorneys' fees, costs, and any other relief the Court deems proper pursuant to 18 U.S.C. §1964(c), and enter preliminary and permanent injunctions against Defendants barring them from continuing to make allegations against Plaintiffs to the effect any of them has been hacked and/or that its customers identities are being made public, pursuant to 18 U.S.C. §1964(a).

**COUNT II- VOLATION OF THE LANHAM ACT, (FALSE ADVERTISING)**

49. Plaintiffs incorporate Paragraphs 1-36 above, as if fully restated herein.

50. Defendants violated the Lanham Act by engaging in false or misleading representations of fact in commercial advertising and promotion, including but not limited to: (a) Branding DEFCAD as "FEDCAD" and asserting that DEFCAD's database had been "hacked and dumped multiple times"; (b) Falsely claiming that DEFCAD "doxxes" its customers by providing

personal information to federal authorities and anti-gun activists; (c) Alleging that DEFCAD colluded with gun-control groups and federal authorities; (d) Disseminating these statements through the "FEDCAD" meme and related graphics across social media platforms, including Reddit, Twitter (X), Facebook, and other online forums; and, (e) Publishing the meme in commercial contexts intended to divert customers from DEFCAD to The Gatalog and related enterprises.

51. These statements are false or misleading as to material facts and are likely to deceive, had the tendency to deceive, or actually deceived consumers, as alleged herein.

52. Defendants made these statements knowingly and with the intent to harm DEFCAD and divert business to their own competing enterprises, in part, because in the context of this market for products, the Defendants deception was likely to influence purchasing decisions.

53. Defendants' false advertising directly and proximately caused actual damages to Plaintiffs, including lost revenue, lost customers, lost goodwill, and reputational harm.

54. Defendants have been unjustly enriched by profits obtained as a result of their false advertising.

55. Plaintiffs have no adequate remedy at law, as the false and misleading statements continue to be disseminated online, causing ongoing harm to DEFCAD's business and reputation.

WHEREFORE, Plaintiffs request judgment against Defendants for the amount of their damages, disgorgement of their profits obtained from the violations of the Lanham Act detailed above, attorneys' fees and costs pursuant to 15 U.S.C. §1117. Plaintiffs also seek preliminary and permanent injunctions against Defendants to stop their false advertising pursuant to 15 U.S.C. §1116.

**COUNT III – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS UNDER FLORIDA LAW (*Against Solely the Florida Defendants*)**

56. Plaintiffs incorporate Paragraphs 1-36 above, as if fully set forth herein.

57. Defendants, Messrs. Larosiere and Holladay, are residents of Florida, and this Court is directed solely to those to Defendants.

58. Plaintiffs had advantageous business and contractual relationships with customers, vendors, and partners, including, but not limited to, customers and potential customers navigating or seeking to navigate the DEFCAD site, and Messrs. Barret Collier and Eric Goldhaber, who generated income for DEFCAD.

59. Defendants, Messrs. Larosiere and Holladay, had knowledge of these relationships. Defendants specifically targeted Plaintiffs' customers and business partners with the intent of disrupting and terminating those relationships.

60. Defendants, Messrs. Larosiere and Holladay, without justification or privilege, intentionally and unjustifiably interfered with these relationships by spreading false statements about DEFCAD, as described herein.

61. These Defendants' interference was calculated to and did in fact induce customers and partners to stop doing business with Plaintiffs and to divert business to the rival enterprise, The Gatalog and MAF Corp.

62. As a direct and proximate result of these Defendants' wrongful interference, Plaintiffs have suffered damages including lost sales, lost customer goodwill, and reputational harm in an amount exceeding $1 million.

WHEREFORE, Plaintiffs request judgment against Defendants for compensatory damages, costs, and any other and further relief the Court deems proper.

## COUNT IV – VIOLATION OF FLORIDA'S FALSE ADVERTISING STATUTE, FLA. STAT. § 817.41

63. Plaintiffs incorporate Paragraphs 1–36 above, as if fully set forth herein.

64. Defendants engaged in the dissemination of untrue, deceptive, and misleading advertisements to the public in Florida and elsewhere, including but not limited to:

a. Advertising that DEFCAD had been hacked and its customer data exposed;

b. Advertising that DEFCAD was known as "FEDCAD" and was unsafe for consumers to use; and,

c. Advertising that DEFCAD's website was hosted in Iran.

65. These advertisements were false and misleading representations of fact made in trade and commerce.

66. Defendants are competitors of Plaintiff, and made these advertisements with the intent to induce consumers to refrain from doing business with Plaintiffs and instead to divert business to Defendants' rival enterprise.

67. Consumers, including Plaintiffs' customers and partners, were in fact deceived or likely to be deceived by these advertisements, as shown by the cessation of business by partners such as Messrs. Collier and Goldhaber.

68. As a direct and proximate result of Defendants' false advertising, Plaintiffs have sustained actual damages, including loss of revenue, loss of goodwill, and reputational harm.

WHEREFORE, Plaintiffs request judgment against Defendants for damages, declaratory and injunctive relief prohibiting further false advertising, attorneys' fees and costs pursuant to Fla. Stat. § 817.41(6), and any other relief the Court deems proper.

Dated: September 25, 2025.

TAFT STETTINIUS & HOLLISTER LLP
525 Okeechobee Blvd., Suite 900
West Palm Beach, FL 33401
Tel. (561) 655-2250
Email: gweiss@taftlaw.com
*Attorneys for Plaintiffs*

By: *s/* GREGORY S. WEISS
GREGORY S. WEISS
Florida Bar No. 163430

And

FOSTER PC
Howard Foster
155 N. Wacker Dr., Suite 4250
Chicago, IL 60606
312-726-1600
hfoster@fosterpc.com
(*Pro hac vice application forthcoming*)

# TAB 13

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

Case No. 9:25-cv-81197-DMM

DEFENSE DISTRIBUTED, a Texas corporation; DD FOUNDATION, LLC, a Texas limited liability company; and, DEFCAD, INC., a Texas corporation,

Plaintiffs,

v.

JOHN ELIK, individually; MATTHEW LAROSIERE, individually; ALEXANDER HOLLADAY, individually; PETER CELENTANO, individually; JOSH KIEL STROKE, individually; and JOHN LETTMAN, individually,

Defendants.

______________________________________/

# AMENDED COMPLAINT

Plaintiffs, Defense Distributed; DD Foundation, LLC; and DEFCAD, Inc. (hereafter "DEFCAD"), file this Amended Complaint against Defendants, Messrs. John Elik, Matthew Larosiere, Alexander Holladay, Peter Celentano, Josh Kiel Stroke, and John Lettman, and allege:

## Introduction.

Defendants jointly operate a 3D gun file business known as The Gatalog,[1] through a website appearing at www.thegatalog.com, as a direct competitor of Plaintiff, DEFCAD. Defendants conspired to make false statements about DEFCAD, to deter DEFCAD's customers, and to steer them to Defendants' rival business, including that: (1) DEFCAD has been hacked and its customers' names "dumped" (publicized); (2) DEFCAD's customer names are public

[1] "A 3D-printed firearm is a firearm that is partially or primarily produced with a 3D printer." Wikipedia, (viewed September 24, 2025).

("doxxing"); and, (3) DEFCAD hosts its website in Iran. DEFCAD seeks damages pursuant to civil RICO, the Lanham Act and Florida law. In addition, because Defendants' false statements will not stop short of judicial intervention, DEFCAD seeks injunctive relief against Defendants.

**Parties, Jurisdiction & Venue.**

1. Plaintiff, Defense Distributed, is a Texas corporation with its principal place of business in Texas.

2. Plaintiff, DEFCAD, Inc., is a Texas corporation with its principal place of business in Texas.

3. Plaintiff, DD Foundation, LLC, is a Texas limited liability company whose members reside in Texas.

4. Defendant, Matthew Larosiere, is a citizen and resident of Florida.

5. Defendant, John Elik, is a citizen and resident of Illinois.

6. Defendant, Alexander Holladay, is a citizen and resident of Florida.

7. Defendant, Peter Celentano, is a citizen and resident of New York.

8. Defendant, Josh Kiel Stroke, is a citizen and resident of Arizona.

9. Defendant, John Lettman, is a citizen and resident of Pennsylvania.

10. The Court has subject matter jurisdiction of the RICO and Lanham Act claims as federal questions, 28 U.S.C. § 1331, and from RICO's civil damages provisions, 18 U.S.C. §§ 1964(c) and 1965(a).

11. This Court also has diversity jurisdiction under 28 U.S.C. § 1332(a), and the amount in controversy exceeds $75,000, exclusive of interest and costs, and Plaintiffs (citizens of Texas) are completely diverse from each Defendant (citizens of Florida, Illinois, New York, Arizona, and Pennsylvania).

12. This Court has supplemental personal jurisdiction over defendants for the Florida claims because they arise from the same nucleus of facts as the RICO and Lanham Act claims. 28 U.S.C. §1367.

13. Venue is proper here, pursuant to 18 U.S.C. §1965(a), because Defendant, Mr. Larosiere, resides in this District. Jurisdiction and venue are proper as to the other Defendants because they conspired with Mr. Larosiere to violate RICO, and can thus be served outside this District pursuant to §1965(b). Moreover, the "ends of justice" support adjudicating all members of this RICO conspiracy together in this action.

**Facts Common to All Counts.**

14. Plaintiffs share the income produced by DEFCAD's legal file sharing business, through online sales, mainly generated through their website: www.defcad.com.

15. Defendants are active in the 3D gun market and came together to challenge DEFCAD's position in this growing industry.

16. Defendants began their plot to damage DEFCAD in 2019 when Defendant, Mr. Elik, reached out to Mr. Cody Wilson, owner and principal of DEFCAD, to collaborate in firearms software and hardware development.

17. Defendant, Mr. Elik, visited DEFCAD's business facility in Austin, Texas.

18. DEFCAD and Defendant, Mr. Elik, reached an agreement in 2019, whereby DEFCAD would pay him a fee for each customer he brought to DEFCAD's website, which was then being prepared for launch.

19. In March 2020, DEFCAD launched www.defcad.com.

20. After March 2020, DEFCAD made monthly payments to Defendant, Mr. Elik, pursuant to the agreement until August 2022.

21. At that time, Defendant, Mr. Elik became associated with The Gatalog, and its affiliated business, MAF Corp., a Florida corporation ("MAF"), which sells merchandise used in conjunction with The Gatalog's 3D gun files.

22. Defendant, Mr. Elik then became hostile and demanded that if DEFCAD did not remove certain files from its website, Gatalog would spread disinformation about DEFCAD.

23. He followed through on the threat. Thus, in May 2023, by agreement with the other defendants, his business partners, they began posting a "FEDCAD" meme — a graphic stating, "FRIENDS DON'T LET FRIENDS USE FEDCAD."

24. The ad perniciously tells potential DEFCAD customers that DEFCAD should be known as "FEDCAD" because its database has been "hacked" and "dumped" multiple times, implying customers' identities and other personal information would be known to federal authorities and anti-gun activists who might harass them.:




25. Defendants published and amplified this meme across Reddit, Twitter (X), Facebook, and other social media forums, always in commercial contexts that directed users to TheGatalog.com.

26. Defendant Celentano, by agreement with the Co-Defendants, repeatedly posted the "FEDCAD" meme on Reddit. His posts remain among the top search results for "DEFCAD" on

Google, where he warned potential customers not to use DEFCAD and directed them instead to The Gatalog.

27. Defendant Holladay, an affiliate of The Gatalog, embedded the "FEDCAD" meme in his own business's "Quick Start Guide" for 3D printing firearms, publishing it on www.ctrlpew.com, in December 2023. It also directs readers to "just say no" to FEDCAD and its "affiliate sites," which include Defense Distributed. He did so per agreement with the co-defendants.

28. In April 2024, the meme was pinned to the top of the r/fosscad Reddit forum — a community of over 100,000 people in the 3D gun marketplace — ensuring maximum exposure of the false message that DEFCAD was unsafe and compromised.

29. Defendant, Josh Stroke, through the persona "Zona", funded through Larosiere's MAF Corp., reposted the "FEDCAD" meme across dozens of online channels in 2023 and 2024.

30. In the 3D gun marketplace it is well known that consumers shun publicity and government scrutiny. Thus, when such allegations are made falsely, they are malicious, i.e., seeking to destroy the seller-customer relationship.

31. Defendants targeted the meme at DEFCAD's partners, including non-parties, Messrs. Barret Collier and Eric Goldhaber, who ceased working with the company after receiving the negative information.

32. Defendants' false allegations of DEFCAD being hacked, its data dumped, and being hosted in illegal territories like Iran, have damaged DEFCAD, significantly decreasing DEFCAD's revenue as a result of the false statements.

33. Moreover, Defendants continued and continue to make the same false allegations on the internet repeatedly since May 2023.

34. Each use of the internet to spread damaging disinformation violates the federal wire fraud statute, 18 U.S.C. § 1343, which prohibits "schemes to defraud" involving interstate wires, with "wires" including social media posts used in a scheme to defraud.

35. DEFCAD estimates Plaintiffs have lost at least $1,000,000 in sales as a direct result of the false statements Defendants have made online, detailed above.

36. DEFCAD has retained the undersigned counsel and agreed to pay it a reasonable fee to bring this action on its behalf.

**COUNT I- CONSPIRACY TO VIOLATE RICO**

37. Plaintiffs reincorporate Paragraphs 1 to 36 above, as if fully restated herein.

38. Defendants' scheme to destroy DEFCAD, to which all the Defendants agreed to undertake, required an ongoing series of wire fraud violations.

39. The scheme is intended to damage Plaintiffs by taking away customers through false statements, and Defendants' wire fraud crimes have done so.

40. Each Defendant is a "person" as defined by 18 U.S.C. §1961(3).

41. Wire fraud is made a form of "racketeering activity" by RICO as defined by 18 U.S.C. § 1961(1)(B).

42. The ongoing wire fraud Defendants agreed to commit, and committed, constitutes a "pattern of racketeering activity" as defined by 18 U.S.C. § 1961(5).

43. This is both a "closed" pattern, as it has occurred over a lengthy period, and an "open" pattern, as it will not cease without judicial intervention.

44. Defendants' pattern of wire fraud has been committed through MAF, which Defendant, Mr. Larosiere, owns.

45. At all times, the other Defendants followed Defendant, Mr. Larosiere's direction in carrying out their roles in the scheme through this Florida corporation, which is a RICO enterprise as defined by 18 U.S.C. § 1961(4).

46. MAF affects interstate commerce through contracts with customers in various states to sell gun parts and through its internet activity.

47. Thus, by agreeing to the scheme to be carried out through the MAF enterprise, each Defendant conspired to violate 18 U.S.C. §1962(c), which makes it illegal for any person "employed by or associated with" an enterprise to commit a pattern of racketeering activity through the enterprise.

48. Thus, each Defendant has violated 18 U.S.C. §1962(d), which prohibits conspiracies to violate 1962(c).

WHEREFORE, Plaintiffs request a judgment be entered against Defendants, jointly and severally, for three times their damages, prejudgment interest, attorneys' fees, costs, and any other relief the Court deems proper pursuant to 18 U.S.C. §1964(c), and enter preliminary and permanent injunctions against Defendants barring them from continuing to make allegations against Plaintiffs to the effect any of them has been hacked and/or that its customers identities are being made public, pursuant to 18 U.S.C. §1964(a).

**COUNT II- VOLATION OF THE LANHAM ACT, (FALSE ADVERTISING)**

49. Plaintiffs incorporate Paragraphs 1-36 above, as if fully restated herein.

50. Defendants violated the Lanham Act by engaging in false or misleading representations of fact in commercial advertising and promotion, including but not limited to: (a) Branding DEFCAD as "FEDCAD" and asserting that DEFCAD's database had been "hacked and dumped multiple times"; (b) Falsely claiming that DEFCAD "doxxes" its customers by providing

personal information to federal authorities and anti-gun activists; (c) Alleging that DEFCAD colluded with gun-control groups and federal authorities; (d) Disseminating these statements through the "FEDCAD" meme and related graphics across social media platforms, including Reddit, Twitter (X), Facebook, and other online forums; and, (e) Publishing the meme in commercial contexts intended to divert customers from DEFCAD to The Gatalog and related enterprises.

51. These statements are false or misleading as to material facts and are likely to deceive, had the tendency to deceive, or actually deceived consumers, as alleged herein.

52. Defendants made these statements knowingly and with the intent to harm DEFCAD and divert business to their own competing enterprises, in part, because in the context of this market for products, the Defendants deception was likely to influence purchasing decisions.

53. Defendants' false advertising directly and proximately caused actual damages to Plaintiffs, including lost revenue, lost customers, lost goodwill, and reputational harm.

54. Defendants have been unjustly enriched by profits obtained as a result of their false advertising.

55. Plaintiffs have no adequate remedy at law, as the false and misleading statements continue to be disseminated online, causing ongoing harm to DEFCAD's business.

WHEREFORE, Plaintiffs request judgment against Defendants for the amount of their damages, disgorgement of their profits obtained from the violations of the Lanham Act detailed above, attorneys' fees and costs pursuant to 15 U.S.C. §1117. Plaintiffs also seek preliminary and permanent injunctions against Defendants to stop their false advertising pursuant to 15 U.S.C. §1116.

**COUNT III – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS UNDER FLORIDA LAW (*Against Solely the Florida Defendants)***

56. Plaintiffs incorporate Paragraphs 1-36 above, as if fully set forth herein.

57. Defendants, Messrs. Larosiere and Holladay, are residents of Florida, and this Court is directed solely to those to Defendants.

58. Plaintiffs had advantageous business and contractual relationships with customers, vendors, and partners, including, but not limited to: customers and potential customers navigating or seeking to navigate the DEFCAD site; and creators who host files and designed on the DEFCAD site, like Messrs. Barret Collier and Eric Goldhaber, who hosted their files and designs on the DEFCAD site and generated income for DEFCAD when customers purchased their filed and designs.

59. Defendants, Messrs. Larosiere and Holladay, had knowledge of these relationships by virtue of their own participation in the same 3D-gun-file marketplace and through prior dealings and communications with DEFCAD and its representatives. Defendants specifically targeted Plaintiffs' customers and business partners with the intent of disrupting and terminating those relationships.

60. Defendant Larosiere, acting through his Florida corporation MAF Corp., and Defendant Holladay, acting through his affiliate website ctrlpew.com, intentionally and without justification interfered with these relationships by publishing and amplifying the false "FEDCAD" meme and related statements that (a) DEFCAD had been "hacked and dumped multiple times," (b) DEFCAD "doxxed" its customers, and (c) DEFCAD's servers were hosted in Iran.

61. These false statements were made in commercial contexts, including Reddit, Twitter (X), and Florida-based online forums, with the intent and foreseeable effect of deterring

DEFCAD's customers and partners from doing business with Plaintiffs and redirecting them to The Gatalog and MAF Corp.

62. Interviews with former customers of the DEFCAD site confirmed multiple customers specifically stopped doing business with DEFCAD through its site because of the FEDCAD meme and related misinformation propagated by Defendants.

63. In addition, Messrs. Collier and Goldhaber stopped hosting their files and designs on the DEFCAD site because of the FEDCAD meme and related misinformation propagated by Defendants.

64. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered identifiable losses, including the termination of business relationships with Collier and Goldhaber, who refuse to host their designs and files on Plaintiffs' site due to the Defendants' misinformation campaign. Plaintiffs have also suffered diminished customer goodwill, lost sales and profit, and substantial reputational and financial harm in an amount exceeding $1 million.

WHEREFORE, Plaintiffs request judgment against Defendants for compensatory damages, costs, and any other and further relief the Court deems proper.

October 14, 2025.

TAFT STETTINIUS & HOLLISTER LLP
525 Okeechobee Blvd., Suite 900
West Palm Beach, FL 33401
Tel. (561) 655-2250
Email: gweiss@taftlaw.com
*Attorneys for Plaintiffs*

By: s/ GREGORY S. WEISS
GREGORY S. WEISS
Florida Bar No. 163430

And

FOSTER PC
Howard Foster
155 N. Wacker Dr., Suite 4250
Chicago, IL 60606
312-726-1600
hfoster@fosterpc.com
(*Pro hac vice application forthcoming*)

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically.

*s/* GREGORY S. WEISS
GREGORY S. WEISS, ESQ.
Florida Bar No. 163430

**SERVICE LIST**:

**Matthew Larosiere, Esq.**
Law Offices of Matthew Larosiere
6964 Houlton Circle
Lake Worth, FL 33467
Tel. (561) 452-7575
Larosiere@gmail.com
*Attorney for Defendants, John Elik, Alexander Holladay, Josh Kiel Stroke and John Lettman*

**Zachary Z. Zermay, Esq.**
Zermay Law, P.A.
1200 Fourth Street, #1102
Key West, FL 33040
Tel. (305) 767-3529
*Attorney for Defendant, Matthew Larosiere*

# TAB 32

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE №: 9:25-cv-81197

DEFENSE DISTRIBUTED, a Texas corporation; DD FOUNDATION, LLC, a Texas limited liability company; and, DEFCAD, INC., a Texas corporation,

*Plaintiffs*,

v.

JOHN ELIK; MATTHEW LAROSIERE; ALEXANDER HOLLADAY; PETER CELENTANO; JOSH KIEL STROKE;

and JOHN LETTMAN,

*Defendants*.

_____________________________________/

**DEFENDANTS' JOINT MOTION TO DISMISS THE COMPLAINT, AND IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**

## TABLE OF CONTENTS

**DEFENDANTS' JOINT MOTION TO DISMISS THE COMPLAINT, AND IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT** ..... i

**I. THIS COURT LACKS PERSONAL JURISDICTION OVER ELIK, STROKE, AND LETTMAN** ..... 2

A. There is no personal jurisdiction under RICO ..... 3

B. There is no personal jurisdiction for the remaining claims ..... 4

**II. PLAINTIFFS HAVE NOT STATED A SINGLE CLAIM UPON WHICH RELEIF CAN BE GRANTED** ..... 5

A. The "Civil RICO" Claims ..... 5

B. The "Lanham Act" Claim ..... 8

C. The Florida Tortious Interference Claim ..... 9

**III. THE CLAIMS ARE BARRED BY THE SINGLE ACTION RULE AND STATUTE OF LIMITATIONS** ..... 10

**IV. THE COMPLAINT IS AN IMPERMISSIBLE SHOTGUN PLEADING** ..... 13

A, The Complaint is a type 1 shotgun pleading ..... 15

B. The Complaint is a type 2 shotgun pleading ..... 16

C. The Complaint is a type 4 shotgun pleading ..... 17

**V. IN THE ALTERNATIVE, IF ANY CLAIMS SURVIVE, THEY MUST BE MORE DEFINITELY STATED** ..... 17

**VI. CONCLUSION** ..... 18

**CERTIFICATE OF SERVICE** ..... 19

Defendants John Elik, Matthew Larosiere, Alexander Holladay, Josh Kiel Stroke, and John Lettman respectfully move to dismiss the Amended Complaint. As explained below, the pleading suffers from fundamental defects that preclude any of the claims from proceeding against any Defendant. This motion is brought under Rules 12(b)(2), 12(b)(6), and 12(e).

**INTRODUCTION AND SUMMARY OF ARGUMENTS**

The Amended Complaint attempts to transform internet speech into federal racketeering, federal false-advertising, and state tort liability. Plaintiffs' theory appears to be that the mere posting of an image and the discussion of Plaintiffs' business practices on public forums, is sufficient to constitute wire fraud, Lanham Act advertising, and actionable interference. The premise is untenable as a matter of law. The pleading fails to establish personal jurisdiction against several out-of-state defendants, fails to meet the most basic requirements of Rule 8 and Rule 9(b), and is barred by Florida's §770 doctrine governing defamation-equivalent claims.

Plaintiffs attempt to base jurisdiction on nothing more than the allegation that online statements were made somewhere on the internet. Plaintiffs attempt to avoid this defect by invoking RICO's nationwide service provision, but a jurisdictional theory premised on RICO necessarily fails when the RICO claim is facially deficient. As explained in detail below, the RICO allegations do not come close to stating a plausible claim: they do not plead predicate acts with the particularity required by Rule 9(b); they do not plead a distinct enterprise; they do not plead continuity; they do not plead a cognizable RICO injury to business or property; and they do not plead proximate causation consistent with *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451

(2006). Because Plaintiffs fail to allege a valid RICO claim, the nationwide service provision of §1965(b) cannot be invoked to create jurisdiction.

The defects do not end with jurisdiction. Even if jurisdiction existed, every substantive claim in the Amended Complaint would fail on its own terms. The RICO claim is an archetypal misuse of the statute. The Lanham Act claim fares no better: nothing alleged constitutes "commercial advertising or promotion," nor do Plaintiffs plausibly allege competition, material deception, or any injury cognizable under §1125(a). The tortious interference claim is devoid of factual content, naming two individuals without any meaningful description of the relationship, any act of interference, or any causal connection to Defendants. To the extent it is based on allegedly false statements, it is barred by Florida's Single Action Rule, by §770.01's notice requirement, and by §770.07.

Finally, the pleading is a textbook shotgun complaint. It indiscriminately lumps multiple defendants together, incorporates every preceding allegation into every count, and fails to identify which defendant supposedly committed which act. For all of these reasons, the Complaint must be dismissed.

## ARGUMENT

### I. THIS COURT LACKS PERSONAL JURISDICTION OVER ELIK, STROKE, AND LETTMAN

When assessing a dismissal for lack of personal jurisdiction, Courts "first determine whether the applicable statute potentially confers jurisdiction over the defendant." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 199 F.3d 935, 942 (11th Cir. 1997). Jurisdiction over a non-resident defendant may be based upon

a federal statute or a state long-arm statute. If a basis exists for granting jurisdiction, the court must then "determine whether the exercise of jurisdiction comports with due process." *Id.*

Supporting affidavits attached to this motion confirm that the nonresident defendants do not live in the State of Florida, and do not conduct any business in the State of Florida.

Plaintiffs assert claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), the Lanham Act, and other claims. The Eleventh Circuit has held that a potential statutory basis for jurisdiction may exist under RICO because it contains a nationwide service-of-process provision. *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 847-48 (11th Cir. 1988). The other asserted statutes lack such provisions, and thus their jurisdictional analysis must be based on the state's long-arm statute. On this, the jurisdictional analysis is different for the RICO claim and all other claims.

A. <u>There is no personal jurisdiction under RICO</u>

Even where the eleventh circuit has recognized a potential statutory basis for personal jurisdiction under RICO, Plaintiffs can only take advantage of it if its "asserted federal claim is not wholly immaterial or insubstantial." *Republic of Panama*, 119 F.3d at 941-2. "In other words, whether a basis exists for exercising personal jurisdiction under RICO depends on whether [Plaintiffs] ha[ve] stated a 'colorable' RICO claim. If [Plaintiffs] ha[ve] not stated a colorable claim, we do not address the applicable due-process requirements." *Courbain v. Scott*, 596 Fed.Appx. 729 at 732 (11th Cir. 2014).

Similar to the complaint in *Courbain*, Plaintiffs here "make[] broad allegations" but "do[] not connect these allegations to any predicate act as defined by 18 U.S.C. §1961." *Id.* at 733. The deficiencies in Plaintiffs' pleading are more thoroughly argued *infra*, but no jurisdiction exists under RICO because Plaintiffs did not state a "colorable" RICO claim, and even if it did, personal jurisdiction would not comport with due process, for the same reasons the other claims do not.

B. <u>There is no personal jurisdiction for the remaining claims</u>

Because the remaining claims are not based on laws containing a nationwide service-of-process provision, we look to the long-arm statute of Florida to determine whether it authorizes exercising jurisdiction over the defendants. *See Delong Equip. Co.*, 840 F.2d at 847–48; Fed.R.Civ.P. 4(e). Under the Florida long-arm statute, specific personal jurisdiction exists if, among other things, an individual commits a tortious act within Florida, an individual carries on business within the state, or the individual injures persons within Florida due to an act or omission outside Florida if, at the time of injury, (1) the defendant was engaged in solicitation or service activities within Florida or his services were used within Florida in the ordinary course of business. Fla. Stat. § 48.193(1)(a). The statute also provides for general jurisdiction over a defendant "who is engaged in substantial and not isolated activity" in Florida. Id. § 48.193(2). Florida's Supreme Court has held that economic injury, unaccompanied by physical injury or property damage, is insufficient to subject a non-resident defendant to personal jurisdiction under § 48.193(1)(a) 6. *See Aetna Life & Cas. Co. v. Therm–O–Disc, Inc.*, 511 So.2d 992, 994 (Fla.1987) (concerning Fla. Stat. § 48.193(1)(f), which later became § 48.193(1)(a) 6).

Plaintiffs have made no jurisdictional allegations against the nonresident Defendants whatsoever. There are no factual allegations underlying any relationship to the forum state, likely because, as shown by the attached affidavits, no jurisdictionally relevant connection to this state exists for any of the nonresident Defendants.

## II. PLAINTIFFS HAVE NOT STATED A SINGLE CLAIM UPON WHICH RELEIF CAN BE GRANTED

### A. The "Civil RICO" Claims

Plaintiffs' RICO count is the centerpiece of the Amended Complaint and the jurisdictional anchor upon which Plaintiffs attempt to premise their roping of individuals all over the country to a faraway forum. It therefore demands close scrutiny. Plaintiffs have not pled a single RICO element. The theory advanced—a kind of defamation-by-RICO—has been rejected by every circuit to consider similar attempts. The claim not only fails Rule 8, but independently fails Rule 9(b), fails the substantive requirements of §§ 1962(c) and (d), and fails to allege any cognizable RICO injury or proximate causation. At its core, Plaintiffs' RICO case depends upon treating online criticism as "wire fraud," and treating a nebulous reputational harm as a federal racketeering injury. That is not the law.

Wire fraud, as it could pertain to a RICO claim, covers "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals,

pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." 18 U.S.C. § 1343. In this context, the scheme must relate to actually taking money or property from the Plaintiff. *Kousisis v. United States* 605 U.S. 114 (2025). As with many of Plaintiff's claims, circumstances constituting fraud must be stated with particularity. Fed. R. Civ. P. 9(b).

Count I alleges a civil RICO conspiracy under 18 U.S.C. § 1962(d), predicated on alleged violations of § 1962(c). To do so, Plaintiffs must allege that Defendants conducted or participated in the conduct of an enterprise's affairs through a pattern of racketeering activity that caused injury to business or property. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Predicate acts of racketeering must be specifically alleged, and where the predicate is wire fraud, Rule 9(b) requires particularity as to the "who, what, when, where, and how." *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316–17 (11th Cir. 2007).

Plaintiffs' pleading does none of this. Instead, it simply declares that "[e]ach use of the internet to spread damaging disinformation violates the federal wire fraud statute" (Compl. ¶34), and that Defendants' alleged meme-posting therefore constitutes a "pattern of racketeering activity" somehow carried out through non-party MAF. (Compl. ¶¶37–48). This is not a good-faith attempt to plead racketeering.

First, no predicate act is plausibly alleged. Online memes are not "schemes to defraud" under 18 U.S.C. § 1343.

Second, the enterprise allegations are facially defective. Conclusory invocations of an "enterprise" cannot substitute for facts showing a distinct legal entity or association-in-fact. *Pelletier*, 921 F.2d 1518–22. The Amended Complaint retains the same bare enterprise allegation  that Larosiere "acting through" MAF is the enterprise  without any structure, hierarchy, roles, or acts attributable to an "enterprise" distinct from the alleged actors. See (Am. Compl. ¶¶ 46–48).

Third, there is no "pattern of racketeering activity." Plaintiffs rely on episodic internet posts in 2023 and 2024 (Am. Compl. ¶¶23–35). That does not satisfy either closed-ended continuity (no substantial duration) or open-ended continuity (no threat of future racketeering). *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357–59 (11th Cir. 2018). Allegations that Defendants mocked Plaintiffs online—even if repeated do not transform criticism into organized crime. Plaintiffs' mere recitation, without any factual allegations, that the supposed pattern is "both closed and open" does not cure the defect. (Am. Compl. ¶ 43.)

Fourth, the claim is an improper attempt to repackage reputational and business grievances as RICO. In *Freites*, the Court dismissed nearly identical RICO allegations where "Defendants' primary means of carrying out the conspiracy was through 'defamation' which involved 'Defendants repeatedly disseminat[ing] false statements about Plaintiffs via emails, social media postings, and online videos.'" 2025 WL 1425491, at *6. The same defect is present here: Plaintiffs allege reputational injury and customer loss from public statements, not property loss caused by criminal fraud.

Finally, the conspiracy claim under § 1962(d) fails because there is no substantive violation or agreement to commit a substantive violation alleged *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1068 (11th Cir. 2007) ("[A]bsent any valid predicate acts, [the plaintiff] cannot state a claim for RICO violations.")

RICO requires the existence of an "enterprise," which must be distinct from the "person" alleged to have conducted its affairs and must exhibit structural features including a purpose, relationships among associates, and longevity. *Boyle v. United States*, 556 U.S. 938, 946 (2009). Conclusory assertions that Defendants "acted through" an entity do not satisfy this requirement.

B. The "Lanham Act" Claim

Count II alleges false advertising under § 43(a)(1)(B) of the Lanham Act. To do so, Plaintiffs must allege that Defendants made false or misleading statements of fact in "commercial advertising or promotion," that such statements actually deceived or had the tendency to deceive consumers in a material way, and that the deception caused injury. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002). The Lanham Act does not federalize defamation; it is aimed at false claims made in commercial advertising. The Complaint falls far short. Plaintiffs allege that, in online posts, Defendants branded DEFCAD as "FEDCAD," accused it of being "hacked and dumped," and claimed it "doxxes" customers and colludes with authorities. (Am. Compl. ¶¶49–55). That is not a Lanham Act case.

First, the challenged speech is not "commercial advertising or promotion." A meme posted on the internet is not an advertising campaign. Not only are the posts non-commercial, nothing beyond the *ipse dixit* assertions of Plaintiffs credibly allege

that any party is actually in competition or even the same industry as any other party, hence the vague way Plaintiffs refer to the imagined "3D gun market" they claim Defendants "are active" in. (Doc. 13 ¶ 15). Defendants cannot comprehend how Plaintiffs "compete" with them.

Second, the alleged statements are criticism and opinion. *See Boule v. Hutton*, 328 F.3d 84, 90–91 (2d Cir. 2003) (Lanham Act does not cover reputational harm caused by noncommercial commentary).

Third, the Complaint alleges no facts showing consumer deception or how the nonexistent deception was material. Unburdened by evidentiary support, Plaintiffs recite that consumers "shun publicity" and that certain partners ceased working with them, but they allege no facts establishing that consumers were deceived, or materially influenced.

C. The Florida Tortious Interference Claim

Under Florida law, a claim for tortious interference requires: (1) the existence of a business relationship under which the plaintiff has legal rights; (2) the defendant's knowledge of that relationship; (3) the defendant's intentional and unjustified interference with it; and (4) damages. The Amended Complaint has none of this.

Plaintiffs' allegations in ¶¶56–62 fail every element. They identify no legally protectable business relationships, only vaguely alluding to "customers and potential customers" and two non-party individuals. (Compl. ¶58). Plaintiffs then assert in

conclusory fashion that "the Florida Defendants[1]" interfered by "spreading false statements" (Compl. ¶60). But the Complaint pleads no act of any Floridian tied to any particular customer, contract, or transaction. Instead, it merely recycles generalized, group-pled allegations. That is not tortious interference.

Plaintiffs' reliance on group labels and speculation cannot substitute for concrete allegations that any Floridian individually interfered with an identifiable relationship. The complaint identifies no agreement, document, message, or transaction involving Collier or Goldhaber at all.

## III. THE CLAIMS ARE BARRED BY THE SINGLE ACTION RULE AND STATUTE OF LIMITATIONS

Very analogous to *Freites*, all four of Plaintiffs' claims are premised on the idea that the "Fedcad meme" was false. As articulated in Defendant's Rule 11 Motion, Plaintiffs admit Defendants are authors and thus eligible for §770 protection.

Florida's Legislature has long recognized the need to cabin defamation-style litigation. § 770 imposes clear statutory prerequisites and limitations on such suits: (1) § 770.01 requires pre-suit notice to the defendant at least five days before filing; (2) § 770.05 bars multiple suits arising from the same publication and limits to a single venue; and (3) § 770.07 provides that the cause of action accrues upon first publication.

### A. Plaintiffs Failed to Provide §770.01 Notice

[1] *But see* (Doc. 31-1 at 2) (purporting that the Complaint alleges Florida Tortious interference against the New York-based Celentano.

Plaintiffs admit that Defendants are authors and therefore media defendants. Plaintiffs have not alleged, and cannot show, compliance with § 770.01's notice requirement.

B. The Single Action Rule Bars These Claims

All of Plaintiffs' claims are predicated on allegedly false statements published online. (Compl. ¶¶56–68). These are defamation-style allegations, and **stem from actual defamation allegations previously brought and abandoned,** regardless of how Plaintiffs label them. As the *Frietes* court explained in a similar situation:

> In Florida, a single publication gives rise to a single cause of action. This is what is known as the Single Publication/Single Action Rule, and it precludes a plaintiff from asserting multiple causes of action when they arise from the same publication [or publications] upon which plaintiff's defamation claim is based. The rule is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm. Moreover, the underpinnings of the single-action rule make clear that it does not matter whether the defamation claim fails, succeeds, or is not brought at all. **If the underlying facts are premised on false and defamatory publications, the plaintiff is bound by the single action rule and cannot avoid the limitation by engaging in semantic exercises or strategic gamesmanship by asserting various additional claims**.

*Freites v. Medina*, No. 25-CV-20465, 2025 WL 1425491, at *5 (S.D. Fla. May 16, 2025), appeal dismissed sub nom. *Freites C. v. Medina*, No. 25-12067-E, 2025 WL 2638566 (11th Cir. Aug. 27, 2025). As *Freites* makes clear, it does not matter whether their claim is styled on defamation. What matters is that "the underlying facts are premised on false and defamatory publications." *Id.*

The defamation-equivalency is manifest from a quick look at Plaintiffs' abandoned Middle District litigation. In November of 2024, Plaintiff Defense Distributed filed a claim under the Lanham Act, Digital Millennium Copyright Act,

for Florida Tortious Interference, for Florida Trade Libel, and the Florida Deceptive and Unfair Trade Practices Act, all relating to the same publications. *Larosiere v. Wilson*, 6:24-cv-1629 (M.D. Fla. ___) (Doc. 29).

There, speaking of the same "FEDCAD meme," Plaintiffs stated that **the very same** Defendants "regularly used interstate wire communications, including social media, email, and messaging platforms, to disseminate **false and defamatory** statements about Defense Distributed…all with the intent to deceive and defraud." (Larosiere v. Wilson, Doc. 29 ¶ 154) (emphasis added). *Cf.* (Am. Compl. ¶ 34) "Each use of the internet to spread **damaging disinformation** violates the federal wire fraud statute" (emphasis added). This is the exact conduct *Gannett* foreclosed. *Gannett Co., Inc. v. Anderson*, 947 So. 2d 1, 8–9 (Fla. 1st DCA 2006) (plaintiff could not avoid defamation statute of limitations by amending claim from describing publication as "false and defamatory" to one "worded in such a way to portray the plaintiff in a false light." (cleaned up).

In so far as showing that all of the claims are based on the same publication, the Plaintiffs tell us this, as the Complaint's counts cite all the same allegations. (Doc. 13 at ¶ 37, 49, 56). This makes application of the single action rule obvious.

§ 770.05, Fla. Stat. has been understood to limit defamation-style cases "to only **one** suit in **one** chosen venue to avoid multiple suits upon the one cause of action." *Perdue v. Miami Herald Pub. Co.* 291 So.2d 604, 606 (Fla.1974) (emphasis added). In other words, to prevent Plaintiff's exact conduct.

What's more, the single action rule forbids Plaintiff's slipshod attempts to contort their defamation claim into three separate counts, each "explicitly speak[ing] about…'false accusations,' and damaging reputations.'" *Frietes* at *5. *Frietes* concerned postings to Twitter and YouTube, like the instant case. All four causes of action refer to the same publications. Thus, they cannot be brought consistent with the Single Action rule.

C. The Claims Are Outside The Statute of Limitations Under §770.07

§ 770.07's accrual rule means that any claim sounding in libel, slander, or defamation, has the statute of limitations run from the date of first publication. Plaintiff's theory of liability is based on statements first published as early as 2023. (Compl. ¶¶23–35). May 15, 2023, was 2 years, 4 months, and 10 days before the date of filing. This is beyond the two years afforded by § 95.11, Fla. Stat. Under §770.07, all causes of action stemming from the publication accrued at first publication; it cannot be revived by repetition.

Additionally, Plaintiffs, Texas companies, necessarily allege damages in Texas by bringing RICO claims. Florida's borrowing statute provides that "[w]hen the cause of action arose in another state or territory of the United States, or in a foreign country, and its laws forbid the maintenance of the action because of lapse of time, no action shall be maintained in this state." § 95.10, Fla. Stat. *Middleton v. Hollywood Reporter, LLC*, 686 F. Supp. 3d 1272, 1275 (S.D. Fla. 2023). Texas' statute of limitations for libel is one year, and thus all claims stemming from the publication are time barred under either reading.

**IV.THE COMPLAINT IS AN IMPERMISSIBLE SHOTGUN PLEADING**

Defendants move to dismiss the complaint in its entirety under 12(b)(6) because it is an impermissible shotgun pleading. A shotgun pleading is a complaint that violates either Fed. R. Civ. P. 8(a)(2), 10(b), or both. *Weiland v. Palm Beach Cnty. Sheriff's Off.* 792 F.3d 1313, 1320 (11th Cir. 2015). 8(a)(2) requires the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10(b) mandates a party "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

These rules ensure a pleader "present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading", as well as for the benefit of the court charged with determining "which facts support which claims" and "whether the plaintiff has stated any claims upon which relief can be granted." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021). Because shotgun pleadings are "calculated to confuse the 'enemy,' and the court," they fail to state a claim and are often disposed of on a 12(b)(6) motion. *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520 at 1544 n.14 (Tjoflat, J., dissenting).

The Eleventh Circuit has "identified four...categories of shotgun pleadings." *Weiland*, 792 F.3d at 1321. These consist of 1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before it and the last count to be a combination of the entire complaint"; 2) a complaint "replate with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; 3) a

complaint which fails to separate each cause of action or claim for relief into a different count; and 4) a complaint that "asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.". *Barmapov*, 986 F.3d 1325 (quoting *Weiland*, 792 F.3d at 1321). The complaint fits into three of the four categories of prohibited shotgun pleading.

A, <u>The Complaint is a type 1 shotgun pleading</u>

A Type 1 shotgun pleading is one that "contains multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before it and the last count to be a combination of the entire complaint." *Id, see also Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 650 n. 22 (11th Cir.2010) (Tjoflat, J., concurring in the appeal, No. 07–13225, and dissenting in the cross-appeal, No. 07–13477) (finding "a typical 'shotgun' pleading" where "each count incorporated by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged were not material to the claim, or cause of action, appearing in a count's heading"); *PVC Windoors, Inc. v. Babbitbay Beach Constr.*, N.V., 598 F.3d 802, 806 & n. 4 (11th Cir.2010) (finding a "typical shotgun pleading" where the last of a complaint's ten counts "amounts to an amalgamation of all counts"); *Weissman v. Nat'l Ass'n of Sec. Dealers, Inc.*, 500 F.3d 1293, 1311 (11th Cir.2007) (en banc) (Tjoflat, J., dissenting) (stating that the practice of incorporating each count's allegations into successive counts is the "cardinal sin of 'shotgun' pleading").

The typical Type 1 shotgun pleading is deficient because each count includes irrelevant factual allegations and legal conclusions, calculated to confuse opposing counsel and the court, rather than articulate a basis of relief. Most commonly, a Type 1 shotgun pleading commits this "cardinal sin" by incorporating by reference all of a pleading's prior paragraphs until the last count comprises the entire lawsuit. *Weiland*, 792 F.3d at 1321.

The instant complaint commits the same sin through each count including all of the same paragraphs. (Doc. 13 at ¶ 37, 49, 56).

B. <u>The Complaint is a type 2 shotgun pleading</u>

A type 2 shotgun pleading, the "next most common type…is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *See, e.g., Chudasama v. Mazda Motor Corp*., 123 F.3d 1353, 1359 n. 9 (11th Cir.1997) (finding a shotgun pleading where "a reader of the complaint must speculate as to which factual allegations pertain to which count"); *Cramer v. Florida*, 117 F.3d 1258 at 1261 (11th Cir. 1997) (describing the complaint at issue as "a rambling 'shotgun' pleading that is so disorganized and ambiguous that it is almost impossible to discern precisely what it is that these appellants are claiming"); *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 164 (11th Cir.1997) (describing a complaint that "offered vague and conclusory factual allegations in an effort to support a multiplicity of discrimination claims leveled against 15 defendants" as a "prototypical 'shotgun complaint'"); Anderson v. Dist Bd. Of Trs. Of Cent. Fla. Mty. Coll., 77 F.3d 364 at 366 (11th Cir. 1996)

(complaint was "perfect example of 'shotgun' pleading in that it [was] virtually impossible to know which allegations of fact [were] intended to support which claim(s) for relief") (internal citation omitted).

The instant complaint is a Type 2 shotgun pleading in that its vague factual allegations are impossible to connect to any specific purported actions of any specific Defendant, and makes no distinction as to which alleged Defendant is alleged to have committed what specific acts, and what acts are relevant to what causes of action.

C. <u>The Complaint is a type 4 shotgun pleading</u>

The fourth type of shotgun pleading is one which commits "the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d 1323. Of note, the complaint says *nothing* about Lettman save for his state of residence, and identifies not a single independent action of Larosiere, exclusively "lumping" him with Holladay and non-party MAF Corp. Clearly, even Plaintiffs are confused by their own pleading, as they purport to have stated a claim for tortious interference under Florida law against the New York-based Celentano. (Doc. 31-1 at 2).

In sum. each of the Counts is asserted against "Defendants." As such, Defendants cannot reasonably be required to respond.

## V. IN THE ALTERNATIVE, IF ANY CLAIMS SURVIVE, THEY MUST BE MORE DEFINITELY STATED

For all of the reasons explained *supra*, the thirteen-page strike suit is so vague and ambiguous that Defendants cannot reasonably prepare a response to it. It should

be dismissed in its entirety, but if it is not, it must be more definitely stated. Fed. Rul. Civ. P. 12(e).

**VI.CONCLUSION**

The Complaint is due to be dismissed, and because Plaintiffs have brought these same claims in a different venue, they should be dismissed with prejudice.

Respectfully submitted,

DATED: December 15, 2025

_/s/ Gary C. De Pury_
Gary C. De Pury
Florida Bar No: 126588
Law Offices of Gary De Pury, P.A.
21035 Leonard Road
Lutz, Florida 33558
Tel: (813) 607-6404
Email: Gary@DePury.com
*Lead Counsel for Defendant Alex Holladay*

_/s/Matthew Larosiere_
Matthew Larosiere, Esq.
Fla. Bar. No. 1005581
The Law Offices of Matthew Larosiere
6964 Houlton Circle
Lake Worth, FL 33467
Email: Larosieremm@gmail.com
Tel: (561) 452-7575
*Lead Counsel for Defendants Elik, Stroke, and Lettman*

_/s/ Zachary Zermay_
Zachary Z. Zermay, Esq.
Fla. Bar № 1002905
*Zermay Law, P.A.*
3000 Coral Way Ste 1115
Coral Gables, FL 33145
Email: zach@zermaylaw.com
Tel: (305) 767-3529
*Lead Counsel for Defendant Matthew Larosiere*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 15th day of December, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

*/s/ Zachary Z. Zermay*

Zachary Z. Zermay, Esq.
Fla. Bar № 1002905

# TAB 37

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

Case No. 9:25-cv-81197-DMM

DEFENSE DISTRIBUTED, a Texas corporation; DD FOUNDATION, LLC, a Texas limited liability company; and, DEFCAD, INC., a Texas corporation,

Plaintiffs,

v.

JOHN ELIK, individually; MATTHEW LAROSIERE, individually; ALEXANDER HOLLADAY, individually; PETER CELENTANO, individually; JOSH KIEL STROKE, individually; and JOHN LETTMAN, individually,

Defendants.

_______________________________________/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTIONS TO DISMISS THE AMENDED COMPLAINT AND IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT [D.E. 32]**

Plaintiffs, Defense Distributed, DD Foundation, LLC and DEFCAD, Inc., file their Response in Opposition to Defendants Joint Motion to Dismiss the Complaint and in the Alternative, for a More Definite Statement [D.E. 32], as follows:

## I. INTRODUCTION.

Defendants' Joint Motion to Dismiss [D.E. 32] does not test the legal sufficiency of the Amended Complaint [D.E. 13], but rather improperly disputes fact issues, addresses inapplicable defenses, and relies upon facts *outside* the pleading. The Amended Complaint pleads detailed, plausible RICO, Lanham Act, and Florida law claims, based on a coordinated scheme, to disseminate false online content, to divert customers and damage Plaintiffs' business. Defendants

"recharacterize" those claims as defamation, invoke inapplicable statutory defenses, and rely on extrinsic materials. The Motion should be denied.

## II. LEGAL ARGUMENT

### A. RICO' Provides Personal Jurisdiction Over All Defendants

Personal jurisdiction over RICO defendants is provided by 18 U.S.C. § 1965(b), where: (1) at least one defendant is subject to personal jurisdiction in the forum, and, (2) the "ends of justice" require nationwide service of process on additional non-resident defendants. *MasTec Renewables P.R., LLC v. Mammoth Energy Servs., Inc.*, 494 F. Supp. 3d 1233, 1240–41 (S.D. Fla. 2020); *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942–46 (11th Cir. 1997). Defendant Larosiere is a Florida resident, satisfying § 1965(a). The "ends of justice" requirement is met where, as here, defendants are alleged to be co-conspirators in a single enterprise whose acts span multiple jurisdictions. *BCCI*, 119 F.3d at 945 ("We adopt the same approach and conclude that insofar as an asserted federal claim is not wholly immaterial or insubstantial, a plaintiff is entitled to take advantage of the federal statute's nationwide service of process provision."); *MasTec Renewables*, 494 F. Supp. 3d at 1241. Thus, the Court may exercise jurisdiction over the non-residents.

Critically, Plaintiffs are required only to plead a colorable RICO claim – not prove one – at this jurisdictional stage. *BCCI*, 119 F.3d at 940–41. The Amended Complaint pleads, in detail: (a) an enterprise (MAF Corp.) operating from (b) a coordinated scheme to disseminate false statements about DEFCAD via interstate wires; (c) repeated predicate acts of wire fraud, including social-media dissemination of fabricated claims; and (d) knowing participation by Defendants Elik, Stroke, and Lettman in furtherance of the conspiracy. See Am. Compl. ¶¶ 14–48.

These allegations satisfy the elements necessary to plead a colorable RICO claim under *MasTec Renewables* and *BCCI*. Moreover, Plaintiffs seeks to recover lost profits caused by a coordinated scheme to defraud, a recognized injury under RICO. *See, e.g.*, *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 649 (2008) (upholding RICO claim for lost profits caused by a business rival's false statements to a regulator); *Hartman v. Does 1–2*, 2025 WL 398846, at *1–2 (11th Cir. Feb. 4, 2025) (affirming $9 million wire-fraud-based RICO judgment for "business damages" arising from an online "smear campaign" that included "email blasts with negative information" about the plaintiff's owner's financial and litigation history).

Thus, this Court has personal jurisdiction over all RICO defendants, as they are alleged to have conspired to violate § 1962(c). In order to prevent this the non-residents must establish "that the assertion of jurisdiction in the forum "will make litigation so gravely difficult and inconvenient that they [are] at a severe disadvantage in comparison to their opponent." *BCCI,* 119 F.3d at 948; *see also, Lewis v. Mercedes-Benz SA, LLC,* 530 F. Supp. 3d 1183, 1211 (S.D. Fla. 2021). They have not done so. Their declarations attached to their Motion are far short of what is required. *See, e.g., In re Takata Airbag Products Liability Litigation, 396* F. Supp. 3d 1101, 1145 (S.D. Fla. 2019) ("Here, the Domestic Defendants' moving papers fail to demonstrate 'constitutionally significant inconvenience.' Indeed, modern means of communication and transportation have lessened the burden of defending a lawsuit in a distant forum….").

Each affidavit is narrowly framed, self-serving, and fails to rebut the jurisdictional allegations, including: (a) their participation in a coordinated disinformation campaign; (b) knowing dissemination of false statements via interstate wires; (c) coordination with Florida-based co-conspirators. Rather than contradicting the pleadings, the affidavits largely ignore them, addressing isolated facts while omitting the alleged conspiracy and enterprise. Such affidavits are

insufficient. *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 503 (Fla. 1989); *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (conclusory, self-serving affidavits that fail to rebut specific jurisdictional allegations do not defeat personal jurisdiction at the motion-to-dismiss stage).

Moreover, once jurisdiction is secure as to all RICO defendants, it is established as to the Lanham Act claim and the Florida claims under the doctrine of "pendent personal jurisdiction." *See, e.g., Koch v. Royal Wine Merchants, Ltd.,* 847 F. Supp. 2d 1370, 1374 (S.D. Fla. 2012)("Under the doctrine of pendent personal jurisdiction, where a federal statute authorizes nationwide service of process and the federal and state claims 'derive from a common nucleus of operative fact…' the district court may assert personal jurisdiction over the parties to the related state law claims even if personal jurisdiction is not otherwise available.")(internal citation and quotations omitted). Thus, the Court has personal jurisdiction of all defendants for all claims.

**B. <u>Defendants' Arguments Under Rule 12(b)(6) Fail as a Matter of Law.</u>**

**1. <u>Legal Standard.</u>**

On a Rule 12(b)(6) motion, the Court's review is strictly limited to the four corners of the complaint and any documents incorporated into it. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000); *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1379 (11th Cir. 2010). Well-pleaded factual allegations must be accepted as true and construed in the light most favorable to the plaintiff. *Speaker*, 623 F.3d at 1379.

Consideration of materials outside the pleadings is improper unless the document is: (1) central to the plaintiff's claims, and, (2) its authenticity is undisputed. *Speaker*, 623 F.3d at 1379; *FTC v. Student Aid Ctr., Inc.*, 281 F. Supp. 3d 1324, 1332 (S.D. Fla. 2016). A complaint survives dismissal even if recovery ultimately appears remote or unlikely. *Speaker*, 623 F.3d at 1380.

**2. The Motion Relies on Matters Outside the Amended Complaint.**

As a threshold matter, Defendants' Motion to Dismiss should be denied because it repeatedly relies on materials outside of the four corners of the Amended Complaint. Specifically, Defendants rely upon: (a) a separate legal action involving Plaintiffs; (b) pleadings, orders, and filings from that separate action; (c) Defendants' Rule 11 Motion for Sanctions; (d) Defendants' characterizations of events and conduct that are not pled. These materials are not central to Plaintiffs' claims, are not referenced or incorporated into the Amended Complaint, and cannot properly be considered on a Rule 12(b)(6) motion. *Speaker*, 623 F.3d at 1379; *Student Aid Ctr.*, 281 F. Supp. 3d at 1332 (court "could not consider documents outside the complaint" on motion to dismiss). Defendants improperly invite the Court to resolve factual disputes, weigh competing narratives, and assess credibility through the extrinsic documents. See *Speaker*, 623 F.3d at 1380.

**3. Plaintiffs Sufficiently Plead a RICO Claim.**

"A plaintiff suing under the civil provisions of RICO must plausibly allege six elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1196 (11th Cir. 2025). The Amended Complaint alleges: Defendants conspired with Larosiere to operate his corporation, MAF Corp., the enterprise, through a pattern of wire fraud violations that caused injury to Plaintiff's business. Am. Compl. at ¶¶ 21, 25, 26, 29. The scheme to damage DEFCAD by spreading false information violated the federal wire fraud statute, 18 U.S.C. § 1343. AC ¶34, damaging DEFCAD through lost profits. *Id.* at ¶ 35.

The Motion asserts the RICO claim alleges "defamation by RICO" and as such "has been rejected by every circuit to consider similar attempts." Mot. at p.5. Yet, the Motion cites no such



196768164v4

circuit court decision. The Florida Supreme Court made it clear the tort of defamation exists to permit a plaintiff "to prove injury to his or her reputation in the community." *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1108 (Fla. 2008). Plaintiffs do not seek reputational damages. Plaintiffs seek lost profits, a well-established remedy for wire fraud. *See, e.g., Bridge*, 553 U.S. 639 (upholding RICO claim for lost business profits caused by a competitor's false statements to a government regulator); *Hartman*, 2025 WL 398846 at *1-2 (affirming $9 million RICO wire fraud judgment for "business damages" against rival which was engaged in an online "smear campaign" against it including the use of "email blasts with negative information" about plaintiff owner's "financial history, litigation history, commercial dealings, alleged prurient nature, credibility and trustworthiness").

Defendants' reliance upon *Freitas v. Medina*, 2025 WL 1425491 at *1-2 (S.D. Fla. 2025), is misplaced. There the plaintiffs sought damages caused by "a coordinated defamatory campaign," designed to "destroy their reputations", expressly alleging, "Defendants' primary means of carrying out the conspiracy was through defamation…". *Id.* at *6. The plaintiffs there were individuals, not businesses, and did not seek lost profits. The facts alleged here are distinct, in that the Plaintiffs are businesses, seeking lost profits damages, through wire fraud (as opposed to individuals, seeking reputational damages, through defamation).

The Motion contends, "the enterprise allegations are facially defective" because the allegations lack "structure, hierarchy, roles, or acts attributable to an enterprise distinct from the alleged actors." Mot. at p.7. The listed factors do not apply, as they are only for association-in-fact enterprises, not single entity corporate enterprises, which is alleged here. *See, e.g.*, *Boyle v. U.S.*, 556 U.S. 938, 946 (2009).

The Motion next argues the Amended Complaint fails to allege a "pattern of racketeering activity", Mot. at p.7, citing *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357-59 (11th Cir. 2018); however, *Jackson* is not a RICO case. By contrast, the Eleventh Circuit's recent *Hartman* decision held an ongoing smear campaign constitutes an open pattern of racketeering. *Hartman*, 2025 WL 398846 at *5. This is alleged here. It is also a closed pattern, having been ongoing for two years, since May 2023, and already caused significant damage. Am. Compl. ¶ 23. *See, e.g.*, *Aquino v. Mobis Alabama, LLC*, 739 F. Supp. 3d 1152, 1181 (N.D. GA 2024) (concluding a two-year scheme adequate to allege a RICO pattern); *Magnifico v. Villanueva*, 783 F. Supp. 2d 1217, 1229 (S.D. Fla. 2011) (18 months adequate combined with a large number of victims). The Amended Complaint plausibly alleges a civil RICO claim by pleading Defendants conducted and participated in the affairs of a RICO enterprise – MAF Corp. – through a coordinated scheme to disseminate knowingly false statements over interstate wires in order to divert customers from DEFCAD to Defendants' competing business. See Am. Compl. ¶¶ 21–48.

Defendants acted pursuant to a shared plan, used social media and internet platforms to publish and amplify false claims that DEFCAD had been "hacked," that customer data had been "dumped," and that DEFCAD was hosted in Iran, and repeated these acts over an extended period from May 2023 through (at least) April 2024. *Id*. These repeated wire-fraud predicates establish both closed- and open-ended continuity and caused concrete financial injury exceeding $1 million in lost sales and business relationships. *Id*. Taken as true, these allegations satisfy the elements of conduct, enterprise, pattern, and racketeering activity required under 18 U.S.C. §§ 1962(c) and (d). *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013).

Accordingly, Defendants' request for dismissal of Plaintiffs' RICO claim under Rule 12(b)(6) should be denied.

**4. Plaintiffs Sufficiently Pleads Lanham Act – False Advertising.**

Count II alleges the same misconduct violates § 1125(a)(1)(B) of the Lanham Act,[1] which prohibits misrepresentations of "the nature, characteristics, qualities… of another person's goods, services, or commercial activities," in "commercial advertising." The Supreme Court has described "the classic Lanham Act false-advertising claim in which one competitor directly injures another by making false statements about his own goods [or the competitor's goods] and thus inducing customers to switch." *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 137-38 (2014). That is precisely what is alleged here. *See also, Osmose, Inc. v. Viance, LLC,* 612 F.3d 1298, 1308 (11th Cir. 2010) (detailing the five elements of false advertising). The first element, "literal falsity" is met if the advertisement is "literally false", which is what Plaintiffs allege. The "FEDCAD" meme contains false allegations about DEFCAD, as detailed in the Amended Complaint.

The second element is the ad "deceived, or had the capacity to deceive, consumers." *Id.* Plaintiffs allege the "FEDCAD" post deceived DEFCAD consumers and cost DEFCAD business. There is no need to prove "consumer deception" if the ad is literally false. *Id.* at 1319. The next element is "materiality," i.e., that the falsity "is likely to influence the purchasing decision." *Id.* This is plainly alleged because 3D gun purchasers are concerned about exposure to the public and the government, which the meme falsely alleges has occurred. Finally, the complaint must allege injury, which Plaintiffs clearly allege as lost profits.

The Motion asserts the Complaint does not state a false advertising claim because "the alleged speech is not commercial advertising or promotion." Mot. at p.8, asserting the posts are "non-commercial. Once again, it cites no authority in support of this assertion. The requirements

---

[1] 15 U.S.C. § 1125(a).

for a commercial advertisement are "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing customers to buy defendant's goods or services…. (4) disseminated to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Belcher Pharmaceuticals, LLC v. Hospira, Inc.,* 419 F. Supp. 3d 1292, 1297 n.6 (M.D. Fla. 2020). The Amended Complaint alleges facts that support these elements, namely Defendants are business rivals of DEFCAD through their MAF Corp. enterprise, and the online meme is an attempt to influence DEFCAD's customers. The Motion's contention that, "a meme posted on the internet is not an advertising campaign," is unsupported and wrong. If the meme is posted online to reach DEFCAD's customers, and deceives them, it is "commercial."

The Motion then asserts, "the alleged statements are criticism and opinion," citing *Boule v. Hutton,* 328 F.3d 84, 90-91 (2d Cir. 2003). That decision holds, in relevant part, that statements made to an art magazine were not "commercial speech" because the article addressed a matter of "public concern," fraud in the art market, and thus, given the forum, was subject to the First Amendment protection. But the decision does not hold all statements of opinion are so protected, as the Motion claims. Rather, it holds, "A statement of opinion is not actionable under the Lanham Act if it 'could not reasonably be seen as stating or implying provable facts' about a competitor's goods or services." *Id*. at 92. The challenged statements in the meme, that DEFCAD has been hacked, and customer names have been made public, are false. Therefore, they are not entitled to First Amendment protection and are actionable. The Lanham Act claim should not be dismissed.

**5. <u>Plaintiffs Adequately Plead Tortious Interference.</u>**

To state a claim for Tortious Interference under Florida law, a plaintiff must allege: (1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights;



196768164v4

(2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and, (4) damage to the plaintiff. *Int'l Sales & Service, Inc. v. Austral Insulated Products, Inc.,* 262 F. 3d 1152, 1154 (11th Cir. 2001).

The Amended Complaint plausibly alleges Plaintiffs maintained ongoing and prospective business relationships with customers, creators, and partners using the DEFCAD platform, including specifically identified file designers Barret Collier and Eric Goldhaber, whose files generated revenue for DEFCAD. Am. Compl. ¶¶ 31, 56–64. Defendants – active competitors in the same niche marketplace – knew of these relationships and intentionally targeted them by disseminating false statements that DEFCAD had been "hacked," that it "doxxed" customers, and that it was hosted in Iran, for the purpose of diverting business to Defendants' competing enterprise. *Id*. ¶¶ 22–34, 59–61. This conduct was unjustified and wrongful, and it caused concrete harm, including the termination of identified business relationships, lost customers, diminished goodwill, and lost profits exceeding $1 million. *Id*. ¶¶ 31–35, 62–63.

Plaintiffs have adequately plead a tortious interference claim under Florida law, so Defendants' motion to dismiss should be denied.

**C. <u>Chapter 770 and the Single Action Rule Do Not Apply.</u>**

First, Defendants' Chapter 770 and "single-action rule" arguments fail because state defamation doctrines cannot be used to bar or restrict federal statutory claims under the RICO or the Lanham Act. Federal causes of action arise under federal law, and are governed by federal pleading standards and federal remedial schemes. As courts have long held, "a federal right cannot be defeated by the forms of local practice," and state procedural or doctrinal rules may not impose "unnecessary burdens upon rights of recovery authorized by federal laws." *Brown v. W. Ry. of Ala.*, 338 U.S. 294, 296–97 (1949); See *Schaeffer v. School Bd. of Broward Cnty.*, 69 F. Supp. 3d 1327,

1330–31 (S.D. Fla. 2014) (holding Florida's statutory notice requirement "applies solely to state-law tort claims" and cannot bar a federal cause of action). Defendants' attempt to create a straw man through Florida defamation law to bar or limit Plaintiffs' federal RICO and Lanham Act claims is improper.

Second, Plaintiffs do not assert a defamation claim. The Amended Complaint does not plead libel, slander, or reputational injury as a standalone tort. Instead, it alleges statutory and business-tort claims – civil RICO, Lanham Act false advertising, and tortious interference – based on a coordinated scheme to disseminate false and misleading online content for competitive and commercial gain, resulting in lost customers, diverted sales, unjust enrichment, and ongoing economic harm. Courts routinely reject attempts to recast such claims as defamation where, as here, the gravamen of the action is commercial deception and interference, not reputational harm alone. See *Five for Ent. S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1332–33 (S.D. Fla. 2012).

Third, Defendants' reliance on Fla. Stat. § 770 is misplaced for the independent reason that Chapter 770 applies only to defamation claims against "media defendants" – such as newspapers, broadcasters, or periodicals engaged in the business of disseminating news. *Tobkin v. Jarboe*, 695 So. 2d 1257, 1258–59 (Fla. 4th DCA 1997). Courts in this District have repeatedly refused to extend Chapter 770 to private individuals or competitors who publish statements online outside the business of news reporting. *Five for Ent.*, 877 F. Supp. 2d at 1332. The Amended Complaint alleges Defendants are private competitors, not media entities, who created and amplified false memes and statements to divert customers to a rival platform. Chapter 770 therefore has no application to the claims pled.

Fourth, the same defect defeats Defendants' invocation of Florida's single-action rule. That doctrine applies only where a defendant has successfully invoked a defamation privilege and the

plaintiff seeks to repackage the same defamatory publication into a different tort. *Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992). As recently clarified, "where a defendant has not successfully invoked an affirmative defense to defamation, the single-action rule presents no bar" to related claims. *David v. Gen. Dynamics Info. Tech., Inc.*, 2025 WL 1951850, at *5 (M.D. Fla. July 15, 2025) (quoting *Emergency Recovery, Inc. v. Gov't Emps. Ins. Co.*, 773 F. Supp. 3d 1304, 1320 (M.D. Fla. 2025)). Plaintiffs assert no defamation claim, Defendants have invoked no defamation privilege, and the Amended Complaint alleges injuries far beyond reputation alone. The single-action rule is therefore inapplicable as a matter of law.

Fifth, as stated above, Defendants' arguments improperly rely on matters outside the four corners of the Amended Complaint, including references to separate litigation, alleged "abandoned" claims, filings in other actions, and Defendants' own Rule 11 motion. None of those materials are incorporated by reference, and none may be considered here. The Court must evaluate the claims as pled – not as Defendants attempt to reframe them.

Finally, Defendants' statute-of-limitations arguments fail. They assume – contrary to the pleading – that Plaintiffs' claims "sound in defamation" and accrued upon a single publication. The Amended Complaint instead alleges an ongoing and continuing scheme involving repeated acts from 2023 through the present. Whether Defendants can prove otherwise is a factual issue not resolvable on a motion to dismiss.

In short, Defendants' Chapter 770 and single-action arguments depend on rewriting the Amended Complaint, importing extrinsic facts, and applying inapplicable state defamation doctrines to federal statutory and business-tort claims. That is not the function of Rule 12, and these arguments provide no basis for dismissal.

**D. The Amended Complaint is Not a Shotgun Pleading.**

Defendants' assertion the Amended Complaint constitutes an impermissible shotgun pleading is contradicted by both Eleventh Circuit precedent and the structure of the pleading itself. The Eleventh Circuit identified four general types of shotgun pleadings: (1) complaints that incorporate all prior allegations into each count; (2) complaints replete with vague, conclusory, or immaterial facts; (3) complaints that fail to separate distinct causes of action into separate counts; and, (4) complaints that assert multiple claims against multiple defendants without specifying which defendant is responsible for which acts. *Weiland v. Palm Beach Cnty. Sheriff's Office,* 792 F. 3d 1313, 1321-1323 (11th Cir. 2015); See *Barmapov v. Amuial*, 986 F.3d 1321, 1325–26 (11th Cir. 2021). The "unifying characteristic" is that a shotgun pleading fails to give adequate notice of the claims and the grounds upon which each claim rests. *Weiland,* at 1323.

**1. The Amended Complaint is Not a Type-1 Shotgun Pleading.**

Although each count incorporates certain background allegations, the Eleventh Circuit has made clear that incorporation alone does not create a shotgun pleading where the allegations are relevant and the counts remain intelligible. See *Weiland*, 792 F.3d at 1324. Here, each count incorporates factual allegations that form the common nucleus of Defendants' coordinated scheme and then pleads claim-specific elements and conduct. Courts routinely reject shotgun challenges where, as here, incorporation is used to avoid repetition and does not obscure the nature of the claims. *Id.;* See *Barmapov*, 986 F.3d at 1325–26.

**2. The Amended Complaint is Not a Type-2 Shotgun Pleading.**

The Amended Complaint pleads detailed, concrete facts, including: the nature of the false statements disseminated ("FEDCAD" claims of hacking and data breaches); the platforms used (Reddit, Twitter/X, online forums); the time period (beginning May 2023); the competing

enterprise (MAF and The Gatalog); the mechanism of injury (diversion of customers, reputational harm, lost business relationships); and the specific statutory predicates (wire fraud under 18 U.S.C. § 1343). These are not vague or immaterial allegations but fact-specific assertions that go well beyond "labels and conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**3. The Amended Complaint is Not a Type-3 Shotgun Pleading.**

Each cause of action – RICO, Lanham Act false advertising, and tortious interference – is pled in a separate count, with its own elements and supporting allegations. Defendants do not (and cannot) contend that multiple causes of action are improperly merged into a single count. This alone defeats any Type-3 shotgun pleading argument. See *Weiland*, 792 F.3d at 1323.

**4. The Amended Complaint is Not a Type-4 Shotgun Pleading.**

The Amended Complaint pleads defendant-specific conduct with precision and does not lump all Defendants together in the manner condemned by *Weiland*, 792 F. 3d at 1321–23 (11th Cir. 2015). The pleading expressly alleges each Defendant's individual role in the scheme, including Elik's origination and coordination of the disinformation campaign; Celentano's repeated posting and amplification of the "FEDCAD" meme on Reddit and search-engine-visible forums; Holladay's embedding and publication of the meme on his Florida-based commercial platform, ctrlpew.com; Stroke's reposting of the meme across multiple channels under the "Zona" persona using funds from MAF Corp.; and, Larosiere's direction of the scheme through his Florida entity, MAF Corp., which served as the RICO enterprise. The Complaint further alleges that all Defendants – including Lettman – acted by agreement to disseminate false statements about DEFCAD, including claims that DEFCAD had been hacked, its data dumped, and that its servers were hosted in Iran, in order to divert customers to The Gatalog. These allegations are tied to

specific actors, platforms, timeframes, and conduct, and each Count is expressly limited to the Defendants against whom it is brought (including the Florida-only tortious-interference claim).

Accordingly, the Amended Complaint is not a shotgun pleading under any *Weiland* category, and dismissal on that basis is unwarranted.

**E. Defendants' Request for a More Definite Statement Fails as a Matter of Law.**

A Rule 12(e) motion is appropriate only where a pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Defendants' filings in this matter make clear that they understand the claims asserted against them, the conduct alleged to give rise to liability, the timeframe, platforms and methods involved, and the damages Plaintiffs claim resulted. Defendants' Motion, as well as their other filings, include several pages addressing the merits – confirming that they are fully capable of responding. Defendants' request improperly seeks to force Plaintiffs to preview evidence or refine factual detail beyond what Rule 8 requires. That is not the function of Rule 12(e), and the request should be denied.

## III. CONCLUSION.

Defendants' Joint Motion to Dismiss asks this Court to do precisely what Rule 12 forbids: resolve factual disputes, import extrinsic litigation history, apply inapplicable state-law doctrines to federal claims, and weigh the merits of Plaintiffs' allegations. The Amended Complaint pleads detailed, defendant-specific facts establishing personal jurisdiction and plausibly stating claims under RICO, the Lanham Act, and Florida law. Defendants' jurisdictional arguments misstate the governing standards, their Rule 12(b)(6) arguments ignore controlling precedent, and their reliance on Chapter 770, the single-action rule, and materials outside the four corners of the pleading is legally improper. Because the Amended Complaint satisfies Rule 8 and provides clear notice of the claims and grounds for relief, dismissal – or a more definite statement – is unwarranted.

WHEREFORE, Plaintiffs, Defense Distributed, DD Foundation, LLC, and DEFCAD, Inc., respectfully request that the Court: (a) deny Defendants' Joint Motion to Dismiss in its entirety; (b) deny Defendants' alternative request for a more definite statement under Rule 12(e); (c) decline to consider any matters outside the four corners of the Amended Complaint in resolving Defendants' Rule 12 motions; and, (d) grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

TAFT STETTINIUS & HOLLISTER LLP
525 Okeechobee Blvd., Suite 900
West Palm Beach, FL 33401
Tel. (561) 655-2250
Email: gweiss@taftlaw.com

By: s/ GREGORY S. WEISS
GREGORY S. WEISS
Florida Bar No. 163430

And

Howard Foster, Admitted *Pro Hac Vice*
FOSTER PC
155 N. Wacker Dr., Suite 4250
Chicago, IL 60606
Tel. (312) 726-1600
Email: hfoster@fosterpc.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on December 29, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically.

*s/* GREGORY S. WEISS
GREGORY S. WEISS, ESQ.
Florida Bar No. 163430

**SERVICE LIST**:

**Matthew M. Larosiere, Esq.**
6964 Houlton Cir.
Lake Worth, FL 33467
Tel. (561) 452-7575
Email: larosieremm@gmail.com
*Attorney for Defendants, John Elik, John Lettman and Josh Kiel Stroke*

**Gary C. De Pury, Esq.**
21035 Leonard Road
Lutz, FL 33558
Tel. (813) 607-6404
Email: Gary@DePury.com
*Attorney for Defendant, Alexander Holladay*

**Zachary Z. Zermay, Esq.**
3000 Coral Way, Suite 115
Coral Gables, FL 33145
Tel. (305) 767-3529
Email: zach@zermaylaw.com
*Attorney for Defendant, Matthew Larosiere*

# TAB 42

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE №: 9:25-cv-81197

DEFENSE DISTRIBUTED, a Texas corporation; DD FOUNDATION, LLC, a Texas limited liability company; and, DEFCAD, INC., a Texas corporation,

*Plaintiffs*,

v.

JOHN ELIK; MATTHEW LAROSIERE; ALEXANDER HOLLADAY; PETER CELENTANO; JOSH KIEL STROKE; and JOHN LETTMAN,

*Defendants*.

_______________________________________/

**DEFENDANTS JOHN ELIK, MATTHEW LAROSIERE, ALEXANDER HOLLADAY, JOSH KIEL STROKE, AND JOHN LETTMAN'S CONSOLIDATED REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

**ARGUMENT** ........ 2

**I. PLAINTIFFS STILL FAIL TO ESTABLISH PERSONAL JURISDICTION OVER ELIK, STROKE, AND LETTMAN.** ........ 2

A. Plaintiffs do not rebut the sworn jurisdictional facts negating Florida contacts. ........ 3

B. Pendent personal jurisdiction rises or falls with the RICO anchor. ........ 3

**II. PLAINTIFFS HAVE NOT STATED A COLORABLE RICO CLAIM** ........ 3

A. "Each use of the internet" is not a Rule 9(b) predicate pleading. ........ 4

B. Response sidesteps the Motion's other identified defects. ........ 6

C. Plaintiffs do not plausibly plead that any defendants "operated or managed" the affairs of the alleged enterprise. ........ 6

D. Plaintiffs do not plausibly plead continuity or a RICO "pattern." ........ 6

E. Plaintiffs fail to plead proximate cause because their theory depends on independent decisions of third parties. ........ 7

**III. PLAINTIFFS DO NOT ENGAGE WITH THEIR FAILURE TO PLEAD "COMMERCIAL ADVERTISING OR PROMOTION."** ........ 7

A. Plaintiffs' "competitor" and "market" allegations remain conclusory. ........ 8

**IV. THE TORTIOUS INTERFERENCE COUNT AND PLAINTIFFS' DEFAMATION-AVOIDANCE ARGUMENTS REMAIN DEFECTIVE (AND THE RESPONSE CONCEDES KEY POINTS).** ........ 8

**V. PLAINTIFFS' CH. 770 ARGUMENTS IGNORE ADVERSE AUTHORITY.** 8

**VI. THE RESPONSE DOES NOT CURE THE SHOTGUN PLEADING PROBLEM** ........ 10

**VII. CONCLUSION** ........ 10

# INTRODUCTION

Plaintiffs' opposition confirms the core problem with this case: it is an attempt to convert alleged online criticism and meme-posting into federal wire fraud predicates, civil RICO conspiracy, and Lanham Act false advertising while simultaneously insisting the Court must use the RICO count to exercise nationwide personal jurisdiction over non-resident defendants, some of which they have not made a single allegation against, save for state of residence.

The Amended Complaint asserts that "each use of the internet to spread damaging disinformation violates the federal wire fraud statute," and then re-labels purported reputational harm as "lost profits." The Opposition argues "Plaintiffs do not seek reputational damages" *but see* (Am. Compl.) ("Plaintiffs have also suffered diminished **customer goodwill**, lost sales and profit, and substantial **reputational and financial harm** in an amount exceeding $1 million.) (emphasis added). That is not a plausibly pleaded wire-fraud scheme, not pleaded with Rule 9(b) particularity, not a pattern of racketeering, and facially fails proximate causation.

RICO aside, Plaintiffs' Lanham claim fails because, even after the defect was identified, they failed to plausibly plead the alleged speech as "commercial advertising or promotion," and the tortious interference claim fails because Plaintiffs do not plead a protectable business relationship with the specificity Florida law requires. Finally, the Amended Complaint remains an impermissible shotgun pleading that obscures who did what and on what basis each element of each claim is supposedly satisfied.

## ARGUMENT

### I. PLAINTIFFS STILL FAIL TO ESTABLISH PERSONAL JURISDICTION OVER ELIK, STROKE, AND LETTMAN.

Plaintiffs concede their jurisdiction theory is premised on pleading a "colorable RICO claim." (Doc. 37 at 2). The Motion explained why the RICO claim is facially deficient, and therefore cannot supply nationwide jurisdiction under § 1965(b). (Doc. 32 at 5-7) (Identifying failures under (Rule 9(b), predicate acts, continuity, distinct enterprise, traceable injury, and proximate cause).

The Response does not meaningfully answer those defects. Instead, it argues generally that Plaintiffs pleaded an enterprise and a "coordinated scheme," and relies on the assertion that repeated "social-media dissemination" equals wire fraud. (Doc. 37 at 2, 5). But Plaintiffs' own pleading theory is that posting the meme itself is the federal predicate—i.e., "each use of the internet" violates the wire fraud statute. *Id.*

Plaintiffs' opposition never grapples with the Amended Complaint's missing elements; it simply repeats that the Complaint pleads a RICO enterprise and "repeated wire fraud" because Defendants allegedly spread false statements online.

But the Amended Complaint's wire-fraud predicate is pleaded as a conclusion ("each use of the internet to spread damaging disinformation violates the federal wire fraud statute"), without alleging a scheme to defraud, the object of the fraud, the property obtained, the victims defrauded, or the "who/what/when/where/how" Rule 9(b) requires for wire-fraud predicates. A RICO count pleaded in that manner is not "colorable," and Plaintiffs therefore cannot invoke § 1965(b) to create personal jurisdiction over non-resident defendants.

A. Plaintiffs do not rebut the sworn jurisdictional facts negating Florida contacts.

The Response asserts Defendants must prove "constitutionally significant inconvenience" and that Defendants' affidavits are "self-serving" and "ignore" the allegations. (Doc. 37 at 3). This ignores the fact that when a defendant challenges personal jurisdiction "by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir.1990) (cleaned up).

The affidavits submitted here negate any Florida business, property, or employment contacts by Elik and Lettman, and any Florida ties for Stroke. Plaintiffs respond by simply decrying the jurisdictional affidavits rather than providing competing facts. That is insufficient. Plaintiffs made no attempt to submit competing affidavits or evidence establishing minimum contacts or any Florida-directed course of conduct sufficient for specific jurisdiction, and as such, this Court lacks personal jurisdiction over Elik, Stroke, and Lettman.

B. Pendent personal jurisdiction rises or falls with the RICO anchor.

Plaintiffs argue that if RICO jurisdiction exists, pendent personal jurisdiction carries the Lanham Act and state claims. (Doc. 37 at 4). That is purely derivative. If the RICO claim is not colorable, there is no nationwide-service hook and thus no pendent personal jurisdiction to bootstrap other claims.

For all of the aforementioned reasons, and those mentioned in the Motion, the claims against Elik, Stroke, and Lettman should be dismissed under 12(b)(2).

## II. PLAINTIFFS HAVE NOT STATED A COLORABLE RICO CLAIM

The Response's core RICO defense is to characterize online statements and reposts as wire fraud predicate acts and to invoke cases allegedly allowing "business damages" from "smear campaigns." (Doc. 37 at 3-7). That does not address what the Motion actually challenged: Plaintiffs' failure to plead, with particularity, the elements of wire fraud predicates (the "who/what/when/where/how" of the communications and a scheme to defraud in the legal sense), continuity, the existence of a distinct enterprise, and proximate causation.

Aside from continuing to mis-represent *Hartman* and now *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 643–45, 658–59 (2008) (tax-lien auction case; defendants allegedly used related entities to bid and submitted false affidavits and attestations of compliance with a county bidding rule, thereby obtaining liens that would otherwise have been awarded to plaintiffs; holding first-party reliance is not an element, while reaffirming RICO's proximate-cause "direct relation" requirement and warning that the "complete absence of reliance" may defeat proximate cause). Plaintiffs' opposition makes no attempt to cure these defects aside from by assertion.

A. <u>"Each use of the internet" is not a Rule 9(b) predicate pleading.</u>

Plaintiffs' own formulation—"each use of the internet" violates wire fraud—confirms the pleading defect: it is a generalized theory that publication itself equals a federal predicate. (Doc. 13 ¶34).

The Response's attempt to defend this by listing platforms and a broad time range (e.g., "Reddit," "Twitter/X," "beginning May 2023") is not Rule 9(b) particularity and does not identify the required details of specific wire transmissions attributable

to each defendant. Wire fraud requires a scheme to defraud, or to obtain money or property under fraudulent pretenses, and use of interstate wires in furtherance of that scheme. Especially not as to Lettman, which Plaintiffs have consistently ignored until—for the third time—their failure to say *a single thing* about him save for his state of residence was identified. (Doc. 37 at 14) ("The Complaint further alleges that all Defendants – including Lettman – acted by agreement) *but see* (Doc. 10) (Saying nothing of Lettman aside from his State of Residence).

Plaintiffs' theory in the response collapses this into allegedly false online statements about DEFCAD that, in some undisclosed manner, resulted in "lost profits" to the multiple Plaintiffs and suggests that Plaintiffs here "are businesses, seeking lost profits damages, through wire fraud (as opposed to individuals, seeking reputational damages)" (Doc. 37) *but see* (Am. Compl. ¶ 53, 64) (explicitly seeking redress for "diminished customer goodwill, lost sales and profit, and substantial reputational and financial harm"). The Response does not connect any alleged misrepresentation to an identified transactional deprivation (who was deceived, by what statement, when, and how that deception caused a transfer of money/property to defendants), and instead relies on conclusory "competitive gain" rhetoric. That does not equate to a scheme to defraud for money or property, and Plaintiffs never plead the essential mechanics of fraud, much less with the particularity Rule 9(b) requires.

The Amended Complaint's predicate allegation is quintessentially conclusory—"each use of the internet to spread damaging disinformation violates the federal wire fraud statute"—and the Opposition doubles down on that framing rather

than supplying missing facts. A pleading that treats online commentary as *per se* wire fraud cannot satisfy 12(b)(6).

B. Response sidesteps the Motion's other identified defects.

The Motion identified multiple independent reasons the RICO claim is facially deficient. The Response does not engage those elements in any meaningful, claim-specific way; it simply asserts Plaintiffs pleaded "in detail" an enterprise and scheme. (Doc. 37 at 2) *but see* (Am. Compl.) (13-page strike suit devoid of detail.).

C. Plaintiffs do not plausibly plead that any defendants "operated or managed" the affairs of the alleged enterprise.

Plaintiffs attempt to avoid the Amended Complaint's enterprise defects by arguing they pled a "single entity corporate enterprise" and therefore need not plead structure, hierarchy, or roles. (Doc. 37 at 6). That misses the point.

Even accepting a corporate enterprise *arguendo*, Plaintiffs must plausibly allege that each defendant participated in the enterprise's affairs in a manner cognizable under RICO. Plaintiffs' enterprise narrative is internally inconsistent: the Amended Complaint begins by asserting Defendants "jointly operate" a competing business known as "The Gatalog," yet the RICO count pivots to MAF Corp. as the enterprise. (Am. Compl.) Plaintiffs do not plead how the alleged meme-posting constituted conducting the affairs of MAF Corp., rather than merely alleged individual speech by some-but-not-all Defendants about one Plaintiff.

D. Plaintiffs do not plausibly plead continuity or a RICO "pattern."

As with all essential elements, the Response argues only by assertion. Plaintiffs claim both closed- and open-ended continuity based on alleged posts

spanning roughly May of 2023 through April of 2024. The "pattern" requirement demands more than "this happened for a while." Plaintiffs do not plead a threat of ongoing racketeering activity; they plead a finite campaign of online commentary and memes regarding DEFCAD.

E. Plaintiffs fail to plead proximate cause because their theory depends on independent decisions of third parties.

Even if Plaintiffs had pleaded predicate fraud (they have not), Plaintiffs' causation theory runs through independent choices by third parties. As identified in the Motion and ignored in the Response, *Anza v. Ideal Steel Supply Corp*. reversed similar allegations as failing proximate cause requirements. 547 U.S. 451 (2008). As alleged, Plaintiffs' asserted damages—lost customers and lost profits—are inherently mediated by market actors' discretionary decisions, not direct acquisition of Plaintiffs' property by deception that RICO requires.

Because Count I fails as a matter of pleading and substance, it should be dismissed under Rule 12(b)(6). And because it is not "colorable," Plaintiffs cannot rely on it for nationwide personal jurisdiction under § 1965(b).

## III. PLAINTIFFS DO NOT ENGAGE WITH THEIR FAILURE TO PLEAD "COMMERCIAL ADVERTISING OR PROMOTION."

Plaintiffs' Lanham claim repackages the same alleged speech (the "FEDCAD" meme) as "false advertising." The opposition argues that if the meme was posted online "to reach DEFCAD's customers," it is "commercial." That is not the test.

To plead false advertising under 15 U.S.C. § 1125(a)(1)(B), Plaintiffs must plausibly allege that the challenged statements were made in "commercial

advertising or promotion." The Eleventh Circuit defines "commercial advertising or promotion" as encompassing four elements:

> (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services; and (4) the representations ... must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry.

*Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017) (cleaned up). The Amended Complaint fails to make plausible allegations to this effect, the Motion identified this, and the Response ignores this failure.

A. <u>Plaintiffs' "competitor" and "market" allegations remain conclusory.</u>

The Motion pointed out that Plaintiffs rely on vague references to a "3D gun market" and conclusory assertions of "direct competitor" status. The opposition does not identify any factual allegation demonstrating a plausible competitive relationship between Plaintiffs and each moving defendant, or that the challenged posts were advertising within that alleged competitive marketplace.

**IV. THE TORTIOUS INTERFERENCE COUNT AND PLAINTIFFS' DEFAMATION-AVOIDANCE ARGUMENTS REMAIN DEFECTIVE (AND THE RESPONSE CONCEDES KEY POINTS).**

The Motion pointed out that the "Florida Defendants" are alleged, in conclusory terms, to have interfered "by spreading false statements," without tying any Floridian's act to an identifiable relationship, contract, or transaction. (Doc. 32 at 11-12). The Response answers with generalities rather than transaction-specific facts. (Doc. 37 at 10).

**V. PLAINTIFFS' CH. 770 ARGUMENTS IGNORE ADVERSE AUTHORITY.**

Despite arguing that they are *not* seeking reputational redress (Doc. 37 at 6) *but see* (Am. Compl.) (explicitly seeking $1 million as redress for "substantial reputational and financial harm"), Citing nothing standing for the proposition, the Response's primary answer to Chapter 770/single-action is that state defamation doctrines cannot "bar" federal claims, and that Chapter 770 applies "solely to state-law tort claims." (Doc. 37 at 10-11).

The Motion did not argue state law "defeats" federal rights; it argued Plaintiffs cannot evade defamation limitations by relabeling publication-based reputational harms as other causes of action, and (2) Plaintiffs' own citation to *Schaeffer* underscores that Florida's statutory notice requirement applies to state-law tort claims—i.e., exactly where Count III resides.

The Motion explained that § 770.07 accrues defamation-style claims at first publication and cannot be revived by repetition, and identified the pleaded publication timeframe beginning in 2023. The Response's insistence that these are "business torts" does not address accrual where the same publication is the operative wrong and the same alleged harm is claimed across counts.

Unaddressed in the response is that Plaintiffs have routinely admitted Defendants are authors. (Doc. 12 at 10). This, of course, matters only to the notice requirement, which is not the most fatal component of the §770 scheme to their claims. The single action and accrual rule are. Plaintiffs likely know this, as they suddenly switch to inapposite foreign jurisdictions to stitch together an argument

that the rule long recognized in this Court and binding here, somehow does not apply. *See* (Doc. 32 pp. 10-13).

The response cannot avoid that the Complaint explicitly seeks reputational damages. Ch. 770 isn't a bar to federal claims, it prevents re-packaging defamation into myriad forms, as Plaintiffs here attempt.

**VI. THE RESPONSE DOES NOT CURE THE SHOTGUN PLEADING PROBLEM**

The Response argues incorporation "alone" does not create a shotgun pleading and claims the counts remain "intelligible." (Doc. 37 at 13). But the Amended Complaint does exactly what *Weiland/Barmapov* label the "type 1" cardinal sin: each count incorporates all preceding allegations. (Am. Compl. ¶¶ 13, 49, 56). The Motion cited Eleventh Circuit authority for why this practice impedes notice and forces defendants (and the Court) to guess which facts support which elements. The Response's generalized defense of "common nucleus" pleading does not change what the pleading does on its face.

**VII. CONCLUSION**

The motion should be granted. DATED: January 5, 2026

*/s/ Gary C. De Pury*
Gary C. De Pury
Florida Bar No: 126588
Law Offices of Gary De Pury, P.A.
21035 Leonard Road
Lutz, Florida 33558
Tel: (813) 607-6404
Gary@DePury.com
*Lead Counsel for Alex Holladay.*

*/s/Matthew Larosiere*
Matthew Larosiere, Esq.
Fla. Bar. No. 1005581
The Law Offices of Matthew Larosiere
6964 Houlton Circle
Lake Worth, FL 33467
Larosieremm@gmail.com
Tel: (561) 452-7575
*Lead Counsel for Elik, Stroke, and Lettman*

*/s/ Zachary Zermay*
Zachary Z. Zermay, Esq.
Fla. Bar № 1002905
*Zermay Law, P.A.*
3000 Coral Way Ste 1115
Coral Gables, FL 33145
zach@zermaylaw.com
Tel: (305) 767-3529
*Lead Counsel for Matthew Larosiere*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on this 5th day of January, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

*/s/ Zachary Z. Zermay*

Zachary Z. Zermay, Esq.
Fla. Bar № 1002905

# TAB 49

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

Case No. 9:25-cv-81197-DMM

DEFENSE DISTRIBUTED, a Texas corporation; DD FOUNDATION, LLC, a Texas limited liability company; and, DEFCAD, INC., a Texas corporation,

Plaintiffs,

v.

JOHN ELIK, individually; MATTHEW LAROSIERE, individually; ALEXANDER HOLLADAY, individually; PETER CELENTANO, individually; JOSH KIEL STROKE, individually; and JOHN LETTMAN, individually, and Zackary Clark, individually

Defendants.
______________________________________/

# SECOND AMENDED COMPLAINT

Plaintiffs, Defense Distributed, DD Foundation, LLC, and DEFCAD, Inc. ("DEFCAD"), file this Second Amended Complaint against Defendants, Messrs. John Elik, Matthew Larosiere, Alexander Holladay, Peter Celentano, Josh Kiel Stroke, and John Lettman, and Zackary Clark, and allege:

## Introduction.

Defendants jointly operate a 3D gun file business conducted through MAF Corp., which is informally known as "The Gatalog". The Gatalog/MAF Corp. is accessed at www.thegatalog.com. The Gatalog/MAF Corp. is the RICO enterprise, and is a direct competitor of Plaintiff, DEFCAD.

Defendants conspired to make false statements about DEFCAD and to steer them \to their rival business, The Gatalog/MAF Corp. These statements include: (1) DEFCAD has been hacked

and its customers' names "dumped" and/or "doxed" (publicized); and, (2) DEFCAD hosts its website in Iran. Both statements influence 3D gun customers, because these customers generally shun government interference, avoid public exposure, and are fiercely patriotic. These false statements have caused DEFCAD to lose profits.

DEFCAD seeks damages pursuant to civil RICO, the Lanham Act and Florida law. In addition, DEFCAD seeks preliminary and permanent injunctive relief preventing Defendants from making further false statements to drive business to The Gatalog/MAF Corp.

**Parties, Jurisdiction & Venue.**

1. Plaintiff, Defense Distributed, is a Texas corporation with its principal place of business in Texas.

2. Plaintiff, DEFCAD, Inc., is a Texas corporation with its principal place of business in Texas.

3. Plaintiff, DD Foundation, LLC, is a Texas limited liability company whose members reside in Texas.

4. Defendant, Matthew Larosiere, is a citizen and resident of Florida.

5. Defendant, John Elik, is a citizen and resident of Illinois.

6. Defendant, Alexander Holladay, is a citizen and resident of Florida.

7. Defendant, Peter Celentano, is a citizen and resident of New York.

8. Defendant, Josh Kiel Stroke, is a citizen and resident of Arizona.

9. Defendant, John Lettman, is a citizen and resident of Pennsylvania.

10. Defendant, Zackary Clark is a citizen and resident of South Carolina.

11. The Court has subject matter jurisdiction of the RICO and Lanham Act claims as federal questions, 28 U.S.C. § 1331, and from RICO's civil damages provisions, 18 U.S.C. §§ 1964(c) and 1965(a).

12. This Court also has diversity jurisdiction under 28 U.S.C. § 1332(a), and the amount in controversy exceeds $75,000, exclusive of interest and costs, and Plaintiffs (citizens of Texas) are completely diverse from each Defendant (citizens of Florida, Illinois, New York, Arizona, Pennsylvania and South Carolina).

13. This Court has supplemental personal jurisdiction over Defendants for the Florida claims because they arise from the same common nucleus of facts as the RICO and Lanham Act claims.

14. Venue is proper here, pursuant to 18 U.S.C. §1965(a), because Defendant, Mr. Larosiere, resides in this District. Jurisdiction and venue are proper as to the other Defendants because they conspired with Mr. Larosiere to violate RICO, and can thus be served outside this District pursuant to §1965(b). Moreover, the "ends of justice" support adjudicating all members of this RICO conspiracy together in this action.

**Facts Common to All Counts.**

15. Plaintiffs share the income produced by DEFCAD's legal file sharing business, through online sales, mainly generated through their website: www.defcad.com.

16. Defendants are active in the 3D gun market and came together to challenge DEFCAD's position in this growing industry.

17. Defendants began their plot to damage DEFCAD in 2019 when Defendant, Mr. Elik, reached out to Mr. Cody Wilson, owner and principal of DEFCAD, to collaborate in firearms software and hardware development.

18. Defendant, Mr. Elik, visited DEFCAD's business facility in Austin, Texas.

19. DEFCAD and Defendant, Mr. Elik, reached an agreement in 2019, whereby DEFCAD would pay him a fee for each customer he brought to DEFCAD's website, which was then being prepared for launch.

20. In March 2020, DEFCAD launched www.defcad.com.

21. After March 2020, DEFCAD made monthly payments to Defendant, Mr. Elik, pursuant to the agreement, until August 2022.

22. At that time, Defendant, Mr. Elik became associated with The Gatalog, and its affiliated business, MAF Corp., a Florida corporation ("MAF"), which sells merchandise used in conjunction with The Gatalog's 3D gun files.

23. Defendant, Mr. Elik then became hostile and demanded that if DEFCAD did not remove certain files from its website, Gatalog would spread disinformation about DEFCAD.

24. Mr. Elik followed through on the threat, and in May 2023, by agreement with the other Defendants, his business partners began posting a "FEDCAD" meme — a graphic stating, "FRIENDS DON'T LET FRIENDS USE FEDCAD."

25. The ad perniciously tells potential DEFCAD customers DEFCAD should be known as "FEDCAD" because its database has been "hacked" and "dumped" multiple times, implying customers' identities and other personal information would be known to federal authorities and anti-gun activists who might harass them:




26. Defendants published and amplified this false meme across Reddit, Twitter (X), Facebook, and other social media forums, always in commercial contexts directing users to TheGatalog.com.

27. Defendant Celentano, by agreement with the Co-Defendants, repeatedly posted the "FEDCAD" meme on Reddit. His posts remain among the top search results for "DEFCAD" on Google, where he warned potential customers not to use DEFCAD and directed them instead to The Gatalog.

28. Defendant Holladay, an affiliate of The Gatalog, per agreement with the co-Defendants, embedded the "FEDCAD" meme in his own business's "Quick Start Guide" for 3D printing firearms, publishing it on www.ctrlpew.com, in December 2023. It also directs readers to "just say no" to FEDCAD and its "affiliate sites," which include Defense Distributed.

29. In late 2024, Defendant Lettman repeatedly posted content on X indicating DEFCAD was hosted in Iran.

30. In April 2024, the meme was pinned to the top of the r/fosscad Reddit forum — a community of over 100,000 people in the 3D gun marketplace — ensuring maximum exposure of the false message DEFCAD was unsafe and compromised.

31. Defendant, Josh Stroke, through the persona "Zona", funded through Larosiere's MAF Corp., reposted the "FEDCAD" meme across dozens of online channels in 2023 and 2024.

32. In the 3D gun marketplace it is well known consumers shun publicity and government scrutiny. Thus, when such allegations are made falsely, they are malicious, i.e., designed to destroy the seller-customer relationship.

33. Defendants targeted the meme at DEFCAD's partners, including non-parties, Messrs. Barret Collier and Eric Goldhaber, who ceased working with the company after receiving the negative misinformation.

34. Defendants' false allegations of DEFCAD being hacked, its data dumped, and being hosted in illegal territories like Iran, have damaged DEFCAD by significantly decreasing DEFCAD's revenue and profits.

35. Moreover, Defendants continued and continue to make the same false allegations on the internet repeatedly since May 2023.

36. On December 31, 2025, Defendant Clark, who may have joined the conspiracy later, posted the same FEDCAD meme using the handle "@Armed Joy", on X, likely with the approval of Larosiere:



37. Plaintiffs understand Defendant, Mr. Clark, is affiliated with MAF Corp., the RICO enterprise, as an employee or independent contractor, and joined the conspiracy knowing and approving of the co-conspirators actions taken against DEFCAD.

38. In particular, Plaintiffs understand Defendant, Mr. Clark, is the editor of an online show sponsored by MAF Corp., called "Fuddbusters", for which Defendant, Mr. Larosiere, is the host:




**Fuddbusters Channel Intro**

10,141 views • 4 years ago

Welcome to the channel! If you want to support Fuddbusters, check out these options:

https://www.patreon.com/FuddBusters
https://www.subscribestar.com/fuddbus...

Thank you for coming, hope to see you soon!

39. In addition, Defendant Clark promotes the Gatalog online:


Armed Joy
@ArmedJ0y

Random shitpost goes viral for no reason overnight. Anyways... Learn how to 3D print a gun today! Go to the Gatalog(dot)com! https://t.co/mY4sThP8qf

Jan 11, 2026, 7:04 AM

40. Each use of the internet to spread damaging disinformation violates the federal wire fraud statute, 18 U.S.C. § 1343, which prohibits "schemes to defraud" involving interstate wires, with "wires" including social media posts used in a scheme to defraud.

41. DEFCAD estimates Plaintiffs have lost at least $1,000,000 in profits as a direct result of the false statements Defendants have made online, detailed above.

**COUNT I- CONSPIRACY TO VIOLATE RICO**

42. Plaintiffs reincorporate Paragraphs 1 to 41 above, as if fully restated herein.

43. Defendants' scheme to destroy DEFCAD, to which all the Defendants agreed to undertake, required an ongoing series of wire fraud violations.

44. The scheme is intended to damage Plaintiffs by taking away customers through false statements, and Defendants' wire fraud crimes have done so.

45. Each Defendant is a "person" as defined by 18 U.S.C. §1961(3).

46. Wire fraud is made a form of "racketeering activity" by RICO as defined by 18 U.S.C. § 1961(1)(B).

47. The ongoing wire fraud Defendants agreed to commit, and committed, constitutes a "pattern of racketeering activity" as defined by 18 U.S.C. § 1961(5).

48. This is both a "closed" pattern, as it has occurred over a lengthy period, and an "open" pattern, as it will not cease without judicial intervention.

49. Defendants' pattern of wire fraud has been committed through MAF, which Defendant, Mr. Larosiere, owns.

50. At all times, the other Defendants followed Defendant, Mr. Larosiere's direction in carrying out their roles in the scheme through this Florida corporation, which is a RICO enterprise as defined by 18 U.S.C. § 1961(4).

51. MAF affects interstate commerce through contracts with customers in various states to sell gun parts and through its internet activity.

52. Thus, by agreeing to the scheme to be carried out through the MAF enterprise, each Defendant conspired to violate 18 U.S.C. §1962(c), which makes it illegal for any person "employed by or associated with" an enterprise to commit a pattern of racketeering activity through the enterprise.

53. Thus, each Defendant has violated 18 U.S.C. §1962(d), which prohibits conspiracies to violate 1962(c).

WHEREFORE, Plaintiffs request a judgment be entered against Defendants, jointly and severally, for three times their damages, prejudgment interest, attorneys' fees, costs, and any other relief the Court deems proper pursuant to 18 U.S.C. §1964(c), and enter preliminary and permanent injunctions against Defendants barring them from continuing to make allegations against Plaintiffs to the effect any of them has been hacked and/or that its customers identities are being made public, pursuant to 18 U.S.C. §1964(a).

**COUNT II- VOLATION OF THE LANHAM ACT, (FALSE ADVERTISING)**

54. Plaintiffs incorporate Paragraphs 1-41 above, as if fully restated herein.

55. Defendants violated the Lanham Act by engaging in false or misleading representations of fact in commercial advertising and promotion, including but not limited to: (a) Branding DEFCAD as "FEDCAD" and asserting that DEFCAD's database had been "hacked and dumped multiple times"; (b) Falsely claiming that DEFCAD "doxxes" its customers by providing personal information to federal authorities and anti-gun activists; (c) Alleging that DEFCAD colluded with gun-control groups and federal authorities; (d) Disseminating these statements through the "FEDCAD" meme and related graphics across social media platforms, including

Reddit, Twitter (X), Facebook, and other online forums; and, (e) Publishing the meme in commercial contexts intended to divert customers from DEFCAD to The Gatalog and related enterprises.

56. These statements are false or misleading as to material facts and are likely to deceive, had the tendency to deceive, or actually deceived consumers, as alleged herein.

57. Defendants made these statements knowingly and with the intent to harm DEFCAD and divert business to their own competing enterprises, in part, because in the context of this market for products, the Defendants deception was likely to influence purchasing decisions.

58. Defendants' false advertising directly and proximately caused actual damages to Plaintiffs, including lost revenue, lost customers, lost goodwill, and reputational harm.

59. Defendants have been unjustly enriched by profits obtained as a result of their false advertising.

60. Plaintiffs have no adequate remedy at law, as the false and misleading statements continue to be disseminated online, causing ongoing harm to DEFCAD's business.

WHEREFORE, Plaintiffs request judgment against Defendants for the amount of their damages, disgorgement of their profits obtained from the violations of the Lanham Act detailed above, attorneys' fees and costs pursuant to 15 U.S.C. §1117. Plaintiffs also seek preliminary and permanent injunctions against Defendants to stop their false advertising pursuant to 15 U.S.C. §1116.

## COUNT III – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS UNDER FLORIDA LAW (*Against Solely the Florida Defendants)*

61. Plaintiffs incorporate Paragraphs 1-41 above, as if fully set forth herein.

62. Defendants, Messrs. Larosiere and Holladay, are residents of Florida, and this Court is directed solely to those to Defendants.

63. Plaintiffs had advantageous business and contractual relationships with customers, vendors, and partners, including, but not limited to: customers and potential customers navigating or seeking to navigate the DEFCAD site; and creators who host files and designed on the DEFCAD site, like Messrs. Barret Collier and Eric Goldhaber, who hosted their files and designs on the DEFCAD site and generated income for DEFCAD when customers purchased their filed and designs.

64. Defendants, Messrs. Larosiere and Holladay, had knowledge of these relationships by virtue of their own participation in the same 3D-gun-file marketplace and through prior dealings and communications with DEFCAD and its representatives. Defendants specifically targeted Plaintiffs' customers and business partners with the intent of disrupting and terminating those relationships.

65. Defendant Larosiere, acting through his Florida corporation MAF Corp., and Defendant Holladay, acting through his affiliate website ctrlpew.com, intentionally and without justification interfered with these relationships by publishing and amplifying the false "FEDCAD" meme and related statements that (a) DEFCAD had been "hacked and dumped multiple times," (b) DEFCAD "doxxed" its customers, and (c) DEFCAD's servers were hosted in Iran.

66. These false statements were made in commercial contexts, including Reddit, Twitter (X), and Florida-based online forums, with the intent and foreseeable effect of deterring DEFCAD's customers and partners from doing business with Plaintiffs and redirecting them to The Gatalog and MAF Corp.

67. Interviews with former customers of the DEFCAD site confirmed multiple customers specifically stopped doing business with DEFCAD through its site because of the FEDCAD meme and related misinformation propagated by Defendants.

68. In addition, Messrs. Collier and Goldhaber stopped hosting their files and designs on the DEFCAD site because of the FEDCAD meme and related misinformation propagated by Defendants.

69. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered identifiable losses, including the termination of business relationships with Collier and Goldhaber, who refuse to host their designs and files on Plaintiffs' site due to the Defendants' misinformation campaign. Plaintiffs have also suffered diminished customer goodwill, lost sales and profit, and substantial reputational and financial harm in an amount exceeding $1 million.

WHEREFORE, Plaintiffs request judgment against Defendants for compensatory damages, costs, and any other and further relief the Court deems proper.

February 6, 2026.

TAFT STETTINIUS & HOLLISTER LLP
525 Okeechobee Blvd., Suite 900
West Palm Beach, FL 33401
Tel. (561) 655-2250
Email: gweiss@taftlaw.com
*Attorneys for Plaintiffs*

By: _s/ GREGORY S. WEISS_
GREGORY S. WEISS
Florida Bar No. 163430

And

FOSTER PC
Howard Foster, Admitted *Pro Hac Vice*
155 N. Wacker Dr., Suite 4250
Chicago, IL 60606
312-726-1600
hfoster@fosterpc.com

**CERTIFICATE OF SERVICE**

I hereby certify that on February 6, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically.

*s/* GREGORY S. WEISS
GREGORY S. WEISS, ESQ.
Florida Bar No. 163430

**SERVICE LIST**:

**Matthew Larosiere, Esq.**
Law Offices of Matthew Larosiere
6964 Houlton Circle
Lake Worth, FL 33467
Tel. (561) 452-7575
Larosiere@gmail.com
*Attorney for Defendants, John Elik, Alexander Holladay, Josh Kiel Stroke and John Lettman*

**Zachary Z. Zermay, Esq.**
Zermay Law, P.A.
1200 Fourth Street, #1102
Key West, FL 33040
Tel. (305) 767-3529
*Attorney for Defendant, Matthew Larosiere*

# TAB 56

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE №: 9:25-cv-81197

DEFENSE DISTRIBUTED, a Texas corporation; DD FOUNDATION, LLC, a Texas limited liability company; and, DEFCAD, INC., a Texas corporation,

*Plaintiffs*,

v.

JOHN ELIK; MATTHEW LAROSIERE; ALEXANDER HOLLADAY; PETER CELENTANO; JOSH KIEL STROKE;

and JOHN LETTMAN,

*Defendants*.

_______________________________________/

**DEFENDANTS ELIK, LAROSIERE, HOLLADAY, AND STROKE'S JOINT MOTION TO DISMISS THE COMPLAINT, AND IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**

## TABLE OF CONTENTS

**DEFENDANTS ELIK, LAROSIERE, HOLLADAY, AND STROKE'S JOINT MOTION TO DISMISS THE COMPLAINT, AND IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT** ........ i

**I. THIS COURT LACKS PERSONAL JURISDICTION OVER ELIK, STROKE, AND LETTMAN** ........ 2

A. There is no personal jurisdiction under RICO ........ 3

B. There is no personal jurisdiction for the remaining claims ........ 4

**II. PLAINTIFFS HAVE NOT STATED A SINGLE CLAIM UPON WHICH RELIEF CAN BE GRANTED** ........ 5

A. The "Civil RICO" Claims ........ 5

B. The "Lanham Act" Claim ........ 8

C. The Florida Tortious Interference Claim ........ 9

**III. THE CLAIMS ARE BARRED BY THE SINGLE ACTION RULE AND STATUTE OF LIMITATIONS** ........ 10

**IV. THE COMPLAINT IS AN IMPERMISSIBLE SHOTGUN PLEADING** ........ 13

A. The Complaint is a type 1 shotgun pleading ........ 15

B. The Complaint is a type 2 shotgun pleading ........ 16

C. The Complaint is a type 4 shotgun pleading ........ 17

**V. IN THE ALTERNATIVE, IF ANY CLAIMS SURVIVE, THEY MUST BE MORE DEFINITELY STATED** ........ 17

**VI. CONCLUSION** ........ 18

**CERTIFICATE OF SERVICE** ........ 19

Defendants John Elik, Matthew Larosiere, Alexander Holladay, Josh Kiel Stroke, and John Lettman respectfully move to dismiss the Second Amended Complaint. As explained below, the pleading suffers from fundamental defects that preclude any of the claims from proceeding against any Defendant. This Motion is brought under Rules 12(b)(2), 12(b)(6), and 12(e). While the Second Amended Complaint repeats most of the same legal theories and core allegations, it adds a new defendant (Clark) and several new allegations, and now explicitly lumps non-party MAF Corp. with "The Gatalog." The defects identified below remain.

**INTRODUCTION AND SUMMARY OF ARGUMENTS**

The Second Amended Complaint attempts to transform internet speech into federal racketeering, federal false-advertising, and state tort liability. Plaintiffs' theory appears to be that the mere posting of an image and the discussion of Plaintiffs' business practices on public forums, is sufficient to constitute wire fraud, Lanham Act advertising, and actionable interference. The premise is untenable as a matter of law. The pleading fails to establish personal jurisdiction against several out-of-state defendants, fails to meet the most basic requirements of Rule 8 and Rule 9(b), and is barred by Florida's §770 doctrine governing defamation-equivalent claims.

Plaintiffs attempt to base jurisdiction on nothing more than the allegation that online statements were made somewhere on the internet. Plaintiffs attempt to avoid this defect by invoking RICO's nationwide service provision, but a jurisdictional theory premised on RICO necessarily fails when the RICO claim is facially deficient. As explained in detail below, the RICO allegations do not come close to stating a

plausible claim: they do not plead predicate acts with the particularity required by Rule 9(b); they do not plead a distinct enterprise; they do not plead continuity; they do not plead a cognizable RICO injury to business or property; and they do not plead proximate causation consistent with *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006). Because Plaintiffs fail to allege a valid RICO claim, the nationwide service provision of §1965(b) cannot be invoked to create jurisdiction.

The defects do not end with jurisdiction. Even if jurisdiction existed, every substantive claim in the Second Amended Complaint would fail on its own terms. The RICO claim is an archetypal misuse of the statute. The Lanham Act claim fares no better: nothing alleged constitutes "commercial advertising or promotion," nor do Plaintiffs plausibly allege competition, material deception, or any injury cognizable under §1125(a). The tortious interference claim is devoid of factual content, naming two individuals without any meaningful description of the relationship, any act of interference, or any causal connection to Defendants. To the extent it is based on allegedly false statements, it is barred by Florida's Single Action Rule, by §770.01's notice requirement, and by §770.07.

Finally, the pleading is a textbook shotgun complaint. It indiscriminately lumps multiple defendants together, incorporates every preceding allegation into every count, and fails to identify which defendant supposedly committed which act. For all of these reasons, the Complaint must be dismissed.

## ARGUMENT

### I. THIS COURT LACKS PERSONAL JURISDICTION OVER ELIK, STROKE, AND LETTMAN

When assessing a dismissal for lack of personal jurisdiction, Courts "first determine whether the applicable statute potentially confers jurisdiction over the defendant." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 199 F.3d 935, 942 (11th Cir. 1997). Jurisdiction over a non-resident defendant may be based upon a federal statute or a state long-arm statute. If a basis exists for granting jurisdiction, the court must then "determine whether the exercise of jurisdiction comports with due process." *Id.*

Supporting affidavits attached to this motion confirm that the nonresident defendants do not live in the State of Florida, and do not conduct any business in the State of Florida.

Plaintiffs assert claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), the Lanham Act, and other claims. The Eleventh Circuit has held that a potential statutory basis for jurisdiction may exist under RICO because it contains a nationwide service-of-process provision. *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 847-48 (11th Cir. 1988). The other asserted statutes lack such provisions, and thus their jurisdictional analysis must be based on the state's long-arm statute. On this, the jurisdictional analysis is different for the RICO claim and all other claims.

A. <u>There is no personal jurisdiction under RICO</u>

Even where the Eleventh Circuit has recognized a potential statutory basis for personal jurisdiction under RICO, Plaintiffs can only take advantage of it if its "asserted federal claim is not wholly immaterial or insubstantial." *Republic of Panama*, 119 F.3d at 941-2. "In other words, whether a basis exists for exercising

personal jurisdiction under RICO depends on whether [Plaintiffs] ha[ve] stated a 'colorable' RICO claim. If [Plaintiffs] ha[ve] not stated a colorable claim, we do not address the applicable due-process requirements." *Courbain v. Scott*, 596 Fed.Appx. 729 at 732 (11th Cir. 2014).

Similar to the complaint in *Courbain*, Plaintiffs here "make[] broad allegations" but "do[] not connect these allegations to any predicate act as defined by 18 U.S.C. §1961." *Id.* at 733. The deficiencies in Plaintiffs' pleading are more thoroughly argued *infra*, but no jurisdiction exists under RICO because Plaintiffs did not state a "colorable" RICO claim, and even if it did, personal jurisdiction would not comport with due process, for the same reasons the other claims do not.

B. <u>There is no personal jurisdiction for the remaining claims</u>

Because the remaining claims are not based on laws containing a nationwide service-of-process provision, we look to the long-arm statute of Florida to determine whether it authorizes exercising jurisdiction over the defendants. *See Delong Equip. Co.*, 840 F.2d at 847–48; Fed.R.Civ.P. 4(e). Under the Florida long-arm statute, specific personal jurisdiction exists if, among other things, an individual commits a tortious act within Florida, an individual carries on business within the state, or the individual injures persons within Florida due to an act or omission outside Florida if, at the time of injury, (1) the defendant was engaged in solicitation or service activities within Florida or his services were used within Florida in the ordinary course of business. Fla. Stat. § 48.193(1)(a). The statute also provides for general jurisdiction over a defendant "who is engaged in substantial and not isolated activity" in Florida. Id. § 48.193(2). Florida's Supreme Court has held that economic injury,

unaccompanied by physical injury or property damage, is insufficient to subject a non-resident defendant to personal jurisdiction under § 48.193(1)(a) 6. *See Aetna Life & Cas. Co. v. Therm–O–Disc, Inc.*, 511 So.2d 992, 994 (Fla.1987) (concerning Fla. Stat. § 48.193(1)(f), which later became § 48.193(1)(a) 6).

Plaintiffs have made no jurisdictional allegations against the nonresident Defendants whatsoever. There are no factual allegations underlying any relationship to the forum state, likely because, as shown by the attached affidavits, no jurisdictionally relevant connection to this state exists for any of the nonresident Defendants.

## II. PLAINTIFFS HAVE NOT STATED A SINGLE CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A. The "Civil RICO" Claims

Plaintiffs' RICO count is the centerpiece of the Second Amended Complaint and the jurisdictional anchor upon which Plaintiffs attempt to premise their roping of individuals all over the country to a faraway forum. It therefore demands close scrutiny. Plaintiffs have not pled a single RICO element. The theory advanced—a kind of defamation-by-RICO—has been rejected by every circuit to consider similar attempts. The claim not only fails Rule 8, but independently fails Rule 9(b), fails the substantive requirements of §§ 1962(c) and (d), and fails to allege any cognizable RICO injury or proximate causation. At its core, Plaintiffs' RICO case depends upon treating online criticism as "wire fraud," and treating a nebulous reputational harm as a federal racketeering injury. That is not the law.

Wire fraud, as it could pertain to a RICO claim, covers "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." 18 U.S.C. § 1343. In this context, the scheme must relate to actually taking money or property from the Plaintiff. *Kousisis v. United States* 605 U.S. 114 (2025). As with many of Plaintiff's claims, circumstances constituting fraud must be stated with particularity. Fed. R. Civ. P. 9(b).

Count I alleges a civil RICO conspiracy under 18 U.S.C. § 1962(d), predicated on alleged violations of § 1962(c). To do so, Plaintiffs must allege that Defendants conducted or participated in the conduct of an enterprise's affairs through a pattern of racketeering activity that caused injury to business or property. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Predicate acts of racketeering must be specifically alleged, and where the predicate is wire fraud, Rule 9(b) requires particularity as to the "who, what, when, where, and how." *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316–17 (11th Cir. 2007).

Plaintiffs' pleading does none of this. Instead, it simply declares that "[e]ach use of the internet to spread damaging disinformation violates the federal wire fraud statute" (SAC ¶40), and that Defendants' alleged meme-posting therefore constitutes

a "pattern of racketeering activity" somehow carried out through non-party MAF. (SAC ¶¶42–48). This is not a good-faith attempt to plead racketeering.

First, no predicate act is plausibly alleged. Online memes are not "schemes to defraud" under 18 U.S.C. § 1343.

Second, the enterprise allegations are facially defective. Conclusory invocations of an "enterprise" cannot substitute for facts showing a distinct legal entity or association-in-fact. *Pelletier*, 921 F.2d 1518–22. The Second Amended Complaint retains the same bare enterprise allegation—that Larosiere "acting through" MAF and/or "the Gatalog" is the enterprise—without any structure, hierarchy, roles, or acts attributable to an "enterprise" distinct from the alleged actors. See (SAC ¶¶ 65–68).

Third, there is no "pattern of racketeering activity." Plaintiffs rely on episodic internet posts in 2023 and 2024 (SAC ¶¶24–41). That does not satisfy either closed-ended continuity (no substantial duration) or open-ended continuity (no threat of future racketeering). *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357–59 (11th Cir. 2018). Allegations that Defendants mocked Plaintiffs online—even if repeated—do not transform criticism into organized crime. Plaintiffs' mere recitation, without any factual allegations, that the supposed pattern is "both closed and open" does not cure the defect. (SAC ¶ 48.)

Fourth, the claim is an improper attempt to repackage reputational and business grievances as RICO. In *Freites*, the Court dismissed nearly identical RICO allegations where "Defendants' primary means of carrying out the conspiracy was

through 'defamation' which involved 'Defendants repeatedly disseminat[ing] false statements about Plaintiffs via emails, social media postings, and online videos.'" 2025 WL 1425491, at *6. The same defect is present here: Plaintiffs allege reputational injury and customer loss from public statements, not property loss caused by criminal fraud.

Finally, the conspiracy claim under § 1962(d) fails because there is no substantive violation or agreement to commit a substantive violation alleged *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1068 (11th Cir. 2007) ("[A]bsent any valid predicate acts, [the plaintiff] cannot state a claim for RICO violations.")

RICO requires the existence of an "enterprise," which must be distinct from the "person" alleged to have conducted its affairs and must exhibit structural features including a purpose, relationships among associates, and longevity. *Boyle v. United States*, 556 U.S. 938, 946 (2009). Conclusory assertions that Defendants "acted through" an entity do not satisfy this requirement.

B. The "Lanham Act" Claim

Count II alleges false advertising under § 43(a)(1)(B) of the Lanham Act. To do so, Plaintiffs must allege that Defendants made false or misleading statements of fact in "commercial advertising or promotion," that such statements actually deceived or had the tendency to deceive consumers in a material way, and that the deception caused injury. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002). The Lanham Act does not federalize defamation; it is aimed at false claims made in commercial advertising. The Complaint falls far short. Plaintiffs allege that, in online posts, Defendants branded DEFCAD as "FEDCAD,"

accused it of being "hacked and dumped," and claimed it "doxxes" customers and colludes with authorities. (SAC ¶¶54–60). That is not a Lanham Act case.

First, the challenged speech is not "commercial advertising or promotion." A meme posted on the internet is not an advertising campaign. Not only are the posts non-commercial, nothing beyond the *ipse dixit* assertions of Plaintiffs credibly allege that any party is actually in competition or even the same industry as any other party, hence the vague way Plaintiffs refer to the imagined "3D gun market" they claim Defendants "are active" in. (Doc. 49 ¶ 15). Defendants cannot comprehend how Plaintiffs "compete" with them.

Second, the alleged statements are criticism and opinion. *See Boule v. Hutton*, 328 F.3d 84, 90–91 (2d Cir. 2003) (Lanham Act does not cover reputational harm caused by noncommercial commentary).

Third, the Complaint alleges no facts showing consumer deception or how the nonexistent deception was material. Unburdened by evidentiary support, Plaintiffs recite that consumers "shun publicity" and that certain partners ceased working with them, but they allege no facts establishing that consumers were deceived, or materially influenced.

C. The Florida Tortious Interference Claim

Under Florida law, a claim for tortious interference requires: (1) the existence of a business relationship under which the plaintiff has legal rights; (2) the defendant's knowledge of that relationship; (3) the defendant's intentional and unjustified interference with it; and (4) damages. The Second Amended Complaint has none of this.

Plaintiffs' allegations in ¶¶56–62 fail every element. They identify no legally protectable business relationships, only vaguely alluding to "customers and potential customers" and two non-party individuals. (SAC ¶63). Plaintiffs then assert in conclusory fashion that "the Florida Defendants" interfered by "spreading false statements" (SAC ¶65). But the Complaint pleads no act of any Floridian tied to any particular customer, contract, or transaction. Instead, it merely recycles generalized, group-pled allegations.

Plaintiffs' reliance on group labels and speculation cannot substitute for concrete allegations that any Floridian individually interfered with an identifiable relationship. The complaint identifies no agreement, document, message, or transaction involving Collier or Goldhaber at all.

## III. THE CLAIMS ARE BARRED BY THE SINGLE ACTION RULE AND STATUTE OF LIMITATIONS

Very analogous to *Freites*, all of Plaintiffs' claims are premised on the idea that the "Fedcad meme" was false. As articulated in Defendant's Rule 11 Motion, Plaintiffs cannot credibly contests that Defendants are authors and journalists and thus eligible for §770 protection.

Florida's Legislature has long recognized the need to cabin defamation-style litigation. § 770 imposes clear statutory prerequisites and limitations on such suits: (1) § 770.01 requires pre-suit notice to the defendant at least five days before filing; (2) § 770.05 bars multiple suits arising from the same publication and limits to a single venue; and (3) § 770.07 provides that the cause of action accrues upon first publication.

A. Plaintiffs Failed to Provide §770.01 Notice

Plaintiffs admit that Defendants are authors and therefore media defendants. Plaintiffs have not alleged, and cannot show, compliance with § 770.01's notice requirement.

B. The Single Action Rule Bars These Claims

All of Plaintiffs' claims are predicated on allegedly false statements published online. (SAC ¶¶61–69). These are defamation-style allegations, and **stem from actual defamation allegations previously brought and abandoned,** regardless of how Plaintiffs label them. As the *Frietes* court explained in a similar situation:

> In Florida, a single publication gives rise to a single cause of action. This is what is known as the Single Publication/Single Action Rule, and it precludes a plaintiff from asserting multiple causes of action when they arise from the same publication [or publications] upon which plaintiff's defamation claim is based. The rule is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm. Moreover, the underpinnings of the single-action rule make clear that it does not matter whether the defamation claim fails, succeeds, or is not brought at all. **If the underlying facts are premised on false and defamatory publications, the plaintiff is bound by the single action rule and cannot avoid the limitation by engaging in semantic exercises or strategic gamesmanship by asserting various additional claims**.

*Freites v. Medina*, No. 25-CV-20465, 2025 WL 1425491, at *5 (S.D. Fla. May 16, 2025), appeal dismissed sub nom. *Freites C. v. Medina*, No. 25-12067-E, 2025 WL 2638566 (11th Cir. Aug. 27, 2025). As *Freites* makes clear, it does not matter whether their claim is styled on defamation. What matters is that "the underlying facts are premised on false and defamatory publications." *Id.*

The defamation-equivalency is manifest from a quick look at Plaintiffs' abandoned Middle District litigation. In November of 2024, Plaintiff Defense

Distributed filed a claim under the Lanham Act, Digital Millennium Copyright Act, for Florida Tortious Interference, for Florida Trade Libel, and the Florida Deceptive and Unfair Trade Practices Act, all relating to the same publications. *Larosiere v. Wilson*, 6:24-cv-1629 (M.D. Fla. ___) (Doc. 29).

There, speaking of the same "FEDCAD meme," Plaintiffs stated that **the very same** Defendants "regularly used interstate wire communications, including social media, email, and messaging platforms, to disseminate **false and defamatory** statements about Defense Distributed…all with the intent to deceive and defraud." (Larosiere v. Wilson, Doc. 29 ¶ 154) (emphasis added). *Cf.* (SAC ¶ 40) "Each use of the internet to spread **damaging disinformation** violates the federal wire fraud statute" (emphasis added). This is the exact conduct *Gannett* foreclosed. *Gannett Co., Inc. v. Anderson*, 947 So. 2d 1, 8–9 (Fla. 1st DCA 2006) (plaintiff could not avoid defamation statute of limitations by amending claim from describing publication as "false and defamatory" to one "worded in such a way to portray the plaintiff in a false light." (cleaned up).

In so far as showing that all of the claims are based on the same publication, the Plaintiffs tell us this, as the Complaint's counts cite all the same allegations. (Doc. 49 at ¶ 42, 54, 61). This makes application of the single action rule obvious.

§ 770.05, Fla. Stat. has been understood to limit defamation-style cases "to only **one** suit in **one** chosen venue to avoid multiple suits upon the one cause of action." *Perdue v. Miami Herald Pub. Co.* 291 So.2d 604, 606 (Fla.1974) (emphasis added). In other words, to prevent Plaintiff's exact conduct.

What's more, the single action rule forbids Plaintiff's slipshod attempts to contort their defamation claim into three separate counts, each "explicitly speak[ing] about…'false accusations,' and damaging reputations.'" *Frietes* at *5. *Frietes* concerned postings to Twitter and YouTube, like the instant case. All three causes of action refer to the same publications. Thus, they cannot be brought consistent with the Single Action rule.

C. The Claims Are Outside The Statute of Limitations Under §770.07

§ 770.07's accrual rule means that any claim sounding in libel, slander, or defamation, has the statute of limitations run from the date of first publication. Plaintiff's theory of liability is based on statements first published as early as 2023. (SAC ¶¶24–41). May 15, 2023, was 2 years, 4 months, and 10 days before the date of filing. This is beyond the two years afforded by § 95.11, Fla. Stat. Under §770.07, all causes of action stemming from the publication accrued at first publication; it cannot be revived by repetition.

Additionally, Plaintiffs, Texas companies, necessarily allege damages in Texas by bringing RICO claims. Florida's borrowing statute provides that "[w]hen the cause of action arose in another state or territory of the United States, or in a foreign country, and its laws forbid the maintenance of the action because of lapse of time, no action shall be maintained in this state." § 95.10, Fla. Stat. *Middleton v. Hollywood Reporter, LLC*, 686 F. Supp. 3d 1272, 1275 (S.D. Fla. 2023). Texas' statute of limitations for libel is one year, and thus all claims stemming from the publication are time barred under either reading.

**IV.THE COMPLAINT IS AN IMPERMISSIBLE SHOTGUN PLEADING**

Defendants move to dismiss the complaint in its entirety under 12(b)(6) because it is an impermissible shotgun pleading. A shotgun pleading is a complaint that violates either Fed. R. Civ. P. 8(a)(2), 10(b), or both. *Weiland v. Palm Beach Cnty. Sheriff's Off.* 792 F.3d 1313, 1320 (11th Cir. 2015). 8(a)(2) requires the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10(b) mandates a party "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

These rules ensure a pleader "present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading", as well as for the benefit of the court charged with determining "which facts support which claims" and "whether the plaintiff has stated any claims upon which relief can be granted." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021). Because shotgun pleadings are "calculated to confuse the 'enemy,' and the court," they fail to state a claim and are often disposed of on a 12(b)(6) motion. *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520 at 1544 n.14 (Tjoflat, J., dissenting).

The Eleventh Circuit has "identified four...categories of shotgun pleadings." *Weiland*, 792 F.3d at 1321. These consist of 1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before it and the last count to be a combination of the entire complaint"; 2) a complaint "replate with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; 3) a

complaint which fails to separate each cause of action or claim for relief into a different count; and 4) a complaint that "asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.". *Barmapov*, 986 F.3d 1325 (quoting *Weiland*, 792 F.3d at 1321). The complaint fits into three of the four categories of prohibited shotgun pleading.

A. The Complaint is a type 1 shotgun pleading

A Type 1 shotgun pleading is one that "contains multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before it and the last count to be a combination of the entire complaint." *Id, see also Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 650 n. 22 (11th Cir.2010) (Tjoflat, J., concurring in the appeal, No. 07–13225, and dissenting in the cross-appeal, No. 07–13477) (finding "a typical 'shotgun' pleading" where "each count incorporated by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged were not material to the claim, or cause of action, appearing in a count's heading"); *PVC Windoors, Inc. v. Babbitbay Beach Constr.*, N.V., 598 F.3d 802, 806 & n. 4 (11th Cir.2010) (finding a "typical shotgun pleading" where the last of a complaint's ten counts "amounts to an amalgamation of all counts"); *Weissman v. Nat'l Ass'n of Sec. Dealers, Inc.*, 500 F.3d 1293, 1311 (11th Cir.2007) (en banc) (Tjoflat, J., dissenting) (stating that the practice of incorporating each count's allegations into successive counts is the "cardinal sin of 'shotgun' pleading").

The typical Type 1 shotgun pleading is deficient because each count includes irrelevant factual allegations and legal conclusions, calculated to confuse opposing counsel and the court, rather than articulate a basis of relief. Most commonly, a Type 1 shotgun pleading commits this "cardinal sin" by incorporating by reference all of a pleading's prior paragraphs until the last count comprises the entire lawsuit. *Weiland*, 792 F.3d at 1321.

The instant complaint commits the same sin through each count including all of the same paragraphs. (Doc. 49 at ¶ 42, 54, 61).

B. <u>The Complaint is a type 2 shotgun pleading</u>

A type 2 shotgun pleading, the "next most common type…is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *See, e.g., Chudasama v. Mazda Motor Corp*., 123 F.3d 1353, 1359 n. 9 (11th Cir.1997) (finding a shotgun pleading where "a reader of the complaint must speculate as to which factual allegations pertain to which count"); *Cramer v. Florida*, 117 F.3d 1258 at 1261 (11th Cir. 1997) (describing the complaint at issue as "a rambling 'shotgun' pleading that is so disorganized and ambiguous that it is almost impossible to discern precisely what it is that these appellants are claiming"); *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 164 (11th Cir.1997) (describing a complaint that "offered vague and conclusory factual allegations in an effort to support a multiplicity of discrimination claims leveled against 15 defendants" as a "prototypical 'shotgun complaint'"); Anderson v. Dist Bd. Of Trs. Of Cent. Fla. Mty. Coll., 77 F.3d 364 at 366 (11th Cir. 1996)

(complaint was "perfect example of 'shotgun' pleading in that it [was] virtually impossible to know which allegations of fact [were] intended to support which claim(s) for relief") (internal citation omitted).

The instant complaint is a Type 2 shotgun pleading in that its vague factual allegations are impossible to connect to any specific purported actions of any specific Defendant, and makes no distinction as to which alleged Defendant is alleged to have committed what specific acts, and what acts are relevant to what causes of action.

C. <u>The Complaint is a type 4 shotgun pleading</u>

The fourth type of shotgun pleading is one which commits "the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d 1323. Of note, the complaint says nothing concrete about Lettman, and identifies not a single independent action of Larosiere, exclusively "lumping" him with Holladay and non-party MAF Corp. Even where isolated acts are alleged for certain defendants, the counts still rely on group pleading and do not specify which defendant is liable under which element of which count.

In sum. each of the Counts is asserted against "Defendants." As such, Defendants cannot reasonably be required to respond.

## V. IN THE ALTERNATIVE, IF ANY CLAIMS SURVIVE, THEY MUST BE MORE DEFINITELY STATED

For all of the reasons explained *supra*, the fourteen-page strike suit is so vague and ambiguous that Defendants cannot reasonably prepare a response to it. It should

be dismissed in its entirety, but if it is not, it must be more definitely stated. Fed. R. Civ. P. 12(e).

## VI. CONCLUSION

The Complaint is due to be dismissed, and because Plaintiffs have brought these same claims in a different venue, they should be dismissed with prejudice.

Respectfully submitted,

DATED: February 23, 2026

*/s/ Gary C. De Pury*
Gary C. De Pury
Florida Bar No: 126588
Law Offices of Gary De Pury, P.A.
21035 Leonard Road
Lutz, Florida 33558
Tel: (813) 607-6404
Email: Gary@DePury.com
*Lead Counsel for Defendant Alex Holladay*

*/s/Matthew Larosiere*
Matthew Larosiere, Esq.
Fla. Bar. No. 1005581
The Law Offices of Matthew Larosiere
6964 Houlton Circle
Lake Worth, FL 33467
Email: Larosieremm@gmail.com
Tel: (561) 452-7575
*Lead Counsel for Defendants Elik, Stroke, and Lettman*

*/s/ Zachary Zermay*
Zachary Z. Zermay, Esq.
Fla. Bar № 1002905
*Zermay Law, P.A.*
3000 Coral Way Ste 1115
Coral Gables, FL 33145
Email: zach@zermaylaw.com
Tel: (305) 767-3529
*Lead Counsel for Defendant Matthew Larosiere*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on this 23rd day of February, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

*/s/ Zachary Z. Zermay*

Zachary Z. Zermay, Esq.
Fla. Bar № 1002905

# TAB 70

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

Case No. 9:25-cv-81197-Middlebrooks/Matthewman

DEFENSE DISTRIBUTED, a Texas corporation; DD FOUNDATION, LLC, a Texas limited liability company; and, DEFCAD, INC., a Texas corporation,

Plaintiffs,

v.

JOHN ELIK, individually; MATTHEW LAROSIERE, individually; ALEXANDER HOLLADAY, individually; PETER CELENTANO, individually; JOSH KIEL STROKE, individually; and JOHN LETTMAN, individually; ZACK CLARK, individually

Defendants.

_______________________________________/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AND IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**

Plaintiffs, Defense Distributed, DD Foundation, LLC and DEFCAD, Inc., file their Response in Opposition to Defendants Motion to Dismiss the Second Amended Complaint (SAC) and in the Alternative, for a More Definite Statement [D.E. 56], as follows:

## I. Introduction

Plaintiffs jointly operate a lawful business of selling access to 3D printable gun files under the tradename "DEFCAD."[1] Defendants are believed to own and operate a rival 3D gun business through a Florida corporation called MAF Corp. The SAC alleges that defendants conspired to

---

[1] "A 3D-printed firearm is a firearm that is partially or primarily produced with a 3D printer." Wikipedia, viewed March 5, 2026. This Response will refer to the Plaintiffs' business as DEFCAD for ease of reference.

publish damaging and false information about DEFCAD, namely that its customers' information was "hacked and dumped multiple times" on the internet, and that its website is hosted in Iran. These statements were published in the form of an internet meme reproduced in the SAC under the headline "FEDCAD." The use of the pun "FEDCAD" underscores the suggestion that DEFCAD is somehow aligned with federal authorities to the detriment of its customers even though its business is legal. And that innuendo was intended to scare potential customers away from DEFCAD. It has, to the tune of $1 million in lost profits.

The Motion is brought by all defendants except Mr. Celentano, who was defaulted for failure to answer or otherwise plead to the SAC.[2] The Motion seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(2), contending the Court lacks personal jurisdiction over non-residents Elik, Stroke and Lettman. But as the Eleventh Circuit has held, RICO's jurisdictional provision, 18 U.S.C. §1965(d), only requires that defendants have contact with the United States, not any judicial district. *Republic of Panama v. BCCI Holdings (Luxembourg)S.A.*, 119 F.3d 935, 942 (11th Cir. 1997).[3] Defendants seek to avoid this outcome by asserting the RICO claim is so feeble as to be "non-colorable." This argument fails.

---

[2] It should be noted that defendant Matthew Larosiere, in addition to operating the MAF business is also a lawyer. He is representing fellow defendants Elik and Stroke in this case - but not himself. Lawyers have frequently been named as defendants in RICO cases. *See, e.g., Handeen v. Lemaire*, 112 F.3d 1339, 1349 (8th Cir. 1997) ("we will not shrink from finding an attorney liable when he crosses the line between traditional rendition of legal services and active participation in directing the enterprise," upholding such a RICO claim). He is also being sued by the State of California for illegally operating his gun business. *See The People of the State of California v. Gatalog Foundation Inc.*, case CGC-26-633508, (Superior Court of California, County of San Francisco), filed February 6, 2026.

[3] RICO is the acronym for the Racketeer Influenced and Corrupt Organizations Act, codified at 18 U.S.C. §§1961-1968. As the Supreme Court has stated, the object of the civil provisions of the law is "not merely to compensate victims but to turn them into prosecutors, 'private attorneys general,' dedicated to eliminating racketeering activity." *Rotella v. Wood*, 528 U.S. 549, 557 (2000).

The arguments for dismissal for failure to state a claim under RICO and the other causes of action pursuant to Fed. R. Civ. P. 12(b)(6) are more developed, if not persuasive.[4] But as to RICO, the argument ignores the Eleventh Circuit's most recent civil RICO decision, *Hartman v. Does 1-2*, No. 23-13473, 2025 WL 398846 (11th Cir. 2025), which affirmed a $9 million jury verdict for a business suing a rival for lost profits predicated on false statements made on the internet. That precedent forecloses any argument that this case presents an unusual or inappropriate use of the statute. Finally, in the alternative the Motion seeks a "more definite statement" of the claims. This too is unavailing.

## II. <u>There is personal jurisdiction over all defendants pursuant to 18 U.S.C. §1965(d)</u>

"The general rule is that courts address issues relating personal jurisdiction *before* reaching the merits of a plaintiffs' [RICO] claims." *In re Takata Airbag Products Liability Lit.*, 396 F. Supp. 3d 1101, 1143 (S.D. Fla. 2019). Defendant Larosiere is a resident of this district. Thus, personal jurisdiction over him was established when he was served pursuant to 18 U.S.C. §1965(d).[5] *See Takata Airbag, Products Liability Lit,* 396 F. Supp. 3d at 1143 ("Section 1965(d) can serve as the statutory basis for personal jurisdiction") (*quoting Republic of Panama*, 119 F.3d at 942). That provision also provides for jurisdiction over non-residents Elik, Stroke, and Lettman because they "have minimum contacts with the United States" as citizens. *BankAtlantic v. Coast to Coast Contractors, Inc.*, 947 F. Supp. 480, 490 (S.D. Fla. 1996) (applying this analysis to RICO because of its nationwide service of process provision). While their affidavits indicate they are not Florida

---

[4] In deciding the Motion the Court is to "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

[5] It provides: "All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs."

residents, they do not deny being residents of the United States, which is all that is necessary to defeat their jurisdictional arguments.

The Motion asserts Plaintiffs cannot use §1965(d) because the RICO claim is not "colorable." Motion at p. 4 (*citing Courbain v. Scott,* 596 Fed. Appx. 729, 732 (11th Cir. 2014)). That decision affirmed the dismissal of a *pro se* complaint against the plaintiff's ex-wife's lawyer which did not allege any RICO violations, much less a pattern of them, as required. *Id.* at p. 733. The complaint also failed to identify a RICO enterprise. *Id.* It was thus not a "colorable" RICO claim. The RICO claim here identifies a pattern of wire fraud predicate acts and an enterprise, MAF Corp. Therefore it is colorable, and the Motion's argument is unsupported.

In conclusion, the argument that the SAC fails to allege personal jurisdiction over the out of state defendants is wrong. And once jurisdiction is secure as to all RICO defendants, it is established as to the Lanham Act claim and the Florida claims under the doctrine of "pendent personal jurisdiction." *See, e.g., Koch v. Royal Wine Merchants, Ltd.,* 847 F. Supp. 2d 1370, 1374 (S.D. Fla. 2012) ("Under the doctrine of pendent personal jurisdiction, where a federal statute authorizes nationwide service of process and the federal and state claims 'derive from a common nucleus of operative fact…' the district court may assert personal jurisdiction over the parties to the related state law claims even if personal jurisdiction is not otherwise available.")(internal citation and quotations omitted). Thus, the Court has personal jurisdiction of all defendants for all claims. The Motion inexplicably ignores pendent personal jurisdiction. Plaintiffs need not rely upon Florida's long-arm statute to obtain personal jurisdiction.[6]

[6] Moreover, the Motion does not make a venue argument pursuant to Fed. R. Civ. P. 12(b)(3). Thus, that basis for dismissal or transfer of the case has now been waived. *Id.* at 12((h)(1)(A).

## III. <u>The RICO claim states a cause of action</u>

### a. The elements

"A plaintiff suing under the civil provisions of RICO must plausibly allege six elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Otto Candies LLC v. Citigroup, Inc.*, 137 F.4th 1158, 1196 (11th Cir. 2025). The SAC alleges Defendants conspired with Larosiere to operate his corporation, MAF Corp., the enterprise, through a pattern of wire fraud violations that caused injury to Plaintiff's business. SAC at ¶¶ 24-31. The scheme to damage DEFCAD by spreading false information violated the federal wire fraud statute, 18 U.S.C. §1343. SAC ¶46, damaging DEFCAD through lost profits. *Id*. at ¶ 41.

### b. This is not a defamation claim; business damages caused by false statements are permissible under RICO

The Motion asserts the RICO claim alleges "defamation by RICO" and as such "has been rejected by every circuit to consider similar attempts." Mot. at p. 5. One would think that the Motion would cite some of these decisions in light of such a definitive statement of the law. Yet the Motion cites no such circuit court decision. In fact, the Second Circuit has affirmed a judgment for a RICO plaintiff paired with a defamation claim. *See Securiton Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 263-64 (2d Cir. 1995). Moreover, the Florida Supreme Court has made it clear the tort of defamation exists to permit a plaintiff "to prove injury to his or her reputation in the community." *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1108 (Fla. 2008). Plaintiffs do not seek reputational damages. Plaintiffs seek lost profits, a well-established remedy for wire fraud. *See, e.g., Bridge* v. *Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 648 (2008) (upholding RICO claim for lost business profits caused by a competitor's false statements to a government regulator);

*Hartman*, 2025 WL 398846, at *1-2 (affirming $9 million RICO wire fraud judgment for "business damages" against rival which was engaged in an online "smear campaign" against it including the use of "email blasts with negative information" about plaintiff owner's "financial history, litigation history, commercial dealings, alleged prurient nature, credibility and trustworthiness").[7] It is true that defamation is not a RICO predicate act, but mail and wire fraud are, and false statements so disseminated are a feature in many RICO claims brought by businesses.

Defendants' reliance upon *Freites v. Medina*, 2025 WL 1425491, at *1-2 (S.D. Fla. 2025) (*see* Motion at p. 7) is misplaced. There the plaintiffs sought damages caused by "a coordinated defamatory campaign," designed to "destroy their reputations", expressly alleging, "Defendants' primary means of, carrying out the conspiracy was through defamation…". *Id.* at *6. The plaintiffs there were individuals, not businesses, and did not seek lost profits. The facts alleged here are distinct, in that the Plaintiffs are businesses, seeking lost profits damages, through wire fraud (as opposed to individuals, seeking reputational damages, through defamation). This argument simply ignores *Hartmman,* which is not only on point factually but is also the most recent Eleventh Circuit RICO case to go to trial. Defendants' failure to address *Hartmman* is inexplicable. *See Bovee v. Broom*, 732 F.3d 743, 744-45 (7th Cir. 2013) ("[A] lawyer looks undignified with his head in the sand. The belief that ostriches stick their heads in the sand to avoid seeing danger is a canard. Lawyers shouldn't do it either."). Therefore, the Motion has failed to cite any authority supporting its main argument on RICO, that this type of damage claim cannot be brought.

---

[7] The *Hartman* plaintiffs asserted defamation claims with their RICO claims. *Hartman,* 2025 WL 398846, at *2. The defamation claim did not go to trial, but the opinion does not indicate any rule prohibiting it.

**c. The RICO enterprise is MAF Corp.**

The Motion contends, "the enterprise allegations are facially defective" because the allegations lack "structure, hierarchy, roles, or acts attributable to an enterprise distinct from the alleged actors." Mot. at p. 7. The listed factors do not apply, as they are only for association-in-fact enterprises, not single entity corporate enterprises, which is alleged here. *See, e.g.*, *Boyle v. U.S.*, 556 U.S. 938, 946 (2009). The RICO statute expressly allows corporations to be enterprises. 18 U.S.C. §1961(4).

**d. The SAC alleges a pattern of racketeering activity**

The Motion next argues the SAC fails to allege a "pattern of racketeering activity." Mot. at p. 7 (*citing Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357-59 (11th Cir. 2018)). This is quite odd because *Jackson* is not a RICO case. However, *Hartman* holds that an ongoing smear campaign constitutes an open pattern of racketeering. *Hartman*, 2025 WL 398846 at *5. This is alleged here. The scheme began in May 2023 and continues. Defendant Clark posted the FEDCAD meme on the internet on December 31, 2025. SAC at ¶ 36. It is also a closed pattern, having been ongoing for two and a half years and already caused significant damage. SAC at ¶¶ 24, 35, 36, 41. *See, e.g.*, *Aquino v. Mobis Alabama, LLC*, 739 F. Supp. 3d 1152, 1181 (N.D. Ga. 2024) (concluding a two-year scheme adequate to allege a RICO pattern); *Magnifico v. Villanueva*, 783 F. Supp. 2d 1217, 1229 (S.D. Fla. 2011) (18 months adequate combined with a large number of victims).

**e. The RICO scheme is ongoing and will not stop absent judicial intervention**

In conclusion, the SAC plausibly alleges a civil RICO claim by pleading Defendants conducted and participated in the affairs of a RICO enterprise – MAF Corp. – through a coordinated scheme to disseminate knowingly false statements over interstate wires in order to

divert customers from DEFCAD to defendants' competing business. Defendants use social media and internet platforms to publish and amplify false claims that DEFCAD had been "hacked," that customer data had been "dumped," and that DEFCAD was hosted in Iran, and repeated these acts over an extended period from May 2023 through (at least) December 2025. These repeated wire-fraud predicates establish both closed- and open-ended continuity and caused concrete financial injury exceeding $1 million in lost sales and business relationships. *Id*. Taken as true, these allegations describe a conspiracy to commit an ongoing pattern of wire fraud through an enterprise which has damaged plaintiffs.

Accordingly, Defendants' request for dismissal of Plaintiffs' RICO claim under Rule 12(b)(6) should be denied.

**IV. The SAC sufficiently pleads a Lanham Act claim for false advertising**

Count II alleges the same misconduct violates §1125(a)(1)(B) of the Lanham Act,[8] which prohibits misrepresentations of "the nature, characteristics, qualities… of another person's goods, services, or commercial activities," in "commercial advertising." The Supreme Court has described "the classic Lanham Act false-advertising claim in which one competitor directly injures another by making false statements about his own goods [or the competitor's goods] and thus inducing customers to switch." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 137-38 (2014). That is precisely what is alleged here. *See also Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010) (detailing the five elements of false advertising). The first element, "literal falsity" is met if the advertisement is "literally false," which is what Plaintiffs allege. The "FEDCAD" meme contains false allegations about DEFCAD, as detailed in the SAC.

[8] 15 U.S.C. §1125(a).

The second element is the ad "deceived, or had the capacity to deceive, consumers." *Id.* Plaintiffs allege the "FEDCAD" posts deceived DEFCAD consumers and cost DEFCAD business. There is no need to prove "consumer deception" if the ad is literally false. *Id.* at 1319. The next element is "materiality," i.e., that the falsity "is likely to influence the purchasing decision." *Id.* This is plainly alleged because 3D gun purchasers are concerned about exposure to the public and the government, which the meme falsely alleges has occurred. Finally, the complaint must allege injury, which Plaintiffs clearly allege as lost profits.

The Motion asserts the Complaint does not state a false advertising claim because "the alleged speech is not commercial advertising or promotion." Mot. at p. 8. Once again, the Motion cites no authority in support of this assertion. The requirements for a commercial advertisement are "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing customers to buy defendant's goods or services…. (4) disseminated to the relevant purchasing public to constitute "advertising' or 'promotion' within that industry." *Belcher Pharmaceuticals, LLC v. Hospira, Inc.*, 419 F. Supp. 3d 1292, 1297 n.6 (M.D. Fla. 2020). The SAC alleges facts that support these elements, namely that Defendants are business rivals of DEFCAD through their MAF Corp. enterprise, and the online meme campaign is an attempt to influence DEFCAD's customers. The Motion's contention that, "a meme posted on the internet is not an advertising campaign," is unsupported and wrong. If the meme is posted online to reach DEFCAD's customers, and deceives them, it is "commercial."

The Motion then asserts, "the alleged statements are criticism and opinion." Motion at p. 9 (citing *Boule v. Hutton*, 328 F.3d 84, 90-91 (2d Cir. 2003)). That decision holds, in relevant part, that statements made to an art magazine were not "commercial speech" because the article addressed a matter of "public concern," fraud in the art market, and thus, given the forum, was

subject to the First Amendment protection. But the decision does not hold all statements of opinion are so protected, as the Motion claims. Rather, it holds, "A statement of opinion is not actionable under the Lanham Act if it 'could not reasonably be seen as stating or implying provable facts' about a competitor's goods or services." *Id.* at 92. The challenged statements in the meme, that DEFCAD has been hacked, and customer names have been made public, are false. Therefore, they are not entitled to First Amendment protection and are actionable. The Lanham Act claim should not be dismissed.

**V. <u>The SAC alleges tortious interference</u>**

To state a claim for Tortious Interference under Florida law, a plaintiff must allege: (1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff. *Int'l Sales & Service, Inc. v. Austral Insulated Products, Inc.*, 262 F. 3d 1152, 1154 (11th Cir. 2001).

The SAC plausibly alleges Plaintiffs maintained ongoing and prospective business relationships with customers, creators, and partners using the DEFCAD platform, including specifically identified file designers Barret Collier and Eric Goldhaber, whose files generated revenue for DEFCAD. SAC at ¶¶ 63, 64. Defendants – active competitors in the same niche marketplace – knew of these relationships and intentionally targeted them by disseminating false statements that DEFCAD had been "hacked," that it "doxxed" customers, and that it was hosted in Iran, for the purpose of diverting business to Defendants' competing enterprise. *Id.* at ¶ 65. This conduct was unjustified and wrongful, and it caused concrete harm, including the termination of identified business relationships, lost customers, diminished goodwill, and lost profits exceeding $1 million. *Id.* at ¶¶ 41, 69.

Plaintiffs have adequately pleaded their tortious interference claim under Florida law, so Defendants' motion to dismiss should be denied.

## VI. Chapter 770 and the single-action rule do not apply

Defendants' Chapter 770 and "single-action rule" arguments (*see* Motion at pp. 10-13) fail for several reasons.

First, state defamation doctrines cannot bar or restrict federal statutory claims under the RICO or the Lanham Act. Federal causes of action arise under federal law and are governed by federal pleading standards and federal remedial schemes. As the Supreme Court has long held, "a federal right cannot be defeated by the forms of local practice," and state procedural or doctrinal rules may not impose "unnecessary burdens upon rights of recovery authorized by federal laws." *Brown v. W. Ry. of Ala.*, 338 U.S. 294, 296–97 (1949). Defendants' attempt to create a straw man through Florida defamation law to bar or limit Plaintiffs' federal RICO and Lanham Act claims is improper.

Second, Plaintiffs do not assert a defamation claim. The SAC does not plead libel, slander, or reputational injury as a standalone tort. Instead, it alleges statutory and business-tort claims – civil RICO, Lanham Act false advertising, and tortious interference – based on a coordinated scheme to disseminate false and misleading online content for competitive and commercial gain, resulting in lost customers, diverted sales, unjust enrichment, and ongoing economic harm. Courts routinely reject attempts to recast such claims as defamation where, as here, the gravamen of the action is commercial deception and interference, not reputational harm alone. *See Five for Ent. S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1332–33 (S.D. Fla. 2012).

Third, Defendants' reliance on Fla. Stat. § 770 is misplaced for the independent reason that Chapter 770 applies only to defamation claims against "media defendants" – such as newspapers,

broadcasters, or periodicals engaged in the business of disseminating news. *Tobkin v. Jarboe*, 695 So. 2d 1257, 1258–59 (Fla. 4th DCA 1997). Courts in this District have repeatedly refused to extend Chapter 770 to private individuals or competitors who publish statements online outside the business of news reporting. *Five for Ent.*, 877 F. Supp. 2d at 1332. The SAC alleges Defendants are private competitors, not media entities, who created and amplified false memes and statements to divert customers to a rival platform. Chapter 770 therefore has no application to the claims pled.

Fourth, the same defect defeats Defendants' invocation of Florida's single-action rule. That doctrine applies only where a defendant has successfully invoked a defamation privilege and the plaintiff seeks to repackage the same defamatory publication into a different tort. *Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992). As recently clarified, "where a defendant has not successfully invoked an affirmative defense to defamation, the single-action rule presents no bar" to related claims. *David v. Gen. Dynamics Info. Tech., Inc.*, 2025 WL 1951850, at *5 (M.D. Fla. July 15, 2025) (quoting *Emergency Recovery, Inc. v. Gov't Emps. Ins. Co.*, 773 F. Supp. 3d 1304, 1320 (M.D. Fla. 2025)). Plaintiffs assert no defamation claim, Defendants have invoked no defamation privilege, and the SAC alleges injuries far beyond reputation alone. The single-action rule is therefore inapplicable as a matter of law.

Fifth, as stated above, Defendants' arguments improperly rely on matters outside the four corners of the SAC, including references to separate litigation, alleged "abandoned" claims, filings in other actions, and Defendants' own Rule 11 motion. None of those materials are incorporated by reference, and none may be considered here. The Court must evaluate the claims as pled – not as Defendants attempt to reframe them.

Finally, Defendants' statute-of-limitations arguments fail. They assume – contrary to the pleading – that Plaintiffs' claims "sound in defamation" and accrued upon a single publication. The SAC instead alleges an ongoing and continuing scheme involving repeated acts from 2023 through the present. Whether Defendants can prove otherwise is a factual issue not resolvable on a motion to dismiss.

In short, Defendants' Chapter 770 and single-action arguments depend on rewriting the SAC, importing extrinsic facts, and applying inapplicable state defamation doctrines to federal statutory and business-tort claims. That is not the function of Rule 12, and these arguments provide no basis for dismissal.

## VII. <u>The SAC is not a shotgun pleading</u>

Defendants' assertion the SAC constitutes an impermissible shotgun pleading, Motion at pp. 13-16, is contradicted by both Eleventh Circuit precedent and the structure of the pleading itself. The Eleventh Circuit identified four general types of shotgun pleadings: (1) complaints that incorporate all prior allegations into each count; (2) complaints replete with vague, conclusory, or immaterial facts; (3) complaints that fail to separate distinct causes of action into separate counts; and (4) complaints that assert multiple claims against multiple defendants without specifying which defendant is responsible for which acts. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F. 3d 1313, 1321-1323 (11th Cir. 2015); *Barmapov v. Amuial*, 986 F.3d 1321, 1325–26 (11th Cir. 2021). The "unifying characteristic" is that a shotgun pleading fails to give adequate notice of the claims and the grounds upon which each claim rests. *Weiland*, at 1323.

### a. The SAC is not a type-1 shotgun pleading.

Although each count incorporates certain background allegations, the Eleventh Circuit has made clear that incorporation alone does not create a shotgun pleading where the allegations are

relevant and the counts remain intelligible. *See Weiland*, 792 F.3d at 1324. Here, each count incorporates factual allegations that form the common nucleus of Defendants' coordinated scheme and then pleads claim-specific elements and conduct. Courts routinely reject shotgun challenges where, as here, incorporation is used to avoid repetition and does not obscure the nature of the claims. *See id.; Barmapov*, 986 F.3d at 1325–26.

**b. The SAC is not a type-2 shotgun pleading.**

The SAC pleads detailed, concrete facts, including: the nature of the false statements disseminated ("FEDCAD" claims of hacking and data breaches); the platforms used (Reddit, Twitter/X, online forums); the time period (beginning May 2023); the competing enterprise (MAF Corp. and The Gatalog); the mechanism of injury (diversion of customers, reputational harm, lost business relationships); and the specific statutory predicates (wire fraud under 18 U.S.C. § 1343). These are not vague or immaterial allegations but fact-specific assertions that go well beyond "labels and conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**c. The SAC is not a type-3 shotgun pleading.**

Each cause of action – RICO, Lanham Act false advertising, and tortious interference – is pled in a separate count, with its own elements and supporting allegations. Defendants do not (and cannot) contend that multiple causes of action are improperly merged into a single count. This alone defeats any Type-3 shotgun pleading argument. *See Weiland*, 792 F.3d at 1323.

**d. The SAC is not a type-4 shotgun pleading.**

The SAC pleads defendant-specific conduct with precision and does not lump all Defendants together in the manner condemned by *Weiland*, 792 F. 3d at 1321–23 (11th Cir. 2015). The pleading expressly alleges each Defendant's individual role in the scheme, including Elik's origination and coordination of the disinformation campaign; Celentano's repeated posting and

amplification of the "FEDCAD" meme on Reddit and search-engine-visible forums; Holladay's embedding and publication of the meme on his Florida-based commercial platform, ctrlpew.com; Stroke's repeated reposting of the meme across multiple channels under the "Zona" persona using funds from MAF Corp.; and Larosiere's direction of the scheme through his Florida entity, MAF Corp., which served as the RICO enterprise. These allegations are tied to specific actors, platforms, timeframes, and conduct, and each Count is expressly limited to the Defendants against whom it is brought (including the Florida-only tortious-interference claim).

Accordingly, the Amended Complaint is not a shotgun pleading under any *Weiland* category, and dismissal on that basis is unwarranted.

## VIII. <u>A more definite statement is unnecessary</u>

A motion pursuant to Fed. R. Civ. P. 12(e) is appropriate only where a pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Defendants' filings in this matter make clear that they understand the claims asserted against them, the conduct alleged to give rise to liability, the timeframe, platforms and methods involved, and the damages Plaintiffs' claim resulted. Defendants' Motion, as well as their other filings, include several pages addressing the merits – confirming that they are fully capable of responding. Defendants' request improperly seeks to force Plaintiffs to preview evidence or refine factual detail beyond what Rule 8 requires. That is not the function of Rule 12(e), and the request should be denied.

## IX. <u>Conclusion</u>

In conclusion, Plaintiffs respectfully request that the Court deny the Motion in its entirety.

Dated: March 9, 2026

Respectfully submitted,

**PRYOR CASHMAN LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone No: (786) 582-3007

By: /s/ *Brendan Everman*
Brendan S. Everman
Florida Bar No. 68702
beverman@pryorcashman.com
ksuarez@pryorcashman.com

-and-

**FOSTER PC**
155 N. Wacker Drive., Suite 4250
Chicago, Illinois 60606
Telephone No. 312-726-1600

By: */s/ Howard Foster*
Howard Foster
(admitted pro hac vice)
hfoster@fosterpc.com

*Attorney for Plaintiffs*

# TAB 71

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE №: 9:25-cv-81197

DEFENSE DISTRIBUTED, a Texas corporation; DD FOUNDATION, LLC, a Texas limited liability company; and, DEFCAD, INC., a Texas corporation,

*Plaintiffs*,

v.

JOHN ELIK; MATTHEW LAROSIERE; ALEXANDER HOLLADAY; PETER CELENTANO; JOSH KIEL STROKE;

and JOHN LETTMAN,

*Defendants*.

_____________________________________/

**DEFENDANT ZACKARY CLARK'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT, AND IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**

## TABLE OF CONTENTS

**INTRODUCTION AND SUMMARY OF ARGUMENTS** ..... 1

**I. THIS COURT LACKS PERSONAL JURISDICTION OVER CLARK** ..... 3

A. There is no personal jurisdiction under RICO ..... 3

B. Florida's long-arm statute does not reach Mr. Clark for Count II. ..... 3

**II. COUNT I FAILS TO STATE A RICO CONSPIRACY CLAIM AGAINST MR. CLARK.** ..... 4

A. The SAC does not plead wire fraud. ..... 4

B. The SAC fails Rule 9(b), and the meme itself defeats several of Plaintiffs' conclusory characterizations. ..... 7

C. The SAC does not plausibly allege that Mr. Clark agreed to a RICO conspiracy. ..... 8

D. The SAC does not plead a racketeering pattern or proximate causation as to Mr. Clark. ..... 9

E. *Hartman* does not save Count I ..... 9

**III. COUNT II FAILS TO STATE A LANHAM ACT FALSE-ADVERTISING CLAIM AGAINST MR. CLARK.** ..... 10

A. The alleged post is not "commercial advertising or promotion." ..... 10

B. The SAC again rewrites the meme ..... 12

C. Much of the meme is nonactionable opinion or rhetorical hyperbole. 14

**IV. THE CLAIMS AGAINST MR. CLARK ARE AN IMPROPER REPACKAGING OF PUBLICATION-BASED GRIEVANCES, AND TO THE EXTENT PLAINTIFFS SEEK TO IMPOSE LIABILITY FOR EARLIER PUBLICATIONS, THOSE CLAIMS ARE TIME-BARRED.** . . 14

**V. THE SAC IS A SHOTGUN PLEADING AS TO MR. CLARK.** ..... 15

**VI. IN THE ALTERNATIVE, PLAINTIFFS SHOULD BE REQUIRED TO PROVIDE A MORE DEFINITE STATEMENT.** ..... 16

**VII. CONCLUSION** ..... 17

**CERTIFICATE OF SERVICE** ..... 18

Defendant Zackary Clark moves to dismiss the Second Amended Complaint under Rules 12(b)(2) and 12(b)(6), and, in the alternative, for a more definite statement under Rule 12(e). As to Mr. Clark, the Second Amended Complaint alleges only that he posted the "FEDCAD" meme on X on December 31, 2025, and then piles on speculation that he "may have joined the conspiracy later," "likely" acted with Mr. Larosiere's approval, and that Plaintiffs "understand" he is affiliated with MAF Corp. as an employee or independent contractor. SAC ¶¶ 36–39. Those allegations are insufficient to establish personal jurisdiction in Florida or to state either of the only counts asserted against him: Count I (RICO conspiracy) and Count II (Lanham Act false advertising).

**INTRODUCTION AND SUMMARY OF ARGUMENTS**

. The Second Amended Complaint tries to make Mr. Clark part of a nationwide racketeering and false-advertising scheme based on one alleged reposting of a meme. The pleading does not allege that Mr. Clark lives in Florida, does business in Florida, owns property in Florida, or directed any Florida-specific conduct at any Florida plaintiff. To the contrary, the declaration submitted with this motion shows that Mr. Clark resides in South Carolina, has never been employed by or contracted with MAF Corp., conducts no business in Florida, owns no property in Florida, and independently reposted a meme he found on Plaintiffs' own website. (Ex. A).

That should end the jurisdictional inquiry. Plaintiffs attempt to avoid the absence of Florida contacts by invoking RICO's nationwide-service provision. But that provision does not apply unless the plaintiff pleads a colorable RICO claim. *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 941–42 (11th

Cir. 1997). Plaintiffs have not. As to Mr. Clark, the RICO count fails because the SAC does not plausibly allege wire fraud, does not plead fraud with particularity, does not plausibly allege that Mr. Clark agreed to conduct the affairs of a RICO enterprise, does not plausibly allege a racketeering pattern as to him, and does not plausibly allege proximate causation.

The Lanham Act count fails for similar reasons. A single reposted meme is not "commercial advertising or promotion," particularly where the alleged speaker is not plausibly pleaded as a commercial competitor, the post does not propose a commercial transaction, and the meme itself does not say several of the things Plaintiffs attribute to it. *See Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 950–53 (11th Cir. 2017) (criticism or commentary about a business does not become commercial speech merely because it may affect the business); *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1349 (11th Cir. 2012) (11th Circuit's formulation of "commercial advertising or promotion.").

Finally, the pleading against Mr. Clark is an object lesson in group pleading. The counts lump him together with all other defendants, even though the SAC alleges only one act by him and Count III is not even asserted against him. If dismissal is not granted, Plaintiffs should at least be required to state with precision what exact statements by Mr. Clark are actionable, which legal theory each statement supposedly satisfies, and how one post on one date supposedly caused the losses claimed.

## ARGUMENT

### I. THIS COURT LACKS PERSONAL JURISDICTION OVER CLARK

A. There is no personal jurisdiction under RICO

Plaintiffs' response brief correctly recognized that their personal-jurisdiction theory as to nonresident defendants rises or falls with the existence of a colorable RICO claim. That is the law. A plaintiff may invoke RICO's nationwide-service provision only if the asserted federal claim is not "wholly immaterial or insubstantial." *Republic of Panama*, 119 F.3d at 941–42.

The SAC does not plead a colorable RICO claim against Mr. Clark. At most, it alleges one reposting of one meme on one date, followed by speculation that he "may have joined" a conspiracy and "likely" acted with someone else's approval. SAC ¶ 36. That is not enough to plead wire fraud, a pattern of racketeering, a knowing agreement to conduct an enterprise's affairs through racketeering, or proximate causation. The defects are addressed more fully below, but for jurisdictional purposes the point is straightforward: because Count I fails on its face, Plaintiffs cannot use RICO to haul a South Carolina resident into Florida federal court.

Nor does Plaintiffs' pendent-personal-jurisdiction theory help. Pendent personal jurisdiction requires a valid anchor claim. Without a colorable RICO claim against Mr. Clark, there is no anchor to which Count II can attach.

B. Florida's long-arm statute does not reach Mr. Clark for Count II.

Because Count II arises under the Lanham Act, not a statute with nationwide service, the Court must look to Florida's long-arm statute and due process. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).

The SAC does not allege any facts bringing Mr. Clark within Florida Statutes § 48.193. It does not allege that he operated, conducted, or carried on business in Florida, committed a tortious act in Florida, or caused injury to a person or property in Florida while engaged in Florida solicitation or service activities. Fla. Stat. § 48.193(1)(a). Plaintiffs are Texas entities, not Florida residents, and the only injury they plead is lost profits to their Texas business. SAC ¶ 41. Florida law is clear that economic injury alone is insufficient to establish long-arm jurisdiction under the out-of-state-injury provision. *Aetna Life & Cas. Co. v. Therm-O-Disc, Inc.*, 511 So. 2d 992, 994 (Fla. 1987) (the relevant provision "contemplate[s] personal injury or physical property damage").

Mr. Clark's attached declaration confirms the absence of any Florida nexus: Mr. Clark resides in South Carolina, does no business in Florida, and owns no property here. (Ex. A). Plaintiffs have pleaded no Florida-specific conduct by him and no Florida-specific injury from him. That is fatal to long-arm jurisdiction.

## II. COUNT I FAILS TO STATE A RICO CONSPIRACY CLAIM AGAINST MR. CLARK.

### A. The SAC does not plead wire fraud.

Count I depends entirely on the premise that internet criticism of Plaintiffs constitutes wire fraud. The SAC says exactly that: "Each use of the internet to spread damaging disinformation violates the federal wire fraud statute." SAC ¶ 40. That is not the law.

Wire fraud requires a scheme to obtain money or property by means of false or fraudulent pretenses, representations, or promises. 18 U.S.C. § 1343. Business

disparagement and reputational attack do not become wire fraud merely because they are harmful or even false. The federal fraud statutes do not convert every harmful publication into racketeering.

Multiple circuits have rejected efforts to recast business-smear or disparagement campaigns as mail or wire fraud where the alleged conduct is not truly fraud aimed at obtaining money or property. In *Méndez Internet Management Services, Inc. v. Banco Santander de Puerto Rico*, the plaintiff alleged that a website operator published critical statements about his business, causing account closures and government scrutiny. The First Circuit held the RICO theory failed because there was no plausible allegation that the speaker stood to gain financially from the plaintiff's collapse, no plausible allegation anyone was actually deceived in the relevant way, and the gravamen was defamation, which "standing alone" was not enough to amount to mail or wire fraud. 621 F.3d 10, 16–18 (1st Cir. 2010).

Likewise, in *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, even though deceptive conduct allegedly helped one party take business from another, the court held there was no scheme to defraud the plaintiff of money or property where the plaintiff itself was not deceived in the relevant sense and the deceived third parties were not deprived of money or property. The First Circuit held that the complaint did not sufficiently allege a scheme to defraud anyone of money or property within the meaning of the mail and wire fraud statutes. 904 F.2d 786, 791–93 (1st Cir. 1990).

The Ninth Circuit rejected a similar attempt to use RICO against a campaign aimed at harming a hotel's reputation and customer goodwill, emphasizing the

absence of a scheme to obtain property by deception. *Monterey Plaza Hotel Ltd. P'ship v. Local 483 of Hotel Emps. & Rest. Emps. Union*, 215 F.3d 923, 926–27 (9th Cir. 2000). There, a hotel tried to turn an allegedly damaging campaign against its business and customer goodwill into mail/wire-fraud predicates for RICO. The Ninth Circuit rejected that theory because, even assuming goodwill could be a property interest in some settings, the defendant had not sought to obtain that property through deception; the conduct was harmful and possibly harassing, but "not acquisitive." The court emphasized that the mail- and wire-fraud statutes are aimed at wrongful transfers of property, not merely reputational or goodwill harm.

And the Sixth Circuit has described materially similar allegations as sounding in defamation, not traditional fraud. *United States v. Baldinger*, 838 F.2d 176, 180–81 (6th Cir. 1988). That case involved letters falsely sent to a rival's customers claiming the rival was operating without a license. The Sixth Circuit held the mail-fraud theory could not stand unless the scheme had the required proprietary-gain component, and it described the allegations as, "for the most part," amounting to defamation rather than the traditional kind of fraudulent misconduct covered by the mail-fraud statute.

As to Mr. Clark, the defect is even sharper. The SAC alleges only that he reposted a meme. It does not allege that he obtained or sought to obtain money or property from Plaintiffs, from customers, or from anyone else by deceit. It does not allege he solicited a purchase, entered any transaction, impersonated anyone, misdirected funds, or used false pretenses to induce anyone to part with money or

property. Instead, the SAC alleges only a supposed effort "to damage Plaintiffs by taking away customers through false statements." SAC ¶ 44. That is not wire fraud.

B. <u>The SAC fails Rule 9(b), and the meme itself defeats several of Plaintiffs' conclusory characterizations.</u>

Where the alleged predicate is wire fraud, Rule 9(b) applies. 7. *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316–17 (11th Cir. 2007) (RICO complaint with multiple defendants "should inform each defendant of the nature of his alleged participation in the fraud."). Plaintiffs must plead the who, what, when, where, and how of the fraud, including what the defendant gained from it. *Id.*

The SAC does not do that as to Mr. Clark. It alleges only one date and one post. It does not plead what property Mr. Clark supposedly sought to obtain, what transaction he induced, what he gained, who relied, or how one reposting proximately caused the $1 million figure pleaded globally in paragraph 41.

More importantly, the Court may consider the meme itself because the SAC reproduces it and makes it central to the claims. *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018). And the meme's actual text does not say several of the things Plaintiffs attribute to it.

The SAC and (Doc. 70) repeatedly assert that the meme claimed DEFCAD hosted its website in Iran, colluded with federal authorities and gun-control groups, and directed consumers to The Gatalog. *See, e.g.*, SAC ¶¶ 55(a)–(e). *But the meme itself says none of that*. (Doc. 49 at 5). It says nothing about Iran. It says nothing about federal authorities. It says nothing about gun-control groups. It says nothing about The Gatalog. And its "doxxed" allegation refers to "developer information to

antigunners," not customer information to federal authorities. Plaintiffs cannot satisfy Rule 9(b) by paraphrasing the meme into something harsher, broader, and more commercial than the document itself. When the incorporated document dispels a conclusory characterization, the document controls. *Hi-Tech Pharms.*, 910 F.3d at 1189.

C. The SAC does not plausibly allege that Mr. Clark agreed to a RICO conspiracy.

To plead a RICO conspiracy under § 1962(d), Plaintiffs must plausibly allege that Mr. Clark knowingly agreed to the overall objective of the conspiracy or agreed to commit two predicate acts. *Republic of Panama*, 119 F.3d at 950.

The SAC does neither. It says Mr. Clark "may have joined the conspiracy later," "likely" acted with Mr. Larosiere's approval, and that Plaintiffs "understand" he is affiliated with MAF as an employee or contractor. SAC ¶¶ 36–37. Those are not factual allegations; they are speculation and legal conclusion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There are no pleaded facts from which a knowing agreement can plausibly be inferred.

The corporate-enterprise point raised in (Doc. 70) does not cure this defect. Even assuming MAF Corp. could serve as an enterprise, the SAC still must plausibly allege that Mr. Clark agreed to conduct that enterprise's affairs through racketeering. It does not. The jurisdictional declaration, moreover, directly refutes the SAC's speculation that he was a MAF employee or contractor and states he acted independently. (Ex. A).

D. The SAC does not plead a racketeering pattern or proximate causation as to Mr. Clark.

As to Mr. Clark, Plaintiffs allege one post on one date. That is not a "pattern of racketeering activity." 18 U.S.C. § 1961(5). Plaintiffs cannot bootstrap him into a broader campaign through speculation that he "joined later." SAC ¶ 36.

Nor does the SAC plausibly allege that Mr. Clark conducted or participated in the operation or management of any enterprise. *See Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) ("participate in the operation or management of the enterprise itself" is the operative standard under RICO). The pleading says only that he reposted a meme and supposedly promoted The Gatalog online. That is not operation or management. Even if the *Reves* showing is not required, the SAC still pleads no facts showing Clark knowingly agreed to the enterprise's racketeering objective.

And Plaintiffs do not plead proximate causation. Civil RICO demands a direct relation between the injury asserted and the injurious conduct alleged. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457–61 (2006) (requiring "some direct relation between the injury asserted and the injurious conduct alleged."). The SAC pleads a lump-sum lost-profits figure and attributes it to "Defendants" collectively over a multi-year period. SAC ¶ 41. It does not identify any sale, customer, vendor, partner, or other business relationship lost because of Mr. Clark's one December 31, 2025 post.

E. *Hartman* does not save Count I

Plaintiffs' response relies heavily on *Hartman v. Does 1-2.* But *Hartman* does not rescue this pleading. First, *Hartman* is unpublished. *Hartman v. Does1-2*, No. 23-13473, 2025 WL 398846 (11th Cir. Feb. 4, 2025) (unpublished). Second, *Hartman*

came to the Eleventh Circuit after a nine-day trial, a jury verdict, and post-trial Rule 50 proceedings. *Id.* at *1. The court reviewed the evidence in the light most favorable to the verdict, not the sufficiency of a bare complaint. Third, *Hartman* involved a far more elaborate scheme than anything alleged against Mr. Clark here: deceptive lookalike domains, false contact information, spoofed email accounts purporting to be the plaintiff, email blasts to a compiled contact list, efforts to conceal the perpetrators' identity, and links back to the rival business. *Id.* at *2–*4.

Fourth, and critically, the Eleventh Circuit expressly said that "[b]eyond the issue of continuity, Defendants have not developed any argument specific to the predicate acts, such as mail fraud, or to the other elements of the RICO claims," and that it was expressing "no opinion" on whether the evidence otherwise satisfied those elements. *Id.* at *7. *Hartman* therefore does not establish that online criticism, standing alone, is sufficient at the pleading stage to allege wire fraud. It especially does not do so for a defendant like Mr. Clark, who is alleged to have made only one tweet.

Count I should be dismissed.

## III. COUNT II FAILS TO STATE A LANHAM ACT FALSE-ADVERTISING CLAIM AGAINST MR. CLARK.

### A. <u>The alleged post is not "commercial advertising or promotion."</u>

The Lanham Act reaches false or misleading descriptions in "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). In this Circuit, that requires commercial speech, by a defendant in commercial competition with the plaintiff, for the purpose of influencing consumers to buy the defendant's goods or services,

disseminated sufficiently to the relevant purchasing public. *Suntree Techs.*, 693 F.3d at 1349; *Tobinick*, 848 F.3d at 950–53.

The SAC does not plausibly plead those elements as to Mr. Clark. Nor does it plausibly plead that he is a commercial competitor. It merely says Plaintiffs "understand" he is affiliated with MAF as an employee or independent contractor and that he "promotes the Gatalog online." SAC ¶¶ 37–39. Those are threadbare conclusions, and his jurisdictional declaration refutes them. (Ex. A). Even if he separately promoted Gatalog—whatever it is—the allegedly false FEDCAD meme still is not plausibly pleaded as Clark's commercial advertising or promotion, and Count II improperly attributes to that meme statements it does not contain.

The SAC does not plausibly plead commercial speech. A single reposted meme on Twitter does not propose a commercial transaction, advertise a product, offer a service, state a price, or tell consumers to buy from Mr. Clark. *Tobinick*, 848 F.3d at 950–53. Plaintiffs' (Doc. 70) says that a meme becomes commercial if posted online to reach customers. That is not the law. Speech does not become commercial merely because it concerns a business, is critical of a business, or may indirectly benefit someone economically. *Id* at 950 "A plain reading of [the articles at issue] makes clear that they do not fall within the core notion of commercial speech as they do not propose a commercial transaction. Instead, Dr. Novella's articles evoke many characteristics of noncommercial speech. The articles "communicate information, express opinion, and recite grievances." (cleaned up).

And it does not plausibly plead dissemination sufficient to constitute "advertising or promotion" within the relevant industry. One alleged post by one alleged speaker on one date is not an advertising campaign.

B. The SAC again rewrites the meme

The Lanham count repeats the same problem discussed above. It alleges, among other things, that Defendants falsely branded DEFCAD as "FEDCAD," falsely said its database had been "hacked and dumped multiple times," falsely claimed DEFCAD "doxxes" customers by providing information to federal authorities and anti-gun activists, falsely alleged collusion with gun-control groups and federal authorities, and published the meme in commercial contexts intended to divert customers to The Gatalog. SAC ¶ 55. But the meme itself simply does not say that.




It says nothing about Iran, federal authorities, gun-control groups, or "The Gatalog." And the "doxxed" allegation concerns "developer information to antigunners," not customers to federal authorities. Because the meme is incorporated into the pleading, Plaintiffs cannot survive dismissal by characterizing it as something it is not. *Hi-Tech Pharms.*, 910 F.3d at 1189.

C. Much of the meme is nonactionable opinion or rhetorical hyperbole.

The meme contains a mix of asserted facts, rhetorical opinion, and invective. Statements such as "Defcad is wretchedly awful," "should be avoided," "shouldn't be used," and "should be publicly shamed" are classic opinion and exhortation, not commercial advertising. *Tobinick*, 848 F.3d at 950–53. So are value-laden accusations like "shady" and "milk money out of people," at least absent a concrete commercial solicitation or advertisement. Plaintiffs cannot convert that speech into a Lanham Act claim simply by alleging that it hurt their business.

Count II should therefore be dismissed.

## IV. THE CLAIMS AGAINST MR. CLARK ARE AN IMPROPER REPACKAGING OF PUBLICATION-BASED GRIEVANCES, AND TO THE EXTENT PLAINTIFFS SEEK TO IMPOSE LIABILITY FOR EARLIER PUBLICATIONS, THOSE CLAIMS ARE TIME-BARRED.

As to Mr. Clark, Counts I and II fail on their own elements. But the publication-based character of the case reinforces the pleading defect.

The SAC is still, at bottom, a complaint about allegedly false online publications. Florida courts do not permit plaintiffs to evade defamation limits by relabeling publication-based grievances as other torts. *See Gannett Co. v. Anderson*, 947 So. 2d 1, 8–9 (Fla. 1st DCA 2006) (dismissing similar allegations as "not distinguishable in any material respect from a libel claim."); Freites v. Medina, No. 25-cv-20465, 2025 WL 1425491, at *5 (S.D. Fla. May 15, 2025), appeal dismissed, No. 25-12067, 2025 WL 2638566 (11th Cir. Aug. 27, 2025). Plaintiffs' current federal labels do not alter the fact that, as to Mr. Clark, the case is based on one allegedly false publication.

The limitations point is narrower for Mr. Clark, because the SAC alleges his post occurred on December 31, 2025. But Plaintiffs also try to treat him as part of a broader campaign allegedly beginning in May 2023. SAC ¶ 35. To the extent Plaintiffs seek to hold Mr. Clark liable for publications predating his alleged involvement, those claims are untimely and cannot be revived by the conclusory allegation that he "may have joined the conspiracy later." SAC ¶ 36.

**V. THE SAC IS A SHOTGUN PLEADING AS TO MR. CLARK.**

Even if the Court were not to dismiss on the more fundamental grounds above, the SAC should be dismissed as an impermissible shotgun pleading as to Mr. Clark.

Most obviously, it is a type-four shotgun pleading. It asserts multiple claims against multiple defendants while failing to specify which defendant is responsible for which acts and which claims. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (Eleventh Circuit's taxonomy of shotgun pleadings). That defect is acute for Mr. Clark. The SAC alleges one specific act by him, then lumps him into counts accusing all "Defendants" of an alleged multi-year racketeering and false-advertising scheme. SAC ¶¶ 42–60. It does not specify which predicate acts he supposedly agreed to commit, which specific Lanham statements he supposedly made beyond the one meme, what enterprise role he supposedly had, or how one post caused the damages alleged.

It is also a type-one shotgun pleading because each count incorporates all preceding allegations wholesale, including allegations having nothing to do with Mr. Clark and allegations concerning Florida-only claims not asserted against him. *Id.*

And it is, at minimum, rife with vague and conclusory allegations as to him—"may have joined," "likely with the approval," "Plaintiffs understand," "affiliated," "promotes"—that do not permit a meaningful responsive pleading.

## VI.IN THE ALTERNATIVE, PLAINTIFFS SHOULD BE REQUIRED TO PROVIDE A MORE DEFINITE STATEMENT.

XIf the Court declines to dismiss, it should require Plaintiffs to replead under Rule 12(e). As to Mr. Clark, the SAC is too vague to answer intelligibly. Plaintiffs should be required to specify (1) what exact statement by Mr. Clark they contend is false; (2) whether the claims against him are based on the December 31 twitter post or also on other persons' earlier publications; (3) which portions of the mem are alleged to be false, as opposed to opinion, rhetoric, or commentary; (4) what goods or services Mr. Clark allegedly advertised or promoted; (5) what property Mr. Clark allegedly sought to obtain through wire fraud; (6) what facts support the allegation that he agreed to any conspiracy; and (7) what specific loss Plaintiffs attribute to his conduct.

## VII. CONCLUSION

For these reasons, Defendant Zackary Clark respectfully requests this Honorable Court dismiss the Second Amended Complaint as against him for lack of personal jurisdiction and for failure to state a claim. In the alternative, he requests a more definite statement.

Respectfully submitted,

DATED: March 9, 2026

*/s/Matthew Larosiere*___
Matthew Larosiere, Esq.
Fla. Bar. No. 1005581
The Law Offices of
Matthew Larosiere
6964 Houlton Circle
Lake Worth, FL 33467
Email:
Larosieremm@gmail.com
Tel: (561) 452-7575
*Lead Counsel for Defendants Elik, Stroke, Lettman, and Clark*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on this 9th day of March, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

*/s/ Matthew Larosiere*____

Matthew Larosiere, Esq.
Fla. Bar № 1005581

# TAB 73

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

Case No. 9:25-cv-81197-Middlebrooks/Matthewman

DEFENSE DISTRIBUTED, a Texas corporation; DD FOUNDATION, LLC, a Texas limited liability company; and, DEFCAD, INC., a Texas corporation,

Plaintiffs,

v.

JOHN ELIK, individually; MATTHEW LAROSIERE, individually; ALEXANDER HOLLADAY, individually; PETER CELENTANO, individually; JOSH KIEL STROKE, individually; and JOHN LETTMAN, individually; ZACK CLARK, individually

Defendants.

_____________________________________________/

# PLAINTIFFS' OPPOSITION TO DEFENDANT CLARK'S MOTION TO DISMISS

Plaintiffs, Defense Distributed, DD Foundation, LLC and DEFCAD, Inc., oppose the Motion to Dismiss ("Motion") [D.E. 71] filed by defendant Zackary Clark.

## I. Introduction

Plaintiffs jointly operate a lawful business of selling access to 3D printable gun files under the tradename "DEFCAD."[1] Defendants are believed to own and operate a rival 3D gun business through a Florida corporation called MAF Corp. The Second Amended Complaint ("SAC") [D.E. 49] alleges that defendants conspired to publish false and damaging information about DEFCAD, namely that its customers' information was "hacked and dumped multiple times" on the internet,

[1] "A 3D-printed firearm is a firearm that is partially or primarily produced with a 3D printer." Wikipedia, viewed March 5, 2026. This Opposition will refer to the Plaintiffs' business as DEFCAD for ease of reference.

and that its website is hosted in Iran. These statements were published in the form of an internet meme reproduced in the SAC under the headline "FEDCAD." The use of the pun "FEDCAD" underscores the suggestion that DEFCAD is somehow aligned with federal authorities to the detriment of its customers even though its business is legal. And that innuendo was intended to scare potential customers away from DEFCAD. It has, to the tune of $1 million in lost profits.

Clark's Motion repeats the same arguments already asserted in the Motion to Dismiss filed by defendants Elik, Larosiere, Holladay, Stroke and Lettman [D.E. 56]. Specifically, the Motion seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(2), contending the Court lacks personal jurisdiction over Clark because he is a non-resident. But as the Eleventh Circuit has held, RICO's jurisdictional provision, 18 U.S.C. §1965(d), only requires that defendants have contact with the United States, not any judicial district. *Republic of Panama v. BCCI Holdings (Luxembourg)S.A.*, 119 F.3d 935, 942 (11th Cir. 1997).[2] Clark seeks to avoid this outcome by asserting Plaintiffs cannot avail themselves of RICO's jurisdictional provision because the RICO claim is so feeble as to be "non-colorable." This argument fails.

Clark's other dismissal arguments under Fed. R. Civ. P. 12(b)(6) are more developed, if not persuasive.[3] Indeed, the Eleventh Circuit's most recent civil RICO decision, *Hartman v. Does 1-2,* No. 23-13473, 2025 WL 398846 (11th Cir. 2025), affirmed a $9 million jury verdict for a business suing a rival for lost profits predicated on false statements made on the internet. That

---

[2] RICO is the acronym for the Racketeer Influenced and Corrupt Organizations Act, codified at 18 U.S.C. §§ 1961-1968. As the Supreme Court has stated, the object of the civil provisions of the law is "not merely to compensate victims but to turn them into prosecutors, 'private attorneys general,' dedicated to eliminating racketeering activity." *Rotella v. Wood,* 528 U.S. 549, 557 (2000).

[3] In deciding the Motion, the Court is to "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell,* 516 F.3d 1282, 1284 (11th Cir. 2008).

precedent forecloses any argument that this case presents an unusual or inappropriate use of the statute. Finally, in the alternative the Motion seeks a "more definite statement" of the claims. This too is unavailing.

## II. There is personal jurisdiction over Clark pursuant to 18 U.S.C. §1965(d)

"The general rule is that courts address issues relating personal jurisdiction *before* reaching the merits of a plaintiffs' [RICO] claims." *In re Takata Airbag Products Liability Lit.*, 396 F. Supp. 3d 1101, 1143 (S.D. Fla. 2019). Defendant Larosiere is a resident of this district. Thus, personal jurisdiction over him was established when he was served pursuant to 18 U.S.C. §1965(d).[4] *See Takata Airbag, Products Liability Lit,* 396 F. Supp. 3d at 1143 ("Section 1965(d) can serve as the statutory basis for personal jurisdiction") (*quoting Republic of Panama*, 119 F.3d at 942). That provision also provides for jurisdiction over non-resident Clark because he has "minimum contacts with the United States" as a citizen. *See BankAtlantic v. Coast to Coast Contractors, Inc.*, 947 F. Supp. 480, 490 (S.D. Fla. 1996) (applying this analysis to RICO because of its nationwide service of process provision). Although Clark's affidavit denies Florida residency, it does not deny United States citizenship, which is all that is necessary to defeat Clark's jurisdictional arguments.[5]

The Motion asserts that § 1965(d) is inapplicable because Plaintiffs' RICO claim is not "colorable." *See* Mot. at p. 3. As explained below, the SAC pleads a colorable RICO claim against all defendants. And once jurisdiction is secure as to all RICO defendants, it is established as to the Lanham Act claim and the Florida claims under the doctrine of "pendent personal jurisdiction."

---

[4] It provides: "All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs."

[5] Clark's out of state residency could have been raised in a venue challenge, but he has not made one, and this has waived the issue. Fed. R. Civ. P. 12(h)(1)(B).

*See, e.g., Koch v. Royal Wine Merchants, Ltd.*, 847 F. Supp. 2d 1370, 1374 (S.D. Fla. 2012) ("Under the doctrine of pendent personal jurisdiction, where a federal statute authorizes nationwide service of process and the federal and state claims 'derive from a common nucleus of operative fact…' the district court may assert personal jurisdiction over the parties to the related state law claims even if personal jurisdiction is not otherwise available.") (internal citation and quotations omitted). Thus, the Court has personal jurisdiction over all defendants, including Clark.

## III. <u>The RICO claim states a cause of action</u>

Contrary to Clark's assertions (*see* Mot. pp. 4-10), the SAC plausibly alleges a RICO claim. "A plaintiff suing under the civil provisions of RICO must plausibly allege six elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Otto Candies LLC v. Citigroup, Inc.*, 137 F.4th 1158, 1196 (11th Cir. 2025). The SAC alleges Defendants conspired with Larosiere to operate, MAF Corp., the enterprise, through a pattern of wire fraud violations that caused injury to DEFCAD. *See* SAC at ¶¶ 24-31. The scheme to damage DEFCAD by spreading false information violated the federal wire fraud statute, 18 U.S.C. § 1343. See id. ¶¶ 41, 46.

### a. Business damages caused by false statements are permissible under RICO

Clark contends that a RICO claim must be dismissed if it is based on defamation, "business-smear or disparagement." *See* Mot. p. 5. Although it is true that defamation is not a RICO predicate act, mail and wire fraud are. As a result, courts routinely recognize that businesses may bring RICO claims premised on false statements made by competitors. *See, e.g., Bridge* v. *Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 648 (2008) (upholding RICO claim for lost business profits caused by a competitor's false statements to a government regulator); *Hartman*, 2025 WL

398846, at *1-2 (affirming $9 million RICO wire fraud judgment for "business damages" against rival which was engaged in an online "smear campaign" against it including the use of "email blasts with negative information" about plaintiff owner's "financial history, litigation history, commercial dealings, alleged prurient nature, credibility and trustworthiness"); *Securiton Magnalock Corp. v. Schnabolk,* 65 F.3d 256, 263-64 (2d Cir. 1995) (affirming judgment for RICO and defamation claims).

Clark's attempt to distinguish *Hartman* is unpersuasive. *See* Mot. at pp. 9-10. Although the schemes were different, *Hartman* confirms that a business competitor's false "smear campaign" can be actionable under RICO. Clark's straw man argument – that "online criticism, standing alone" is insufficient to establish wire fraud (*see* Mot. p. 10) – is simply irrelevant.

The fact that Clark may not have participated in the entirety of the smear campaign is also irrelevant. A RICO conspirator who agrees to the overall objective of the conspiracy can be liable for all damage caused by the conspiracy even if he does not commit all predicate acts. *See, e.g., Salinas v. U.S.*, 522 U.S. 52, 65 (1997) (affirming the § 1962(d) RICO conspiracy conviction of a defendant who did not personally commit any predicate acts); *accord Allstate Ins. Co. v. Palterovich*, 653 F. Supp. 1306, 1321 (S.D. Fla. 2009) ("A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts"). Indeed, all conspirators who "participate in the enterprise responsible for the RICO violations" have joint and several liability. *Id.* at 1334.

**b. The SAC alleges a pattern of racketeering activity**

Clark next argues the SAC fails to allege a "pattern of racketeering activity." Mot. at p. 9. This argument lacks merit. The SAC alleges that the scheme began in May 2023 and that it

continued through at least December 31, 2025, when Clark posted the FEDCAD meme on the internet. SAC at ¶ 36. Because the scheme has been ongoing for two and a half years (*see id.* at ¶¶ 24, 35, 36, 41), the SAC adequately alleges a closed pattern of racketeering activity. *See, e.g.*, *Aquino v. Mobis Alabama, LLC*, 739 F. Supp. 3d 1152, 1181 (N.D. Ga. 2024) (concluding a two-year scheme adequate to allege a RICO pattern); *Magnifico v. Villanueva*, 783 F. Supp. 2d 1217, 1229 (S.D. Fla. 2011) (18 months adequate combined with a large number of victims).

**c. The RICO scheme is ongoing and will not stop absent judicial intervention**

In conclusion, the SAC plausibly alleges that Defendants conducted and participated in the affairs of a RICO enterprise – MAF Corp. – through a coordinated scheme to disseminate knowingly false statements over interstate wires in order to divert customers from DEFCAD to defendants' competing business. Defendants used social media and internet platforms to publish and amplify false claims that DEFCAD had been "hacked," that customer data had been "dumped," and that DEFCAD was hosted in Iran, and repeated these acts over an extended period from May 2023 through (at least) December 2025. These repeated wire-fraud predicates establish both closed- and open-ended continuity and caused concrete financial injury exceeding $1 million in lost sales and business relationships. *Id.* Taken as true, these allegations describe a conspiracy to commit an ongoing pattern of wire fraud through an enterprise which has damaged plaintiffs.

**d. The SAC alleges a RICO conspiracy**

Citing nothing, the Motion contends the allegations of the SAC are inadequate to allege Clark's entry into the conspiracy to damage DEFCAD. Mot. at p. 8. The allegation that a person joins a conspiracy at a later time than others is commonplace and does not amount to speculation. *See, e.g., Inteliquent, Inc. v. Free Conferencing Corp.*, 503 F. Supp. 3d 608, 632 (N.D. Ill. 2020) ("in order to be a member of the [RICO] conspiracy, the defendant need not join at the beginning

or know all the other members or means by which its purposes were to be accomplished"). The SAC alleges Clark posted the offending meme on X (formerly Twitter) on a specific date. SAC at ¶ 36. He did so with the agreement of the other defendants, and likely with the approval of the ringleader, Larosiere. *Id.* at ¶ 37. This is not speculation. It is very specific and factual.[6] The Motion also asserts Clark's one predicate act of wire fraud "cannot bootstrap him into a broader campaign through speculation that he joined later." Mot. at p. 9. It certainly can, for the reasons detailed above. All the SAC needs to allege is that Clark agreed to the overall criminal endeavor. He need not even commit one act of wire fraud. The RICO allegations against Clark are sufficient.

**e. The wire fraud allegations comply with Fed. R. Civ. P. 9(b)**

Contrary to Clark's assertion (*see* Mot. at p. 7), the allegations in the SAC comply with Fed. R. Civ. P. 9(b). Specifically, the SAC alleges that Clark committed wire fraud on December 31, 2025 by posting the FEDCAD meme on X (formerly Twitter). SAC at ¶ 36. That allegation provides all the necessary information, the "who, what and where" required by the rule.[7] The SAC *does* inform Clark and the other defendants what they, individually, did to violate RICO. Tellingly, the Motion does not even state what fact is missing as to Clark. This argument must be rejected.

---

[6] Clark asserts, without citation to authority, that "the SAC must still plausibly allege that Mr. Clark agreed to conduct that enterprise's [MAF Corp.] affairs through racketeering." *See* Mot. at pp. 8, 9. Clark is wrong. The Eleventh Circuit has rejected the application of the "operation or management" requirement of RICO pleading in conspiracy cases. *See U.S. v. Browne*, 505 F.3d 1229, 1276, n.33 (11th Cir. 2007); *Design Pallets, Inc., v. Gray Robinson, P.A.*, 2008 WL 3200275 at *5, n.11 (M.D. Fla. 2008). While the Supreme Court did enunciate such a requirement for RICO claims arising under §1962(c) in *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993), that decision did not apply to RICO conspiracy claims, and the Eleventh Circuit has so held.

[7] The Eleventh Circuit has noted that Rule 9(b) "must not abrogate the concept of notice pleading." *Otto Candies*, 137 F.4th at 1178.

**f. The SAC alleges DEFCAD's injury was proximately caused by the wire fraud scheme**

Clark contends the SAC does not allege DEFCAD's injury was directly caused by the wire fraud scheme to harm it because the damage was caused by "defendants collectively" and does not identify a particular business relationship lost. *See* Mot. at p. 9. But *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457-61 (2006), the only authority cited, says nothing about a supposed need for damages to be attributed to a particular defendant rather than a group of defendants. And in *Hartman* the racketeering was committed by a group of defendants. *Hartman*, 2025 WL 398846 at *3. Nor does *Anza* or *Hartman* require naming lost customers to state a RICO claim. To reiterate, Rule 8, which applies to the Complaint (except for the allegations of wire fraud), establishes notice pleading. Any such requirement, as is suggested in the Motion, would be inconsistent with that standard. Given that Clark has failed to cite any authority supporting a heightened pleading standard, his argument should be rejected.

Accordingly, Clark's request for dismissal of Plaintiffs' RICO claim under Rule 12(b)(6) should be denied.

**IV. <u>The SAC sufficiently pleads a Lanham Act claim for false advertising</u>**

Count II of the SAC alleges the same misconduct violates § 1125(a)(1)(B) of the Lanham Act,[8] which prohibits misrepresentations of "the nature, characteristics, qualities… of another person's goods, services, or commercial activities," in "commercial advertising." The Supreme Court has described "the classic Lanham Act false-advertising claim in which one competitor directly injures another by making false statements about his own goods [or the competitor's goods] and thus inducing customers to switch." *Lexmark Int'l, Inc. v. Static Control Components*,

[8] 15 U.S.C. §1125(a).

*Inc.*, 572 U.S. 118, 137-38 (2014). That is precisely what is alleged here. *See also Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010) (detailing the five elements of false advertising). The first element, "literal falsity" is met if the advertisement is "literally false," which is what Plaintiffs allege. The "FEDCAD" meme contains false allegations about DEFCAD, as detailed in the SAC.

The second element is the ad "deceived, or had the capacity to deceive, consumers." *Id*. Plaintiffs allege the "FEDCAD" posts deceived DEFCAD consumers and cost DEFCAD business. There is no need to prove "consumer deception" if the ad is literally false. *Id*. at 1319. The next element is "materiality," i.e., that the falsity "is likely to influence the purchasing decision." *Id*. This is plainly alleged because 3D gun purchasers are concerned about exposure to the public and the government, which the meme falsely alleges has occurred. Finally, the complaint must allege injury, which Plaintiffs clearly allege as lost profits.

Clark argues that the Lanham Act claim should be dismissed because a meme is not "commercial speech." Mot. at p. 11. Not so. The requirements for a commercial advertisement are "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing customers to buy defendant's goods or services…. (4) disseminated to the relevant purchasing public to constitute "advertising' or 'promotion' within that industry." *Belcher Pharmaceuticals, LLC v. Hospira, Inc.*, 419 F. Supp. 3d 1292, 1297 n.6 (M.D. Fla. 2020). The SAC alleges facts supporting these elements, namely that Defendants are business rivals of DEFCAD through their MAF Corp. enterprise, and the online meme campaign is an attempt to influence DEFCAD's customers. If the meme is posted online to reach DEFCAD's customers, and deceives them, it is "commercial."

Clark also asserts that some of the statements are nonactionable opinions or rhetorical hyperbole. *See* Mot. at p. 14. But the challenged statements in the meme – *i.e.*, that DEFCAD has been hacked and that customer names have been made public – are not opinions. They are false statements of fact. Accordingly, the Lanham Act claim should not be dismissed.

## V. <u>The SAC alleges tortious interference</u>

Clark's challenge to the SAC's tortious interference claim (Count III) is equally deficient.

To state a claim for tortious interference under Florida law, a plaintiff must allege: (1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff. *Int'l Sales & Service, Inc. v. Austral Insulated Products, Inc.*, 262 F. 3d 1152, 1154 (11th Cir. 2001).

The SAC plausibly alleges Plaintiffs maintained ongoing and prospective business relationships with customers, creators, and partners using the DEFCAD platform, including specifically identified file designers Barret Collier and Eric Goldhaber, whose files generated revenue for DEFCAD. SAC at ¶¶ 63, 64. Defendants – active competitors in the same niche marketplace – knew of these relationships and intentionally targeted them by disseminating false statements that DEFCAD had been "hacked," that it "doxxed" customers, and that it was hosted in Iran, for the purpose of diverting business to Defendants' competing enterprise. *Id.* at ¶ 65. This conduct was unjustified and wrongful, and it caused concrete harm, including the termination of identified business relationships, lost customers, diminished goodwill, and lost profits exceeding $1 million. *Id.* at ¶¶ 41, 69.

Because Plaintiffs have adequately pleaded their tortious interference claim under Florida law, Clark's motion to dismiss should be denied.

## VI. The SAC is not a shotgun pleading

Clark's assertion the SAC constitutes an impermissible shotgun pleading (*see* Mot. at pp. 15-16) is contradicted by both Eleventh Circuit precedent and the structure of the pleading itself.

The SAC pleads defendant-specific conduct with precision and does not lump all Defendants together in the manner condemned by *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F. 3d 1313, 1321-23 (11th Cir. 2015). The pleading expressly alleges each Defendant's individual role in the scheme, including Clark's posting and amplification of the "FEDCAD" meme. Plaintiffs are entitled to discovery to determine the full extent of Clark's involvement in the RICO conspiracy.

Additionally, although each count incorporates certain background allegations, the Eleventh Circuit has made clear that incorporation alone does not create a shotgun pleading if the allegations are relevant and the counts remain intelligible. *See Weiland*, 792 F.3d at 1324. Here, each count incorporates factual allegations that form the common nucleus of Defendants' coordinated scheme and then pleads claim-specific elements and conduct. Courts routinely reject shotgun challenges where, as here, incorporation is used to avoid repetition and does not obscure the nature of the claims. *See id.; Barmapov*, 986 F.3d at 1325–26.

Accordingly, the Amended Complaint is not a shotgun pleading under any *Weiland* category, and dismissal on that basis is unwarranted.

## VII. A more definite statement is unnecessary

A motion pursuant to Fed. R. Civ. P. 12(e) is appropriate only where a pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Defendants' filings in this matter make clear that they understand the claims asserted against them, the conduct alleged to give rise to liability, the timeframe, platforms and methods involved, and the damages Plaintiffs'

claim resulted. Clark's Motion, as well as Defendants' other filings, include several pages addressing the merits – confirming that they are fully capable of responding. Clark's request improperly seeks to force Plaintiffs to preview evidence or refine factual detail beyond what Rule 8 requires. That is not the function of Rule 12(e).

## VIII. Conclusion

In conclusion, Plaintiffs respectfully request that the Court deny the Motion in its entirety.

Dated: March 23, 2026

Respectfully submitted,

**PRYOR CASHMAN LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone No: (786) 582-3007

By: /s/ *Brendan Everman*
Brendan S. Everman
Florida Bar No. 68702
beverman@pryorcashman.com
ksuarez@pryorcashman.com

-and-

**FOSTER PC**
155 N. Wacker Drive., Suite 4250
Chicago, Illinois 60606
Telephone No. 312-726-1600

By: */s/ Howard Foster*
Howard Foster
(admitted pro hac vice)
hfoster@fosterpc.com

*Attorney for Plaintiffs*

# TAB 83

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE №: 9:25-cv-81197

DEFENSE DISTRIBUTED, a Texas corporation; DD FOUNDATION, LLC, a Texas limited liability company; and, DEFCAD, INC., a Texas corporation,

*Plaintiffs*,

v.

JOHN ELIK; MATTHEW LAROSIERE; ALEXANDER HOLLADAY; PETER CELENTANO; JOSH KIEL STROKE;

and JOHN LETTMAN,

*Defendants*.

______________________________________/

**DEFENDANT ZACKARY CLARK'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

Plaintiffs' Opposition concerningly confirms the defects in the Second Amended Complaint ("SAC") in a manner suggesting that Plaintiffs' counsel has neither read the meme they purport to have cost them a million dollars, nor the complaint Mr. Clark moved to dismiss.

The opposition (1) doubles down on a reading of the "FEDCAD meme" that cannot be squared with the meme they incorporated into the SAC; (2) overstates the holding of *Hartman v. Does 1–2*; (3) ignores materially adverse authority rejecting attempts to recast publication-based grievances as RICO wire fraud; and (4) defends a tortious-interference claim that was neither asserted against Mr. Clark nor argued in his motion at all. *See* SAC Count III (asserted only against the Florida defendants); (Doc. 73 at 10) ("Clark's challenge to the SAC's tortious interference claim…is equally deficient.) *but see* (Doc. 71 at 2) ("even though the SAC alleges only one act by him and Count III is not even asserted against him."). Finally, Plaintiffs' Opposition never addresses the obvious significance of Plaintiffs' own hosting of the meme without commentary or refutation. (Doc. 71 at 3).

## I. PLAINTIFFS REFUSE TO GRAPPLE WITH THE TEXT OF THE FEDCAD MEME

Clark argued that the Court may consider the meme itself because Plaintiffs reproduced it and made it central to their claims, and that the meme's actual text does not say several of the things Plaintiffs attribute to it. (Doc. 71 at 8–9, 13–15). The Opposition does not address that argument at all. Instead, it repeats the same descriptions of the meme that Clark challenged. It says the meme conveyed that DEFCAD's website "is hosted in Iran," that the "FEDCAD" pun suggests alignment

with federal authorities, and that the meme's allegations scared customers away from DEFCAD. (Doc. 73 at 1–2, 8–10). The SAC does the same thing, alleging that the meme implied customers' identities would be known to federal authorities and anti-gun activists, and alleging that the meme falsely claimed DEFCAD "doxxes" customers to federal authorities, colluded with gun-control groups, and was published to divert customers to The Gatalog. (SAC ¶¶ 25–26, 34–35, 55). Yet the only meme before the Court—the one attached to SAC at page 5—does not say those things.

When a complaint incorporates an exhibit and the pleader's characterization conflicts with the exhibit itself, the exhibit controls. *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018). Clark made exactly that point. (Doc. 71 at 8–9, 14–15). Plaintiffs' Opposition does not explain why the Court should disregard the actual words in the incorporated meme and accept Plaintiffs' broader paraphrase instead. That is not a response to Clark's argument, and it does not show the pleading is sufficient. (Doc. 73 at 1–2, 8–10).

## II. THE OPPOSITION OVERREADS HARTMAN AND DOES NOT CONFRONT COHEN.

As Plaintiffs are wont to, they continue to wield the unpublished *Hartman* decision as "foreclos[ing]" any argument that this case is an unusual or inappropriate use of civil RICO. (Doc. 73 at 2). As Clark explained, *Hartman* is unpublished, came after a nine-day trial and Rule 50 proceedings, and expressly stated that, "[b]eyond the issue of continuity," the defendants had not developed arguments "specific to the predicate acts, such as mail fraud, or to the other elements of the RICO claims," and the court expressed "no opinion" on those matters. (Doc. 71 at 9–10). The Opposition

does not grapple with that language. It simply cites *Hartman* as though it were a pleading-stage holding that online smear allegations satisfy wire fraud and civil RICO. (Doc. 73 at 2, 4–5.) It is not.

The Opposition also says nothing about *Center for Immigration Studies v. Cohen*, which Plaintiffs' counsel Mr. Foster personally litigated materially identical claims, where the D.C. circuit rejected a RICO wire-fraud theory built on allegedly false internet publications. (Doc. 79 at 1–2). *Cohen* is particularly relevant because there, as here, Plaintiffs' counsel was trying to "shoehorn a defamation claim into the RICO framework." 410 F. Supp. 3d at 191. Clark's motion argued that Plaintiffs are doing the same thing here. (Doc. 71 at 4–7, 15–16). The Opposition does not distinguish *Cohen* which Plaintiffs are no doubt aware of—or explain why that reasoning does not apply. It simply ignores it while continuing to rely on an overread of *Hartman*.

### III. THE OPPOSITION DOES NOT EXPLAIN HOW THE SAC PLEADS A SCHEME TO OBTAIN MONEY OR PROPERTY BY FRAUD AS TO CLARK.

Clark's argued that the SAC alleges only one repost by Clark and does not allege that Clark obtained or sought to obtain money or property from Plaintiffs, customers, or anyone else by deceit. (Doc. 71 at 4–8). The Opposition never answers that point. Instead, the Opposition asserts that "business damages caused by false statements are permissible under RICO" and that businesses "may bring RICO claims premised on false statements made by competitors." (Doc. 73 at 4–5). But that is not the question Clark raised. The question is whether the SAC plausibly alleges that Clark's one repost was part of a scheme whose object was money or property.

The Opposition does not identify the property Clark supposedly sought to obtain, the victim from whom he sought to obtain it, or the transaction through which that occurred. It simply repeats the conclusion that the "scheme to damage DEFCAD by spreading false information violated the federal wire fraud statute." *Id.* at 4. That is not an explanation of why the SAC is sufficient as to Clark.

The Supreme Court has repeatedly made clear that the federal fraud statutes require a scheme whose object is money or property, not merely deception plus downstream harm. *Kelly v. United States*, 590 U.S. 391, 398–404 (2020); *Ciminelli v. United States*, 598 U.S. 306, 312–17 (2023); *Kousisis v. United States*, 145 S. Ct. 1382, 1388–94 (2025). The Eleventh Circuit's recent decision in *Saville v. Webb* is especially on point: the court affirmed dismissal where the plaintiff failed to explain how the challenged statements were part of a scheme to gain money or property from a victim, failed to identify that victim, and failed to allege what the defendant gained. No. 24-10998, 2025 WL 2254239, at *6–7 (11th Cir. Aug. 7, 2025). Plaintiffs' Opposition never supplies those missing features here.

Appellate authority from other circuits points the same way. In *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, the First Circuit held the complaint failed to allege a scheme to defraud anyone of money or property within the meaning of the mail and wire fraud statutes. 904 F.2d 786, 791 93 (1st Cir. 1990). In *Méndez Internet Management Services, Inc. v. Banco Santander de Puerto Rico*, the First Circuit explained that the ordinary fraud pattern involves deceit that induces a harmful transaction and ordinarily benefits the deceiver, found no plausible allegation that

the speaker stood to gain financially, and concluded that defamation-like allegations "standing alone" could not amount to mail or wire fraud. 621 F.3d 10, 16–18 (1st Cir. 2010). In *United States v. Baldinger*, the Sixth Circuit described similar allegations as "for the most part" amounting to defamation rather than traditional mail fraud because the proprietary-gain component was missing. 838 F.2d 176, 180–81 (6th Cir. 1988). And in *Monterey Plaza Hotel Ltd. P'ship v. Local 483 of Hotel Emps. & Rest. Emps. Union*, the Ninth Circuit rejected a mail/wire-fraud theory aimed at harm to reputation and goodwill where the scheme was not acquisitive. 215 F.3d 923, 926–27 (9th Cir. 2000). The Opposition does not explain why the SAC's theory falls on the permissible side of those cases. It just asserts that competitor falsehoods can sometimes support RICO. That does not answer Clark's actual argument.

Nor do Plaintiffs' citations solve the problem. Bridge v. Phoenix Bond & Indemnity Co. involved false attestations used to obtain property interests in tax liens. 553 U.S. 639, 647–50 (2008). Clark never argued that harmful false statements can never support a RICO claim. He argued that the SAC does not plausibly allege that Clark's one repost was part of a scheme to obtain money or property by deceit. Doc. 71 at 4–8. The Opposition cites Bridge for a proposition much broader than the case supports and still does not explain how the SAC satisfies the money-or-property requirement as to Clark.

## IV. THE OPPOSITION DOES NOT SHOW THAT THE SAC SATISFIES RULE 9(B) AS TO CLARK.

Clark argued that Rule 9(b) applies because wire fraud is the alleged predicate, and that the SAC does not plead what property Clark sought to obtain, what

transaction he induced, what he gained, who relied, or how one repost proximately caused Plaintiffs' global damages number. (Doc. 71 at 7–8). The Opposition's answer is that paragraph 36 supplies the "who, what and where." (Doc. 73 at 7). That does not address Clark's argument. Clark never contended the SAC omitted a date or a platform. He argued that the SAC omitted the particulars needed to plead fraud as to Clark. The Opposition does not identify where the SAC pleads those missing details because it does not.

That is not enough under Eleventh Circuit law. *Brooks v. Blue Cross & Blue Shield of Florida, Inc*. requires the plaintiff to allege the precise misrepresentations, the time, place, and person responsible, how the statements misled the plaintiff, and what the defendants gained. 116 F.3d 1364, 1380–81 (11th Cir. 1997). *Ambrosia Coal & Construction Co. v. Pages Morales* adds that a multi-defendant RICO complaint must inform each defendant of the nature of his alleged participation in the fraud. 482 F.3d 1309, 1316–17 (11th Cir. 2007). The Opposition does not explain how the SAC meets those standards as to Clark. It simply asserts compliance. That is not enough.

## V. THE OPPOSITION DOES NOT EXPLAIN HOW THE SAC'S CLARK-SPECIFIC CONSPIRACY ALLEGATIONS ARE ANYTHING OTHER THAN SPECULATION.

Clark's motion pointed out that the SAC alleges Clark "may have joined the conspiracy later," "likely" acted with Larosiere's approval, and that Plaintiffs "understand" he is affiliated with MAF. (Doc. 71 at 8–9; SAC ¶¶ 36–37). The Opposition responds: "This is not speculation. It is very specific and factual." (Doc. 73 at 6–7). But the Opposition does not explain why the Court should ignore the

qualifiers in the pleading itself. It does not identify concrete facts showing an agreement by Clark. It merely relabels speculative allegations as factual ones.

In *O'Malley v. O'Neill*, the Eleventh Circuit held that similar RICO conspiracy allegations were "merely conclusory and unsupported by any factual allegations." 887 F.2d 1557, 1561 (11th Cir. 1989). The same problem is present here. Plaintiffs' response does not identify the factual allegations in the SAC that plausibly show Clark knowingly agreed to the overall objective of any racketeering conspiracy. Instead, it shifts to general propositions about later-joining conspirators and criminal conspiracy law, without showing why or how the SAC already pleads the necessary agreement by Clark. (Doc. 73 at 6–7).

**The Opposition also answers an argument Clark did not make.** It cites *United States v. Browne and Design Pallets, Inc. v. GrayRobinson, P.A.* for the proposition that a § 1962(d) conspiracy claim does not require "operation or management" in the *Reves* sense. (Doc. 73 at 7 n.6). But Clark's point was not that Plaintiffs failed to plead a formal *Reves* element. Clark's point was that the SAC does not plausibly plead Clark's agreement at all. (Doc. 71 at 8–10). The Opposition never explains why the SAC's actual Clark allegations satisfy that standard.

**VI. The Opposition does not answer the jurisdictional point because it does not address Republic of Panama's threshold requirement.**

Clark argued that Plaintiffs cannot invoke RICO's nationwide-service provision unless the RICO claim is at least colorable. (Doc. 71 at 3–4). The Opposition responds by saying Clark is a United States citizen and that this is "all that is necessary to defeat Clark's jurisdictional arguments." (Doc. 73 at 3). That is not what

*Republic of Panama* says. The Eleventh Circuit held that nationwide service is available where the asserted federal claim is not "wholly immaterial or insubstantial." 119 F.3d 935, 941–42 (11th Cir. 1997). The Opposition skips over this threshold issue.

The same problem appears in the Opposition's citation to district-court cases like *Bank Atlantic* and *Takata*. (Doc. 73 at 2–4). Those cases do not erase *Republic of Panama*'s threshold. They presuppose it. So the Opposition's jurisdiction section does not show personal jurisdiction exists over Clark.

## VII. THE OPPOSITION DOES NOT SHOW THAT THE SAC PLEADS "COMMERCIAL ADVERTISING OR PROMOTION" AS TO CLARK, AND IT OVERREADS LEXMARK.

Clark argued that one reposted meme is not plausibly "commercial advertising or promotion" under controlling law. (Doc. 71 at 10–14). The Opposition's answer is essentially that, if the meme was posted online to reach DEFCAD's customers and deceives them, then it is "commercial." (Doc. 73 at 9). But Clark's motion cited *Suntree Technologies, Inc. v. Ecosense International, Inc*. and *Edward Lewis Tobinick, M.D. v. Novella* for a more demanding standard: commercial speech, by a defendant in commercial competition with the plaintiff, for the purpose of influencing customers to buy the defendant's goods or services, disseminated sufficiently to the relevant purchasing public. (Doc. 71 at 10–13). The Opposition simply asserts a much looser standard and assumes the conclusion.

Plaintiffs also overread *Lexmark International, Inc. v. Static Control Components, Inc.*. The Opposition cites *Lexmark* as though it established that what is alleged here is a "classic Lanham Act false-advertising claim." (Doc. 73 at 8–9). The

Supreme Court expressly noted that whether the challenged statements qualified as "commercial advertising or promotion" was "not before us" and assumed the point without deciding it. 572 U.S. 118, 136 n.1 (2014).

Additional circuit authority points the same way as *Tobinick*. In *Podiatrist Ass'n, Inc. v. La Cruz Azul de Puerto Rico, Inc.*, the First Circuit explained that the speech must, at a bare minimum, target a class or category of purchasers and not merely isolated recipients. 332 F.3d 6, 19–20 (1st Cir. 2003). In *Bosley Medical Institute, Inc. v. Kremer*, the Ninth Circuit held that online criticism of a business was not commercial use where it expressed opinion rather than proposed a commercial transaction. 403 F.3d 672, 677–80 (9th Cir. 2005). And in *Farah v. Esquire Magazine*, the D.C. Circuit rejected the idea that adversarial speech becomes commercial merely because it may affect a marketplace or indirectly benefit the speaker. 736 F.3d 528, 541–42 (D.C. Cir. 2013). The Opposition ignores all of this.

## VIII. THE OPPOSITION UNDERSCORES THE NOTICE AND GROUP-PLEADING PROBLEM INSTEAD OF ANSWERING IT.

Clark argued that the SAC lumps him into multi-defendant counts despite alleging only one specific act by him. (Doc. 71 at 15–18.) The Opposition's treatment of Count III proves the point. It spends a section arguing that "Clark's challenge to the SAC's tortious interference claim (Count III) is equally deficient." (Doc. 73 at 10–11). But Count III is pleaded "Against Solely the Florida Defendants" and expressly names only Larosiere and Holladay. (SAC at 11–12). Clark is not a Florida defendant, and made no challenge to Count III in his motion. So instead of explaining how the

SAC provides Clark with notice of the claims actually asserted against him, the Opposition demonstrates the very group-pleading problem Clark raised.

### IX. PLAINTIFFS NEVER ADDRESS THAT THEY THEMSELVES HOSTED THE MEME WITHOUT COMMENTARY OR REFUTATION.

Clark's declaration states that he found the "FEDCAD meme" on Plaintiffs' Defcad.com website; that Plaintiffs' posting was the first Google result for "Fedcad meme"; that he copied the meme from Plaintiffs' website and posted it to Twitter; and that he viewed the claims in the meme as credible because Plaintiffs had posted it to their own website "without any commentary to the contrary." (Doc. 71-1 at 2.) The Opposition does not respond to that point at all.

## CONCLUSION

The Opposition does not show that the SAC states a claim against Clark or establishes personal jurisdiction over him. It does not explain how the SAC pleads a scheme to obtain money or property by fraud as to Clark. It does not show compliance with Rule 9(b). It does not explain why the SAC's speculative allegations plausibly plead a RICO conspiracy. It ignores *Republic of Panama*'s threshold requirement. It does not show that Clark's one repost qualifies as "commercial advertising or promotion." And it never addresses Plaintiffs' own hosting of the meme without commentary or refutation. Clark's motion should therefore be granted. (Doc. 71).

Respectfully submitted,

DATED: March 30, 2026

*/s/Matthew Larosiere*
Matthew Larosiere, Esq.
Fla. Bar. No. 1005581
The Law Offices of
Matthew Larosiere
6964 Houlton Circle
Lake Worth, FL 33467
Email:
Larosieremm@gmail.com
Tel: (561) 452-7575
*Lead Counsel for*
*Defendants Elik, Stroke,*
*Lettman, and Clark*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on this 30th day of March, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

*/s/ Matthew Larosiere*

Matthew Larosiere, Esq.
Fla. Bar № 1005581